Nicholas O. Kennedy (State Bar No. 280504)
nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: 214 978 3000
Facsimile: 214 978 3099

Katharine Miner (State Bar No. 288083)
katharine.miner@bakermckenzie.com
Thomas Tysowsky (State Bar No. 330022)
thomas.tysowsky@bakermckenzie.com
**BAKER & McKENZIE LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: 310 201 4728
Facsimile: 310 201 4721

Attorneys for Plaintiff
MING GLOBAL LIMITED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MING GLOBAL LIMITED, a Hong Kong company, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MONARCH HOLDINGS INC., a Nevada corporation, d/b/a MONARCH INTERNATIONAL INC., and Does 1 through 10 inclusive, | |
| Defendants. | |

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

Plaintiff Ming Global Limited ("Plaintiff" or "Ming Global") by and through its undersigned counsel, complain and allege against Defendant Monarch Holdings Inc., *dba* Monarch International Inc. ("Defendant" or "Monarch"), as follows:

## NATURE OF THE ACTION

1.     Ming Global was the victim of an elaborate fraud based on non-existent investments.  Through a series of misrepresentations, broken promises, and breached agreements, Monarch bilked Ming Global out of more than $13 million and, assuming Monarch actually invested the money as it said it did, out of another $13 million in purported returns.  All of this money was transferred by Ming Global to Monarch's bank account right here in California.

2.     This fraud began in May of this year, when Monarch's agents contacted Ming Global's Sarath Kumar Hegde.  Monarch's agents identified themselves as representatives of a prominent Hong Kong private equity firm, First Eastern Investments Limited ("First Eastern Investments") and claimed they had promising investment opportunities for Ming Global.  Ming Global did its due diligence by researching First Eastern Investments and consulting with its accountant.  Ming Global then started with a modest investment of roughly $20,000.  Monarch's agents directed Ming Global to transfer the funds for this investment and all subsequent investments to Monarch, the purported broker for U.S. trades in California.

3.     The stocks purportedly purchased by Monarch with this initial investment performed well.  The trap was now set.  Monarch's agents ratcheted up the pressure, convincing Ming Global to make larger and larger investments.  All told, Ming Global invested $13,329,181.76 at the behest of Monarch and its agents.  All of these investments were made based on the repeated false promise that Ming Global could receive its money back on demand.

4.     But when Ming Global asked for its money back, the excuses began.  Each request was met with a new excuse.  At first, the excuses seemed genuine.  But as the delay continued, each excuse grew more convoluted than the last. Ming Global

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

requested its money back dozens of times between July and September. Monarch and its representatives responded to each request with a new problem or condition, and a new date on which Monarch promised to return the money.

5.     The money still has not been returned. Suspicious and concerned, Ming Global engaged a global fraud investigative firm. The results confirmed what Ming Global feared. Monarch and its agents have ***no relationship*** with First Eastern Investments or its CEO Victor Chu, whose name was fraudulently signed on one of the letters at the core of the scheme. Monarch, the purported "brokerage firm" is nothing of the sort. It is a California corporation with no apparent operations and its "headquarters" in a storage unit.

6.     Unfortunately, it is clear that Monarch and its agents have made false and misleading statements to Ming Global, breached contracts and reneged on promises, and unjustly enriched Monarch to the tune of at least $13 million of Ming Global's money. Accordingly, Monarch must be held accountable and its ill-gotten gains disgorged. Ming Global respectfully seeks this Court's assistance to do so.

## THE PARTIES

7.     Plaintiff Ming Global Limited is a company organized under the laws of Hong Kong, with its principal place of business at 1206 Eastern Commercial Centre, 397 Hennessy Road, Wan Chai, Hong Kong.

8.     Monarch Holdings Inc. is a Nevada corporation, dba Monarch International Inc., with its principal place of business at 1625 N. El Camino Real, Unit B, San Clemente, CA 92672. It can be served with process through its registered agent, Veronica So at the same address.

9.     Monarch operated at all relevant times through individual agents believed to have been based in Hong Kong and California operating through names including Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton, and Angela Fung. The agents represented themselves as employees or authorized representatives of the private equity firm, First Eastern Investments Limited. But they

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

1   were not.  They were truly acting on behalf of the fraudulent scheme of which

2   Monarch was the centerpiece.

3   **JURISDICTION AND VENUE**

4   **10.**   This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(2)

5   because there is complete diversity of citizenship between Ming Global and Monarch

6   and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7   Specifically Monarch is a citizen of California and Ming Global is a citizen of a

8   foreign state.

9   **11.**   In addition, this Court has subject matter jurisdiction under 28 U.S.C.

10   § 1331 because certain of the claims asserted herein, including the claim for securities

11   fraud, arise under federal law.  Moreover, the state law claims asserted herein are

12   based on a common nucleus of operative facts with these federal law claims such that

13   they are so closely related as to form part of the same case or controversy.  *See* 28

14   U.S.C. § 1367.

15   **12.**   This Court has general personal jurisdiction over Monarch because it is a

16   corporation with its principal place of business in the state of California.  It also has

17   specific personal jurisdiction because the money that was stolen from Ming Global by

18   Monarch was transferred into the state of California and the scheme at issue was

19   carried out, at least in part, by agents believed to be in California.

20   **13.**   Venue is appropriate in the Central District of California because

21   Monarch maintains its principal place of business in this District, the money stolen

22   from Ming Global was transferred into this District, the scheme was directed and

23   developed, at least in part, from this District, and certain of the false representations

24   and statements are believed to have been made in or directed from this District.  *See*

25   28 U.S.C. § 1391(b)(1)-(2).

26

27

28

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

3

## GENERAL ALLEGATIONS

**14.**    In early May 2020, Monarch's agents cold-called Ming Global's Director, Sharath Kumar Hegde, to pitch potential investments.  They told Mr. Hegde that they represented First Eastern Investments, a well-known Hong Kong investment firm.  Mr. Hegde initially declined to speak with Monarch.  When Monarch called Mr. Hegde a second time, however, Mr. Hegde agreed to set up a call with one of Monarch's representatives.

**15.**    Shortly thereafter, Mr. Hegde received a call from an individual who referred to himself as "Alexander Mann."  It is believed that Alexander Mann is not the true name of the individual with whom Mr. Hegde spoke.  He is not employed with First Eastern Investments, but instead is an agent of Monarch who used the false affiliation with First Eastern Investments to gain Mr. Hegde's trust.  The actual identity of Alexander Mann is unknown at this time.

**16.**    After telling Mr. Hegde he was with First Eastern Investments, Mr. Mann told Mr. Hegde to "look them up."  Mr. Mann stated that First Eastern Investments was a private equity firm and that it offered investment opportunities with companies that would perform well.  Mr. Mann explained to Mr. Hegde that First Eastern Investments received a 4% commission per transaction in exchange for its investment advisory services.  When Mr. Hegde inquired about Ming Global's ability to withdraw invested monies from First Eastern Investments, Mr. Mann stated that funds could and would be remitted to Ming Global upon request.

**17.**    Mr. Mann identified a few investment opportunities and asked Mr. Hegde if Ming Global would invest $20,000.  Specifically, he asked Ming Global to invest in the stock of two entities – BioNTech, SE (BNTX) and Novavax, Inc (NVAX).

**18.**    Mr. Hegde, who is based out of Australia, asked Ming Global's accountant at Asia Business Centre in Hong Kong for assistance.  The accountant confirmed that First Eastern Investments is a legitimate company and leading private equity firm in Hong Kong.  Mr. Hegde's internet research on First Eastern

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

Investments and its CEO Victor Chu, who was also referenced by Monarch, confirmed the same.

19.     Based on the representations made by Mr. Mann, Ming Global agreed to invest the $20,000 with what it believed was First Eastern Investments for the purposes of acquiring equity shares in BNTX and NVAX.  Mr. Mann instructed that the payment be made to Monarch Holdings, Inc., which it described as the brokerage firm who would hold the funds and purchase the shares for Ming Global's investments.  Mr. Mann then provided wire instructions to two separate bank accounts in Monarch's name, one at Bank of America and one at U.S. Bank.

20.     Specifically, Mr. Mann made representations as to the following material terms of the transaction: (1) First Eastern Investments would invest Ming Global's money in exchange for a 4% commission fee per transaction; (2) invested money would be returnable upon request by Ming Global; (3) the initial $20,000 was to be invested in purchasing the stocks BNTX and NVAX; and (4) Monarch was acting at the direction of and in concert with First Eastern Investments.  Based on these representations, Ming Global sent $20,000 to Monarch on June 3, 2020.

21.     Monarch then provided Ming Global with online account access through which Ming Global could see its stock holdings ("Online Account").  This Online Account statement included the "First Eastern Investments Limited" logo.  The Online Account statement also reflected Ming Global's name, Mr. Hegde's name, the amount of shares purchased, and current market price of the shares Monarch claimed to have purchased on Ming Global's behalf.  Attached hereto as **Exhibit 1** is a true and correct copy of a screenshot of the Online Account.  Attached hereto as **Exhibit 2** is a true and correct copy of a second screenshot of the Online Account.

22.     A few days after Ming Global's initial investment with Monarch, Mr. Mann contacted Mr. Hegde to tell him that Ming Global's shares were performing very well.  He used this "good news" to set up an introduction between Mr. Hegde and "Scott Bailey", another purported representative of First Eastern Investments.  Scott

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Bailey is not associated with First Eastern Investments, but rather is associated with Monarch.  Scott Bailey appears to be another fake name.

23.     In mid-June 2020, Mr. Hegde spoke with Mr. Bailey.  During that call, Mr. Bailey represented that he had another investment opportunity for Ming Global. He asked for a $200,000 investment, this time to purchase shares in Anheuser Busch InBev SA/NV (BUD), United Continental Holdings, Inc. (UAL), and The Boeing Company (BA).  Because the prior small investment had seemingly done well (although no funds were returned), Mr. Hegde believed Mr. Bailey's representation that this investment would be profitable as well.  When Mr. Hegde asked Mr. Bailey if the invested funds would be returnable upon request by Ming Global, he stated that they would be and confirmed that the money would be invested pursuant to the same terms as those stated by Mr. Mann.  Ming Global thus transferred $200,000 to Monarch for this second investment opportunity on June 16, 2020, under the same terms and conditions as represented by Monarch for the initial $20,000 investment.

24.     Around this same time, Mr. Bailey referred Ming Global to yet another purported representative of First Eastern Investments, his "boss" "Peter Lynd."  Like the others, Peter Lynd is not actually associated with First Eastern Investments, but rather is an agent of Monarch.  Like the others, Peter Lynd is believed to be a fake name.

25.     Peter Lynd called Mr. Hegde shortly thereafter to solicit Ming Global's investment in "pre-IPO" call option shares in the company Royalty Pharma, PLC (RPRX) at a price of $19 per share.  Mr. Hegde conducted his own research on RPRX and it appeared to be a sound investment opportunity in a pre-IPO pharmaceutical company.  Mr. Hegde specifically inquired again if Ming Global's money would be returned upon demand, and Mr. Lynd unequivocally responded that it could and would be returned.  Again, in reliance on Monarch's representations and because the prior investments appeared profitable, Ming Global made four separate transfers of funds totaling $1,900,000 to Monarch between June 17, 2020 and June 19, 2020.  Mr.

6

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

Lynd confirmed this investment would be made under the same terms and conditions as those represented by Monarch to govern the two prior investments.

26.    In early July 2020, Mr. Hegde told Mr. Lynd that Ming Global wanted to liquidate its investments.  Given the representations of Mr. Mann, Mr. Bailey, and Mr. Lynd on behalf of Monarch, Mr. Hegde understood that these monies could be returned upon Ming Global's demand.  However, Mr. Lynd told Mr. Hegde that Ming Global must actually invest more money before Ming Global could sell its RPRX shares.  He stated that if Ming Global invested an additional $10 million to purchase additional RPRX shares, the restricted shares (which could not be sold) would be converted to unrestricted shares (which could be sold) within two days, and Ming Global's investment would be returned within a week.  At that time, RPRX had completed its initial public offering and was trading on the Nasdaq for more than $40 per share.  Thus, it seemed to Ming Global to be a sound investment to provide another $10 million to purchase additional shares of RPRX.  In reliance on this representation, Ming Global transferred an additional $10 million to Monarch between July 2, 2020 and August 11, 2020.  This transfer was made for the specific purpose of enabling the return of the entire capital that had been invested with First Eastern Investments, as Monarch represented would be the case.

27.    Mr. Lynd stopped returning calls and emails from Mr. Hegde and other representatives of Ming Global shortly thereafter.  Ming Global became concerned by the lack of communication and the failure of Monarch to return the money as agreed.  Thereafter, Mr. Hegde was informed by Mr. Bailey that Mr. Lynd had to suddenly go to London because his sister had taken ill and that Mr. Bailey would again take over the account.

28.    On July 21, 2020, Monarch confirmed that Ming Global's recent transfers were received and that "once the payments that were transferred to us today have cleared you will be paid in full for your last trade." (July 21, 2020 email from

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

Angela Fung, p. 1.) Attached hereto as **Exhibit 3** is a true and correct copy of the July 21, 2020 email from Monarch's representative, Angela Fung.

29.    On July 29, 2020, Monarch required that Ming Global transfer additional funds in the amounts of $475,000 and $323,000 for what it called a "de-restriction fee", as a necessary condition before the money could be returned. After this payment, Monarch confirmed that Ming Global's payments would be returned to Ming Global in fourteen days: "In answer to your query, yes you are absolutely correct. It will be refunded within 10-14 days so I can confirm that." (July 29, 2020 email from Scott Bailey, p. 1.) Attached hereto as **Exhibit 4** is a true and correct copy of the July 29, 2020 email from Monarch's representative, Scott Bailey. Attached hereto as **Exhibit 5** is a true and correct copy of the de-restriction fee payment confirmation Ming Global received from Monarch. Attached hereto as **Exhibit 6** is a true and correct copy of the de-restriction payment receipt Ming Global received from Monarch. Attached hereto as **Exhibit 7** is a true and correct copy of the Certificate of De-Restriction Ming Global received from Monarch, reflecting that the De-Restriction was disposed "Through Monarch Holdings, Inc."

30.    On July 31, 2020, Monarch confirmed its agreement with Ming Global and told Ming Global that "the available cash is now $19,736,940.00. As agreed with Mr. Hegde, our transfer agent will initiate the transaction at their earliest convenience, however please understand it will be New York morning time." (July 31, 2020 email from Angela Fung, p. 1.) Attached hereto as **Exhibit 8** is a true and correct copy of the July 31, 2020 email from Monarch's representative, Angela Fung. This was false.

31.    Despite Monarch's agreement to transfer the funds in the morning (Eastern Time) on August 1, 2020, the transfer of these funds (and sums due from subsequent transfers), have not been made.

32.    Ming Global has repeatedly inquired about the status of the transfer of funds. In response, Monarch has provided a slew of ambiguous explanations and excuses for the delay, including "tax" and "regulatory issues" for which it has not

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
                                        COMPLAINT

provided any documentary support.   It has also demanded that Ming Global supply additional documentation and pay additional money.  Left with no other option to receive its money, Ming Global has complied.

**33.**   None of Monarch's explanations for its delay in the release of funds have been supported by documents, despite Ming Global's requests for such support.  All the while, Monarch has repeatedly asserted that payments are forthcoming.

**34.**    Monarch's purported explanations, excuses, and false promises (which were made *in writing*) include, but are not limited to, the communications detailed below:

    a. On August 4, 2020: "The transfer was blocked by the tax department of the bank as they couldn't confirm Ming Global Ltd registered address." […]

The total cash balance is $26,183,540.00 plus a further $798,000.00 from the refunded de-restriction fee, however we do not anticipate this to be available for another week or so. We have already processed the insurance claim, so it should become available no later than 14th of August."

(August 4, 2020 email from Angela Fung, p. 4.)  Attached hereto as Exhibit 9 is a true and correct copy of the August 4, 2020 email from Monarch's representative, Angela Fung.

    b. On August 11, 2020: "We regret to inform you that Mr. Scott Bailey's personal margin for $250,000.00 has been rejected by the C.A.T.S, therefore there is still an outstanding balance which requires your immediate attention, as it needs to be settled before we can instruct the transfer agent to finalise the repatriation of your proceeds." (August 11, 2020 email from Angela Fung, p. 5.)  Attached hereto as **Exhibit 10** is a true and correct copy of the August 11, 2020 email from Monarch's representative, Angela Fung.

9

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

c. On August 11, 2020: "I have just been informed the funds will arrive no later than 10:00 am tomorrow morning as we must wait for the transfer Donna executed earlier today to clear in the account." (August 11, 2020 email from Scott Bailey via Angela Fung. p. 1.) Attached hereto as **Exhibit 11** is a true and correct copy of the August 11, 2020 email from Monarch's representative, Scott Bailey via Angela Fung.

d. On August 13, 2020: "I am awaiting on a confidential report from the US in reference to the transaction of your funds. The conversion of your account ownership from private to corporate is my suspicion and that of the compliance team here at First Eastern. Without this getting delayed any further, I have 'people' finding out also if this is a capital gains issue on the funds due to the above status of account having changed." (August 13, 2020 email from Graham Cowell, p. 1.) Attached hereto as **Exhibit 12** is a true and correct copy of the August 13, 2020 email from Monarch's representative, Graham Cowell.

e. On August 25, 2020: "I have made all necessary filings with regards to your case. As soon as we receive the written documents from the U.S. I shall send you and Donna a copy.

We will be making ready all temporary funding required for the 'Stock Transfer Tax' on your behalf. Once this is completed, you as the receiving client will be reimbursed with your payment in full, which upon receipt may then be reimbursed to us." (August 25, 2020 email from Graham Cowell, p. 1.) Attached hereto as **Exhibit 13** is a true and correct copy of the August 25, 2020 email from Monarch's representative, Graham Cowell.

**35.** On August 14, 2020, Monarch informed Ming Global that it could not release the funds owed to it, totaling approximately $26,000,000, unless Ming Global completed (and paid for) an Anti-Money Laundering ("AML") Certification. The

10

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

AML Certification would cost Ming Global an additional $643,073.31. Ming Global once again agreed to Monarch's request so that the transfer of funds could finally be completed.

**36.** Ming Global and Monarch's agreement is documented in an August 14, 2020 Guarantee Letter, which states that "upon completion of an AML Certification [Ming Global] will receive a financial settlement in the amount of $26,683,540" and that Monarch will "proceed with remittance of the funds . . . within a period of not more than 3 (three) business days." Attached hereto as **Exhibit 14** is a true and correct copy of the Guarantee Letter.

**37.** On August 14, 2020, Ming Global paid hundreds of thousands for the AML Certification and provided it to Monarch. Attached hereto as **Exhibit 15** is a true and correct copy of the AML fee confirmation Ming Global received from Monarch. Attached hereto as **Exhibit 16** is a true and correct copy of the transaction receipt Monarch provided for Ming Global's AML fee payment. Despite receiving the AML Certification, however, Monarch still refused to return Ming Global's money.

**38.** On August 27, 2020, Monarch sent Ming Global and its bank an urgent message:

> WE ARE WAITING FOR THE EXACT DATE TO BE CONFIRMED WITH OUR OUTGOING TRANSFER DEPARTMENT. TAKE NOTE THAT PREVIOUS COMPLIANCE IRREGULARITIES HAVE BEEN A FACTOR IN TIME DELAY.
> ADVISE CLIENT THAT ACCOUNT IS CONFIRMED TO BE AML CERTIFIED.
> FURTHER WE CONFIRM THAT WE HAVE STILL YET TO RECEIVE ADDITIONAL NOTIFICATIONS OF REGULATORY INCIDENT REGARDING THE BENEFICIARY. WE WILL EXERCISE OUR COMPLIANCE RIGHT WHEN INITIATING

11

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

REMITTANCE TO BENEFICIARY.

ADVISE TO AWAIT SWIFT RECEIPT ONCE VALUE DATE CONFIRMED.

Attached hereto as **Exhibit 17** is a true and correct copy of the August 27, 2020 message sent by Monarch to Ming Global.

**39.** On August 31, 2020, after more than a month had passed since Ming Global first requested the return of the sums owed to it by Monarch, Mr. Hegde sent Mr. Bailey an email:

Scott, at this stage having no visibility or clarity is making lots of my investors nervous, including me. And as we all know nervous people are not good.

The issue would have calmed down if we knew exactly what was going on and had transparency & visibility in paper work, but each time we hear its the "IRS, it's "BOFA", its trump etc which leaves us confused and nervous.

All we now ask for is to execute our Guarantee letter and ensure the funds are in our account within 2 business days as promised. Not much to ask for.

Attached hereto as **Exhibit 18** is a true and correct copy of the August 31, 2020 email Mr. Hegde sent to Scott Bailey.

**40.** On August 31, 2020, Ming Global also attempted to reach Monarch directly to inquire about the status of the transfer of funds. Monarch did not respond to Ming Global's efforts to contact it. But shortly thereafter, Mr. Bailey instructed Mr. Hegde not to contact Monarch directly and that Monarch will not respond to Ming Global's requests. This reinforced Ming Global's belief that Monarch was simply a front for this scheme.

**41.** On September 2, 2020, Monarch sent a letter, purportedly from Victor Chu, CEO of First Eastern Investments, informing Ming Global that he could not release the funds because "the IRS believes there is a 30% withholding tax associated with the Ming Global trading account. This is of course absurd." Monarch then proposed a "20 day trading cycle" as a mechanism to resolve the purported regulatory

12

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

issues. Attached hereto as **Exhibit 19** is a true and correct copy of the September 2, 2020 letter, allegedly from Victor Chu of First Eastern Investments.

42.     On September 2, 2020, Ming Global sent a letter to Monarch again addressing its failure to remit the funds:

> "Upon your recommendation, advice and instructions, we paid a total of US $13,329,181.76 to Monarch Holdings Inc. for investment purpose. We have been expecting a financial settlement in the amount of US $27326613.30 (the "Outstanding Sum") from our investment since 16th August 2020. This is evidenced by the Letter of Guarantee issued by you in our favour dated 14 August 2020. However, there remains no indication as to when the Outstanding Sum would be paid to us. Your initial explanation was that the Outstanding Sum was in an account with Bank of America in Singapore which was somehow being restricted and thus could not be paid out. In your letter to us dated 2 September 2020, you seem to be suggesting that the Outstanding Sum is subject to 30% withholding tax by the IRS and therefore cannot be paid before this is resolved. In the same letter, you seem to be further suggesting that the "regulators" (we do not know who they are) have concerns over our account. At all times, we have not been provided with any details or particulars concerning these alleged issues, or documents in support of the above purported explanations for the delay in payment of the Outstanding Sum."

Attached hereto as **Exhibit 20** is a true and correct copy of the September 2, 2020 letter Mr. Hegde sent to Monarch.

43.     On September 7, 2020, Ming Global also followed up on the refund for the de-restriction fee that Ming Global paid on July 29, 2020, which Monarch confirmed would be refunded to Ming Global within fourteen days. Monarch responded with another unsupported explanation: "the de-restriction refund has been halted until we satisfy the bank regulators which is why we will be executing several trades over the next 2 weeks or so." (September 7, 2020 email exchange between

13

Donna Marie and Angela Fung, p. 2.)  Attached hereto as **Exhibit 21** is a true and correct copy of the September 7, 2020 email exchange between Donna Marie of Ming Global to a representative of Monarch, Angela Fung.

44.     On September 14, 2020, Monarch advised Ming Global that it will be "initiating a further 4 trades tonight and a further 3 trades tomorrow, which will be a total of 15 trades throughout the trading cycle. This will be sufficient enough for us to proceed with the repatriation back to your Ming Global Ltd account. As agreed, once the first $15,000,000.00 has successfully cleared, we will discuss the location of remaining balance." (September 14, 2020 email from Scott Bailey, p. 1.)  Attached hereto as **Exhibit 22** is a true and correct copy of the September 14, 2020 email from Monarch's representative, Scott Bailey.  However, as with each of its previous promises and representations, this was false.  No funds were transferred to Ming Global.

45.     In sum, Ming Global has transferred $13,329,181.76 to Monarch. Attached hereto as **Exhibit 23** is a true and correct copy of Ming Global's Statement of Account with Monarch, reflecting each of the transfers to Monarch.

46.     Monarch has provided Ming Global with documentation of its investments and transactions, including remittance instructions to Monarch's US Bank account, trade confirmations, and transaction receipts, examples of which are attached hereto.  Attached hereto as **Exhibit 24** is a true and correct copy of one of the remittance instructions to Monarch's US Bank that Monarch provided to Ming Global; attached hereto as **Exhibit 25** is a true and correct copy of one of the trade confirmations Monarch provided to Ming Global; attached hereto as **Exhibit 26** is a true and correct copy of one of the transaction receipts Monarch provided to Ming Global.  Ming Global also has bank documents reflecting Ming Global transfers to Monarch.  Attached hereto as **Exhibit 27** is a true and correct copy of one of Ming Global's online HSBC account statements reflecting one of its transfers to Monarch.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

47.   At all relevant times, Ming Global believed Monarch and the individuals acting on its behalf were actually acting on behalf of First Eastern Investments, and that all of the funds Ming Global invested were being properly managed by a sophisticated private equity firm, First Eastern Investments.  This belief was based on the multiple statements made by Monarch and its representatives and the documents they provided, as reflected herein.

48.   Ming Global was wrong.  None of Monarch's agents were employed with or authorized to represent First Eastern Investments, and Ming Global's investments were not being managed by First Eastern Investments.  Instead, these individuals were working through Monarch to defraud Ming Global.

49.   After growing suspicious of Monarch due to its failure to return the sums owed to Ming Global and its unsupported explanations for delays, on September 7, 2020, Ming Global contacted Control Risks, a consulting firm that specializes in investigating financial fraud, to research Monarch.  In a report provided to Ming Global, Control Risks found the following:

a. None of the identities of any of the individuals purportedly representing First Eastern Investments with whom Mr. Hegde interacted could be confirmed.  These individuals do not have internet presences and therefore the names they provided are believed to be fake.

b. Victor Chu, the founder and CEO of the real First Eastern Investments, confirmed that none of the parties with whom Ming Global has interacted are linked to him.  As such, the investigative firm concluded that Monarch is "fraudulently using Victor Chu's name and that of his firm."

c. The investigative firm also found discrepancies between the email address listed for First Eastern Investments on the Hong Kong Securities and Futures Commission ("SFC") registry, and the email address Monarch provided to Ming Global.

15

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

50.     Through open source research, Ming Global has also discovered that Monarch is a Nevada entity registered to do business in California, and that Monarch's filings with the California Secretary of State list a sole corporate director, "Veronica So".   Attached hereto as **Exhibit 28** is a true and correct copy of Monarch Holdings, Inc.'s Statement and Designation by Foreign Corporation filed with the California Secretary of State on June, 18, 2020.  Attached hereto as **Exhibit 29** is a true and correct copy of Monarch Holdings, Inc.'s Statement of Information filed with the California Secretary of State on August 5, 2020.

51.     Monarch's corporate filings also list the address of Monarch's office and its corporate director as 1625 N. El Camino Real, Unit B, San Clemente, California 92672.   According to an internet research, a small storage facility is located at this address. Attached hereto as **Exhibit 30** is a true and correct copy of the search result for the address reflected on Monarch Holdings, Inc.'s filings with the California Secretary of State, 1625 N. El Camino Real, Unit B, San Clemente, California 92672.  Included is an image provided by Google's "street view" feature that provides an image of what is located at the address mentioned.  The image was captured on September 21, 2020.

52.     Monarch's website lists its California address as 33 Mistral, Aliso Viejo, California 92656, which, according to internet research, appears to be a condominium in a residential area.  Attached hereto as **Exhibit 31** is a true and correct copy of Monarch Holdings, Inc.'s contact page on the entity's website, monarchholdingsinc.com, captured on September 21, 2020.  Attached hereto as **Exhibit 32** is a true and correct copy of the search result for the address reflected on Monarch Holding, Inc.'s website, 33 Mistral, Aliso Viejo, CA 92656.  Included is an image provided by Google's "street view" feature that provides an image of what appears to be a condominium located at the address mentioned.  The image was captured on September 21, 2020.

53.     Additionally, Monarch is not registered as a U.S. securities broker on the Financial Industry Regulatory Authority's list of authorized securities brokers.

16

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

(website: https://brokercheck.finra.org/). Attached hereto as **Exhibit 33** is a true and correct copy of the search result for "Monarch" for security brokerage firms within California and Nevada on the U.S. Financial Industry Regulatory Authority's website brokercheck.finra.org. The government agency's website states, "BrokerCheck tells you instantly whether a person or firm is registered, as required by law, to sell securities (stocks, bonds, mutual funds and more), offer investment advice or both."

54. On September 15, 2020, a report regarding Monarch's transactions with Ming Global was filed by Control Risks with the Hong Kong Police Force on Ming Global's behalf. Attached hereto as **Exhibit 34** is a true and correct copy of the September 15, 2020 police report. Attached hereto as **Exhibit 35** is a true and correct copy of Ming Global's Letter of Authority for Control Risks to file the report with the Hong Kong Police Force. No action has been taken on that report to date. Because the funds were transferred to California and held by a California entity, Ming Global seeks this Court's assistance to recover the millions that have been stolen.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)
### (Against Monarch)

55. Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 55, inclusive, as though set forth in full herein.

## Breach of Express Contracts

56. Ming Global and Monarch entered into the following contracts:

a. First Contract: On or about June 3, 2020, Ming Global agreed to pay Monarch $20,000, in exchange for Monarch's 4% commission per transaction, for an investment in the stock of two entities, which Monarch would remit upon Ming Global's request.

17

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

b. Second Contract: On or about June 16, 2020, Ming Global agreed to pay Monarch $200,000 for a second investment under the same terms as the First Contract.

c. Third Contract: On or about July 2, 2020, Ming Global agreed to pay an additional $10,000,000 to Monarch in exchange for the conversion of Ming Global's allegedly restricted stocks to unrestricted stocks thereby permitting Ming Global to liquidate its investments.  This contract was memorialized in a July 31, 2020 email from Monarch to Ming Global.

d. Fourth Contract: On or about July 29, 2020, Ming Global agreed to make additional transfers of funds in the amount of $475,000 and $323,000 to Monarch to facilitate the transfer the outstanding funds owed to Ming Global.  Monarch agreed to return these additional payments within fourteen days after they were made on July 29, 2020.

e. Fifth Contract: On or about August 14, 2020, Ming Global agreed to pay $643,073.31 for an AML Certification, in exchange for Monarch's guarantee that it would transfer the outstanding $26,683,540 sum owed to Ming Global within three days of the validation of the AML Certification.

**57.**   Ming Global fully performed under the First, Second,  Third, Fourth and Fifth Contracts, making each of the requested transfers and providing the AML Certification.

**58.**   Monarch has not performed under any of its express contracts with Ming Global.  To date, Monarch has not remitted any of the agreed upon payments to Ming Global as required by each of the contracts.

**59.**   As a proximate cause of Monarch's breach of the express contracts, Ming Global has been harmed by the loss of $26,683,540 outstanding sum it is owed, inclusive of the $13,329,181.76 it invested and transferred to Monarch.  Monarch's

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
                              COMPLAINT

failure to remit payments due under the contracts was a substantial factor in causing this harm.

## Breach of Implied Contract

**60.**     Even absent the express contracts Monarch entered into with Ming Global, through its conduct, Monarch entered into an implied-in-fact contract with Ming Global.  Specifically, when Ming Global made the transfers of funds to Monarch in July 2020 for the purposes of the unrestricted stock purchase and transfers of the additional fees and insurance payments on July 29, 2020, which Monarch accepted, it was impliedly agreed that Monarch would timely remit the sums owed to Ming Global.

**61.**     Ming Global fully performed on the implied-in-fact contract by making the July 2020 payments and payments for the additional fees and insurance to Monarch.

**62.**     Monarch refused to remit these sums owed to Ming Global.

**63.**     Ming Global has been harmed by Monarch's refusal to return the sums owed, and  Monarch, as the party with control over the funds which refused to release them, was a substantial factor in the harm.

## SECOND CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### (Against Monarch)

**64.**     Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 63, inclusive, as though set forth in full herein.

**65.**     Ming Global and Monarch entered into the following contracts:

   a. First Contract: On or about June 3, 2020, Ming Global agreed to pay Monarch $20,000, in exchange for Monarch's 4% commission per transaction, for an investment in the stock of two entities, which Monarch would remit upon Ming Global's request.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

b. Second Contract: On or about June 16, 2020, Ming Global agreed to pay Monarch $200,000 for a second investment under the same terms as the First Contract.

c. Third Contract: On or about July 2, 2020, Ming Global agreed to pay an additional $10,000,000 to Monarch in exchange for the conversion of Ming Global's allegedly restricted stocks to unrestricted stocks thereby permitting Ming Global to liquidate its investments. This contract was memorialized in a July 31, 2020 email from Monarch to Ming Global.

d. Fourth Contract: On or about July 29, 2020, Ming Global agreed to make additional transfers of funds in the amount of $475,000 and $323,000 to Monarch to facilitate the transfer the outstanding sums owed to Ming Global. Monarch agreed to return these additional payments within fourteen days after they were made on July 29, 2020.

a. Fifth Contract: On or about August 14, 2020, Ming Global agreed to pay $643,073.31 for an AML Certification, in exchange for Monarch's guarantee that it would transfer the outstanding $26,683,540 sum owed to Ming Global within three days of the validation of the AML Certification.

66.     Ming Global fully performed under the express contracts, making each of the requested transfers and providing the AML Certification.

67.     Monarch has unfairly interfered with Ming Global's right to receive the benefits of the express contracts by failing to secure the transfer of sums owed to Ming Global on the basis of bad faith and unsupported justifications.

68.     As a proximate cause of Monarch's breach of the implied covenant of good faith and fair dealing, Ming Global has been harmed by the loss of the $26,683,540 sums it is owed, inclusive of the $13,329,181.76 it originally invested with Monarch.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

### Breach of Covenant of Good Faith and Fair Dealing in Implied Contract

**69.** Even absent the express contracts Monarch entered into with Ming Global, through its conduct, Monarch entered into an implied-in-fact contract with Ming Global. Specifically, when Ming Global made the transfers of funds to Monarch in July 2020 for the purposes of the unrestricted stock purchase and the additional fees and insurance payments on July 29, 2020, which Monarch accepted, it was impliedly agreed that Monarch would timely remit the sums owed to Ming Global.

**70.** Ming Global fully performed on the implied-in-fact contract by making the July 2020 payments and payments for the additional fees and insurance to Monarch.

**71.** Monarch unlawfully interfered with Ming Global's right to receive benefits of the contract by refusing to remit the funds due to Ming Global.

**72.** Ming Global has been harmed by Monarch's refusal to return the sums owed, and Monarch, as the party with control over the funds which refused to release them, was a substantial factor in the harm.

### THIRD CLAIM FOR RELIEF
### (For Fraud)
### (Against Monarch)

**73.** Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 72, inclusive, as though set forth in full herein.

### Fraudulent Misrepresentation Regarding Monarch's Identity

**74.** Monarch, through its agents, repeatedly represented to Ming Global that it was the Hong Kong private equity firm, First Eastern Investments.

**75.** On information and belief, Monarch and its agents are not associated with First Eastern Investments.

21

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

**76.**     Monarch made this misrepresentation with the intent to induce Ming Global to rely on it and transfer funds to Monarch for alleged investment opportunities.

**77.**     Ming Global reasonably relied on Monarch's representations. After a review of First Eastern Investments and its CEO, Victor Chu, Ming Global decided to invest with what it believed was First Eastern Investments and made numerous transfers to Monarch in the amount of $13,329,181.76.

**78.**     Monarch's misrepresentation was made with malice, fraud, and oppression.

**79.**     Ming Global was harmed by Monarch's fraudulent misrepresentations because, on information and belief, Ming Global did not receive the professional services it expected from a legitimate private equity firm, and instead has been unable to recoup any profits allegedly made on its investments or its original investments due to Monarch's unprofessional, fraudulent, obstructionist acts.

### Fraud Regarding Solicitation and Return of Ming Global's Funds

**80.**     On or about June 3, 2020, Monarch represented that if Ming Global transferred $20,000 to Monarch for an investment in the stock of two entities, Monarch would remit this investment to Ming Global upon its request. On or about June 16, 2020, Monarch represented that the same agreement to remit the funds upon request would apply to Ming Global's second investment of $200,000.

**81.**     On or about July 2, 2020, Monarch represented to Ming Global that if it transferred additional funds to Monarch in the amount of $10,000,000, Ming Global could liquidate its investments. On or about July 31, 2020, Monarch again represented to Ming Global in email that "the available cash is now $19,736,940.00. As agreed with Mr. Hegde, our transfer agent will initiate the transaction at their earliest convenience, however please understand it will be New York morning time."

**82.**     In or around July 29, 2020, Ming Global made additional transfers in the amounts of $475,000 and $323,000 based on Monarch's representation that they were

22

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

required to facilitate the transfer of the outstanding sums owed to Ming Global. Monarch represented that these additional payments, which were made on July 29, 2020, would be refunded after fourteen days.

83. In or around August 14, 2020, Ming Global agreed to pay $643,073.31 for an AML Certification, in exchange for Monarch's guarantee that it would transfer the outstanding $26,683,540 in Ming Global's investments and profits to Ming Global within three days of the validation of the AML Certification.

84. Ming Global reasonably relied on the advice of what it believed to be a legitimate private equity firm providing Ming Global with advice, and transferred millions of dollars in reliance on Monarch's representations.

85. Monarch has engaged in a fraudulent scheme to extort millions of dollars from Ming Global. It is clear from Monarch's conduct of providing Ming Global with a litany of vague and baseless justifications for not returning Ming Global's funds, that it never intended to provide Ming Global with returns on Ming Global's investments (if those investments were in fact made), to return the original funds Ming Global invested, or to return any additional funds it extracted under the guise of securing the return of the funds.

86. Each of Monarch's misrepresentations were made with malice, fraud, and oppression.

87. As a result of Monarch's fraud, Ming Global has been deprived of the $26,683,540 it is owed, and its original investment of $13,329,181.76. Monarch was plainly a substantial factor in causing this harm.

## FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy)
### (Against Monarch)

88. Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 87, inclusive, as though set forth in full herein.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

89.     In committing the wrongful acts alleged herein, including but not limited to its fraudulent misrepresentations and the state and federal securities fraud violations it perpetrated against Ming Global, Monarch and its agents have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.

90.     On information and belief, at all relevant times alleged herein, Monarch, allegedly acting as broker for its agents, was aware of the fraudulent scheme detailed above and incorporated herein.

91.     By nature of its purported role as broker for its agents, the nature of the relationship between Monarch and its agents as co-conspirators can be inferred.

92.     Notably, Monarch accepted Ming Global's transfer of funds with knowledge and in furtherance of that fraudulent scheme, and failed to return the funds to Ming Global.

93.     The conspiracy between Monarch and its individual agents as detailed above caused Ming Global to be damaged in the loss of the $26,683,540 sum it is owed, including its original investment of $13,329,181.76.

**FIFTH CLAIM FOR RELIEF**
**(For Promissory Estoppel)**
**(Against Monarch)**

94.     Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 93, inclusive, as though set forth in full herein.

95.     Monarch made the following clear and unambiguous promises to Ming Global:

a. First Promise: On or about June 3, 2020, Monarch promised that if Ming Global invested $20,000 in the stock of two entities, Monarch would remit the investment upon Ming Global's request.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

b. Second Promise: On or about June 16, 2020, Monarch promised that if Ming Global made a second investment of $200,000, it would also remit the investment upon Ming Global's request.

c. Third Promise: On or about July 2, 2020, Monarch's promised that if Ming Global paid an additional $10,000,000, Ming Global could liquidate its investments with Monarch.

d. Fourth Promise: On or about July 29, 2020, Monarch promised that if Ming Global made additional transfers of funds in the amount of $475,000 and $323,000, the outstanding sums owed to Ming Global would be transferred and the additional payments would be returned within fourteen days after they were made on July 29, 2020.

e. Fifth Promise: On or about August 14, 2020, Monarch promised that if Ming Global paid $643,073.31 for an AML Certification, Monarch would transfer the outstanding $26,683,540 sum owed to Ming Global within three days of the validation of the AML Certification.

96.  Ming Global reasonably relied on the advice of what it believed to be a legitimate private equity firm providing Ming Global with advice, and transferred millions of dollars in reliance on Monarch's representations.  As a purported client of Monarch, Ming Global's reliance on Monarch's representation was reasonable and foreseeable.

97.  As a proximate result of Monarch's promises and Ming Global's reliance thereon, Ming Global has been injured in the loss of the $26,683,540 it is owed, including its original investment of $13,329,181.76.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

### SIXTH CLAIM FOR RELIEF
#### (For Unjust Enrichment)
#### (Against Monarch)

**98.**   Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 97, inclusive, as though set forth in full herein.

**99.**   As a proximate result of its wrongful acts and omissions, Monarch was unjustly enriched at the expense of and to the detriment of Ming Global when it acquired the $13,329,181.76 sum Ming Global transferred to it.  It would be unjust for Monarch to retain these funds because they rightfully belong to Ming Global and were obtained and wrongfully withheld based on the false promises described herein.

**100.**   Accordingly, Ming Global seeks restitution from Monarch and an order of this Court disgorging the unjustly acquired funds.

### SEVENTH CLAIM FOR RELIEF
#### (For Money Had And Received)
#### (Against Monarch)

**101.**   Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 100, inclusive, as though set forth in full herein.

**102.**   Monarch received money that was intended to be used for the benefit of Ming Global, specifically transfers totaling $13,329,181.

**103.**   These funds have not been used for Ming Global's benefit, but are instead being kept from Ming Global despite repeated demands for its return.

26

Case No. _____
COMPLAINT

## EIGHTH CLAIM FOR RELIEF

## (For Federal Securities Fraud – Violation of Section 10b-5 of the Exchange Act of 1934, 15 U.S.C. §78j)

### (Against Monarch)

**104.**   Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 103, inclusive, as though set forth in full herein.

**105.**   Section 10b-5 bars any person from "us[ing] or employ[ing], in connection with the purchase or sale of any security, . . . any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). To state a claim under Section 10b-5, a Ming Global must plead six elements: "(1) material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.

**106.**   Ming Global realleges and incorporates herein by reference in particular each and every allegation set forth in paragraph 74 and paragraphs 79 through 82 as misrepresentations that were made by Monarch to Ming Global.  Specifically, in addition to repeatedly misrepresenting that it was the Hong Kong private equity firm, First Eastern Investments, Monarch made each of the following material misrepresentations:

  a.   On or about June 3, 2020, Monarch represented that if Ming Global transferred $20,000 to Monarch for an investment in the stock of two entities, Monarch would remit this investment to Ming Global upon its request.  On or about June 16, 2020, Monarch represented that the same agreement to remit the funds upon request would apply to Ming Global's second investment of $200,000.

  b.   On or about July 2, 2020, Monarch represented to Ming Global that if it transferred $10,000,000 to Monarch to purchase additional shares, its

27

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

restricted shares (which could not be sold) would be converted to unrestricted shares (which could be sold) within two days and Ming Global could thereafter liquidate its investments. On or about July 31, 2020, Monarch again represented to Ming Global in email that "the available cash is now $19,736,940.00. As agreed with Mr. Hegde, our transfer agent will initiate the transaction at their earliest convenience, however please understand it will be New York morning time."

c. In or around July 29, 2020, Ming Global made additional transfers in the amounts of $475,000 and $323,000 based on Monarch's representation that they were required to facilitate the transfer of the outstanding sums owed to Ming Global. Monarch represented that these additional payments, which were made on July 29, 2020, would be refunded after fourteen days.

d. In or around August 14, 2020, Ming Global agreed to pay $643,073.31 for an AML Certification, in exchange for Monarch's guarantee that it would transfer the outstanding $26,683,540 in Ming Global's investments and profits to Ming Global within three days of the validation of the AML Certification

107.   Monarch, through its agents, knowingly made the misrepresentations in order to deceive Ming Global. The misrepresentations Monarch knew to be false included, but are not limited to, the statements that Monarch and its agents were legitimate financial institutions and statements that Monarch was authorized to broker US securities.

108.   Monarch, through its agents, made the misrepresentations in connection with the purchase of a sale or security because Monarch represented itself as an investment broker authorized to broker US securities on behalf of Ming Global. Furthermore, Ming Global was deceived into believing he had purchased interests in US securities.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

**109.**   Ming Global relied upon Monarch's misrepresentations alleged herein, including, but not limited to, the misrepresentation that Monarch and its agents were legitimate financial institutions, in order to transfer his funds to Monarch.

**110.**   Ming Global transferred $13,329,181.76, and therefore suffered an economic loss in the same amount.

**111.**   But for the misrepresentations of Monarch, Ming Global would not have entered into any agreement, nor would Ming Global have transferred his funds to Monarch.

**112.**   Thus, Monarch, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a.   employed devices, schemes, or artifices to defraud;

    b.   made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c.   engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

**113.**   By engaging in the conduct described above, Monarch violated, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**114.**   As a result of violations, Ming Global is entitled to damages, recession of the transaction with Monarch, restitution of the consideration given by Ming Global, and an injunction ordering Monarch to cease its fraudulent operations.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____

COMPLAINT

### NINTH CLAIM FOR RELIEF

### (California State Securities Fraud – Violation of California Securities Law, Corp. Code § 25401 et seq.)

### (Against Monarch)

**115.**   Ming Global realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 114, inclusive, as though set forth in full herein.

**116.**   In around May through July 2020, Monarch, through its agents, offered to sell Ming Global securities, and induced Ming Global to transfer $13,329,181.76 to Monarch to purchase securities.  That transaction was made by means of oral and written communications via email and promotional materials which contained untrue statements of a material facts or omitted to state a material fact necessary in order to make the statements made in that communication, in light of the circumstances under which they were made, not misleading.  Those material misstatements and omissions are set forth above.

**117.**   Monarch and its agents materially assisted in the material misstatements and omissions set forth above. Each acted with the intent to deceive or defraud.

**118.**   As a result of the material misrepresentations and omissions, Ming Global is entitled to damages, and rescission of the transaction with Monarch.

### PRAYER

WHEREFORE, Ming Global prays for relief as follows:

A.     For entry of an order granting a prejudgment writ of attachment on all of Monarch's corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010, including, but not limited to, deposit accounts at financial institutions pursuant to Code of Civil Procedure Section 488.455, up to an amount of $13,329,181.76, pursuant to Plaintiff's concurrently filed application for a right to attach order and temporary protective order.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
COMPLAINT

B.     For an immediate preliminary and/or permanent injunction enjoining Monarch and all those acting under their direction or control from any further fraudulent actions;

C.     For an award of damages to Ming Global to compensate it for the harm caused by the Monarch's wrongful actions;

D.     For an award of punitive and exemplary damages in an amount sufficient to punish the Monarch's fraudulent, malicious or oppressive conduct and deter such conduct in the future;

E.     For an award of all costs incurred by Ming Global herein;

F.     For an award of all attorneys' fees incurred by Ming Global herein;

G.     For an award of pre-and post-judgment interest on all amounts awarded;

H.     For any and all such other and further relief as may be just and proper, including, but not limited to, any and all relief that may be available under or permitted by law.


Dated: September 24, 2020                    Respectfully submitted,

                                             **BAKER & McKENZIE LLP**


                                             By: /s/ *Nicholas O. Kennedy*
                                                  Nicholas O. Kennedy
                                                  Attorney for Plaintiff
///                                               MING GLOBAL LIMITED




///




///

///

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____
                              COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

3           Plaintiff Ming Global Limited hereby demands a trial by jury of all issues so

4   triable.

5

6       Dated: September 24, 2020                 Respectfully submitted,

7                                                 **BAKER & McKENZIE LLP**

8                                                 By: _/s/ Nicholas O. Kennedy_
                                                        Nicholas O. Kennedy
9                                                    Attorney for Plaintiff
                                                     MING GLOBAL LIMITED
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. _____

COMPLAINT