Nicholas O. Kennedy (State Bar No. 280504)
nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: 214 978 3000
Facsimile: 214 978 3099

Katharine Miner (State Bar No. 288083)
katharine.miner@bakermckenzie.com
Thomas Tysowsky (State Bar No. 330022)
thomas.tysowsky@bakermckenzie.com
**BAKER & McKENZIE LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: 310 201 4728
Facsimile: 310 201 4721

Attorneys for Plaintiff
MING GLOBAL LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MING GLOBAL LIMITED, a Hong Kong company,<br><br>Plaintiff,<br><br>v.<br><br>MONARCH HOLDINGS INC., a Nevada corporation, d/b/a MONARCH INTERNATIONAL INC., and Does 1 through 10 inclusive,<br><br>Defendants. | Case No. 8:20-cv-01852<br><br>**DECLARATION OF SHARATH KUMAR HEGDE IN SUPPORT OF PLAINTIFF MING GLOBAL LIMITED'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER AND FOR TEMPORARY PROTECTIVE ORDER** |

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

**1.** My name is Sharath Kumar ("Zach") Hegde. I am over the age of twenty-one years, of sound mind, have never been convicted of a felony, and am capable of making this Declaration. I have personal knowledge of the facts stated herein, except as set forth below. All of the facts herein are true and correct to the best of my knowledge. I further state that I am fully authorized and competent to testify to the matters set out in this Declaration.

**2.** I am a Director of Ming Global Limited ("Ming Global"). Ming Global is a Hong Kong corporation, with its principal place of business at 1206 Eastern Commercial Centre, 397 Hennessy Road, Wan Chai, Hong Kong. Ming Global is a supplier and distributor of promotional and other products for leading global businesses. It is an expert in sourcing and managing a complex global supply chain.

**3.** I make this Declaration in support of Plaintiff Ming Global Limited's Ex Parte Application for a Right to Attach Order and for a Temporary Protective Order.

**4.** In early May 2020, individuals identifying themselves as agents of First Eastern Investments, a well-known Hong Kong investment firm, cold-called me, pitching potential investment opportunities for Ming Global. I initially declined to speak with these people, but when they called back a second time, I agreed to set up a call with one of their representatives.

**5.** Shortly thereafter, I received a call from an individual who referred to himself as "Alexander Mann." Mr. Mann stated that he was with First Eastern Investments and told me to "look them up". Mr. Mann stated that First Eastern Investments was a private equity firm and that it offered investment opportunities with companies that would perform well. Mr. Mann explained to me that First Eastern Investments received a 4% commission per transaction in exchange for its investment advisory services. When I inquired about Ming Global's ability to withdraw invested monies from First Eastern Investments, Mr. Mann explained that funds could and would be remitted to Ming Global upon request.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

1

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

**6.** Mr. Mann identified a few investment opportunities and asked me if Ming Global would invest $20,000. Specifically, he asked me to invest in the stock of two entities – BioNTech, SE (BNTX) and Novavax, Inc (NVAX).

**7.** After the call, I asked Ming Global's accountant at Asia Business Centre in Hong Kong for assistance in evaluating First Eastern Investments. The accountant confirmed that First Eastern Investments is a leading private equity firm in Hong Kong. My internet research on First Eastern Investments and its CEO Victor Chu, who was also referenced by Mr. Mann, confirmed the same.

**8.** Based on the representations made by Mr. Mann, we agreed to invest the $20,000 with what we believed was First Eastern Investments for the purposes of acquiring equity shares in BNTX and NVAX. Mr. Mann instructed that the payment be made to Monarch Holdings, Inc., which he described as the brokerage firm that would hold the funds and purchase the shares for Ming Global's investments. Mr. Mann then provided wire instructions to two separate bank accounts in Monarch's name, one at Bank of America and one at U.S. Bank.

**9.** Specifically, Mr. Mann made representations as to the following material terms of the transaction: (1) First Eastern Investments would invest Ming Global's money in exchange for a 4% commission fee per transaction; (2) invested money would be returnable upon request by Ming Global; (3) the initial $20,000 was to be invested in purchasing the stocks BNTX and NVAX; and (4) Monarch was acting at the direction of and in concert with First Eastern Investments. Based on these representations, Ming Global sent $20,000 to Monarch on June 3, 2020.

**10.** I later learned that the individuals with whom I spoke were not associated with First Eastern Investments and, for the reasons detailed herein, believe that they instead were and are acting in coordination with and as agents of Monarch. As such, it was actually Monarch that made the representations regarding the terms of the investment on which I and Ming Global relied in making the investments. For clarity,

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

2

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

I collectively refer to these purported representatives of First Eastern Investments as "Monarch."

11. Monarch then provided Ming Global with online account access through which we could see our stock holdings ("Online Account"). This Online Account statement included the "First Eastern Investments Limited" logo. The Online Account statement also reflected Ming Global's name, my name, the amount of shares purchased, and current market price of the shares Monarch claimed to have purchased on Ming Global's behalf. Attached hereto as **Exhibit 1** is a true and correct copy of a screenshot of the Online Account. Attached hereto as **Exhibit 2** is a true and correct copy of a second screenshot of the Online Account.

12. A few days after our initial investment with Monarch, Mr. Mann contacted me to say that Ming Global's shares were performing very well. He then said he would set up an introduction between me and "Scott Bailey", another purported representative of First Eastern Investments.

13. In mid-June 2020, I spoke with Mr. Bailey. During that call, Mr. Bailey represented that he had another promising investment opportunity for Ming Global. He asked for a $200,000 investment, this time to purchase shares in Anheuser Busch InBev SA/NV (BUD), United Continental Holdings, Inc. (UAL), and The Boeing Company (BA). Because the prior small investment had seemingly done well (although no funds were returned), I believed Mr. Bailey's representation that this investment would be profitable as well. When I asked Mr. Bailey if the invested funds would be returnable upon request by Ming Global, he stated that they would be and confirmed that the money would be invested pursuant to the same terms as those stated by Mr. Mann. Ming Global thus transferred $200,000 to Monarch Holdings for this second investment opportunity on June 16, 2020, under the same terms and conditions as represented by Monarch for the initial $20,000 investment.

14. Around June 16, 2020, Mr. Bailey referred me to yet another purported representative of First Eastern Investments, his "boss" "Peter Lynd." Mr. Lynd called

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

3

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

me shortly thereafter to solicit Ming Global's investment in "pre-IPO" call option shares in the company Royalty Pharma, PLC (RPRX) at a price of $19 per share. I conducted my own research on RPRX and it appeared to be a sound investment opportunity in a pre-IPO pharmaceutical company. I specifically inquired again if Ming Global's money would be returned upon demand, and Mr. Lynd unequivocally responded that it could and would be returned. Again, in reliance on Monarch's representations and because the prior investments appeared profitable, Ming Global made four separate transfers of funds totaling $1,900,000 to Monarch between June 17, 2020 and June 19, 2020. Mr. Lynd confirmed this investment would be made under the same terms and conditions as those represented by Monarch to govern the two prior investments.

**15.** In early July 2020, I informed Mr. Lynd that Ming Global wanted to liquidate its investments. Given the representations of Mr. Mann, Mr. Bailey, and Mr. Lynd on behalf of Monarch, I understood that these monies could be returned upon Ming Global's demand. However, Mr. Lynd told me that Ming Global must actually invest more money before Ming Global could sell its RPRX shares. He stated that if Ming Global invested an additional $10 million to purchase additional RPRX shares, the restricted shares (which could not be sold) would be converted to unrestricted shares (which could be sold) within two days, and Ming Global's investment would be returned within a week. At that time, RPRX had completed its initial public offering and was trading on the Nasdaq for more than $40 per share. It thus seemed to be a sound investment to provide another $10 million to purchase additional shares of RPRX. In reliance on this representation, Ming Global transferred an additional $10 million to Monarch between July 2, 2020 and August 11, 2020. This transfer was made for the specific purpose of enabling the return of the entire capital that had been invested with First Eastern Investments, as Monarch represented would be the case.

**16.** Shortly thereafter, Mr. Lynd stopped returning calls from me and my associates at Ming Global. We became concerned by the lack of communication and the failure of Monarch to return the money as agreed.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

**17.** I was informed by Mr. Bailey that Mr. Lynd had to suddenly go to London because his sister had taken ill and that Mr. Bailey would again take over the account.

**18.** On July 21, 2020, Monarch confirmed in an email that Ming Global's recent transfers were received and that "once the payments that were transferred to us today have cleared you will be paid in full for your last trade." (July 21, 2020 email from Angela Fung, p. 1.) Attached hereto as **Exhibit 3** is a true and correct copy of the July 21, 2020 email from Monarch's representative, Angela Fung.

**19.** On July 29, 2020, Monarch required that Ming Global transfer additional funds in the amounts of $475,000 and $323,000 for what it called a "de-restriction fee", as a necessary condition before the money could be returned. After this payment, Monarch confirmed that Ming Global's payments would be returned to Ming Global in fourteen days: "In answer to your query, yes you are absolutely correct. It will be refunded within 10-14 days so I can confirm that." (July 29, 2020 email from Scott Bailey, p. 1.) Attached hereto as **Exhibit 4** is a true and correct copy of the July 29, 2020 email from Monarch's representative, Scott Bailey. Attached hereto as **Exhibit 5** is a true and correct copy of the de-restriction fee payment confirmation Ming Global received from Monarch. Attached hereto as **Exhibit 6** is a true and correct copy of the de-restriction payment receipt Ming Global received from Monarch. Attached hereto as **Exhibit 7** is a true and correct copy of the Certificate of De-Restriction Ming Global received from Monarch.

**20.** On July 31, 2020, Monarch confirmed its agreement with Ming Global and stated that "the available cash is now $19,736,940.00. As agreed with Mr. Hegde, our transfer agent will initiate the transaction at their earliest convenience, however, please understand it will be New York morning time." (July 31, 2020 email from Angela Fung, p. 1.) Attached hereto as **Exhibit 8** is a true and correct copy of the July 31, 2020 email from Monarch's representative, Angela Fung.

**21.** Despite Monarch's agreement to transfer the $19,736,940.00 sum in the morning (Eastern Time) on August 1, 2020, these funds (and sums due and owing from

5

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

subsequent transfers), still have not been transferred or otherwise remitted to Ming Global.

**22.** My associate at Ming Global, Donna Marie, and I have repeatedly inquired about the status of the transfer of funds. In response, Monarch has provided a slew of ambiguous explanations and excuses for the delay, including "tax" and "regulatory issues" for which it has not provided any documentary support. Monarch also demanded that Ming Global supply additional documentation and pay additional money. Because we believed Ming Global was left with no other option to receive its money, we complied with Monarch's demands.

**23.** Between late July 2020 and the current date, Monarch has continued to assert that payment of the sums owed to Ming Global is forthcoming. When pressed about status of the transfer of these sums, Monarch, through its agents and representatives, has made the following representations via email:

  a. On August 4, 2020: "[T]he transfer was blocked by the tax department of the bank as they couldn't confirm Ming Global Ltd registered address. […]
  The total cash balance is $26,183,540.00 plus a further $798,000.00 from the refunded de-restriction fee, however we do not anticipate this to be available for another week or so. We have already processed the insurance claim, so it should become available no later than 14th of August."
  (August 4, 2020 email from Angela Fung, p. 4.) Attached hereto as **Exhibit 9** is a true and correct copy of the August 4, 2020 email from Monarch's representative, Angela Fung.

  b. On August 11, 2020: "We regret to inform you that Mr. Scott Bailey's personal margin for $250,000.00 has been rejected by the C.A.T.S, therefore there is still an outstanding balance which requires your immediate attention, as it needs to be settled before we can instruct the

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

6

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

1  transfer agent to finalise the repatriation of your proceeds." (August 11,
2  2020 email from Angela Fung, p. 5.) Attached hereto as **Exhibit 10** is a
3  true and correct copy of the August 11, 2020 email from Monarch's
4  representative, Angela Fung.

    c. On August 11, 2020: "I have just been informed the funds will arrive no later than 10:00 am tomorrow morning as we must wait for the transfer Donna executed earlier today to clear in the account." (August 11, 2020 email from Scott Bailey via Angela Fung. p. 1.) Attached hereto as **Exhibit 11** is a true and correct copy of the August 11, 2020 email from Monarch's representative, Scott Bailey via Angela Fung.

    d. On August 13, 2020: "I am awaiting on a confidential report from the US in reference to the transaction of your funds. The conversion of your account ownership from private to corporate is my suspicion and that of the compliance team here at First Eastern. Without this getting delayed any further, I have 'people' finding out also if this is a capital gains issue on the funds due to the above status of account having changed." (August 13, 2020 email from Graham Cowell, p. 1.) Attached hereto as **Exhibit 12** is a true and correct copy of the August 13, 2020 email from Monarch's representative, Graham Cowell.

    e. On August 25, 2020: "I have made all necessary filings with regards to your case. As soon as we receive the written documents from the U.S. I shall send you and Donna a copy.

We will be making ready all temporary funding required for the 'Stock Transfer Tax' on your behalf. Once this is completed, you as the receiving client will be reimbursed with your payment in full, which upon receipt may then be reimbursed to us." (August 25, 2020 email from Graham Cowell, p. 1.) Attached hereto as **Exhibit 13** is a true and correct copy of

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

7

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

the August 25, 2020 email from Monarch's representative, Graham Cowell.

**24.** On August 14, 2020, Monarch informed me that it could not release the funds owed to Ming Global, totaling approximately $26,000,000, unless Ming Global completed (and paid for) an Anti-Money Laundering ("AML") Certification. The AML Certification would cost Ming Global an additional $643,073.31. Ming Global once again agreed to Monarch's request so that the transfer of funds could finally be completed. This agreement is documented in an August 14, 2020 Guarantee Letter ("Guarantee Letter"), which states that "upon completion of an AML Certification [Ming Global] will receive a financial settlement in the amount of $26,683,540" and that Monarch will "proceed with remittance of the funds . . . within a period of not more than 3 (three) business days." The Guarantee Letter is signed by (1) Peter Lynd, Director of Institutional Training, (2) Simon Newton, Head of Global Compliance, and (3) Graham Cowell, Securities & Equities Legal Advisor, all purportedly with First Eastern Investments. Attached hereto as **Exhibit 14** is a true and correct copy of the Guarantee Letter.

**25.** On August 14, 2020, Ming Global promptly secured the AML Certification and provided it to Monarch. Attached hereto as **Exhibit 15** is a true and correct copy of the AML fee confirmation Ming Global received from Monarch. Attached hereto as **Exhibit 16** is a true and correct copy of the transaction receipt Monarch provided for Ming Global's AML fee payment. Despite providing the AML Certification, however, Monarch still did not return the funds owed to Ming Global.

**26.** On August 27, 2020, Monarch sent Ming Global and its bank the following message:

> WE ARE WAITING FOR THE EXACT DATE TO BE CONFIRMED WITH OUR OUTGOING TRANSFER DEPARTMENT. TAKE NOTE THAT PREVIOUS COMPLIANCE IRREGULARITIES HAVE BEEN A FACTOR IN TIME DELAY.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

>ADVISE CLIENT THAT ACCOUNT IS CONFIRMED TO BE AML CERTIFIED.
>
>FURTHER WE CONFIRM THAT WE HAVE STILL YET TO RECEIVE ADDITIONAL NOTIFICATIONS OF REGULATORY INCIDENT REGARDING THE BENEFICIARY. WE WILL EXERCISE OUR COMPLIANCE RIGHT WHEN INITIATING REMITTANCE TO BENEFICIARY.
>
>ADVISE TO AWAIT SWIFT RECEIPT ONCE VALUE DATE CONFIRMED.

Attached hereto as **Exhibit 17** is a true and correct copy of the August 27, 2020 message sent by Monarch to Ming Global.

**27.** On August 31, 2020, after more than a month had passed since I first requested the return of the sums owed to Ming Global, I sent Mr. Bailey an email stating the following:

>Scott, at this stage having no visibility or clarity is making lots of my investors nervous, including me. And as we all know nervous people are not good.
>
>The issue would have calmed down if we knew exactly what was going on and had transparency & visibility in paper work, but each time we hear its the "IRS, it's "BOFA", its trump etc which leaves us confused and nervous.
>
>All we now ask for is to execute our Guarantee letter and ensure the funds are in our account within 2 business days as promised. Not much to ask for.

Attached hereto as **Exhibit 18** is a true and correct copy of the August 31, 2020 email I sent to Scott Bailey.

**28.** On August 31, 2020, Ming Global also attempted to reach Monarch directly to inquire about the status of the transfer of funds. Monarch did not respond to

9

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

our efforts to contact it. Rather, shortly after we attempted to initiate contact, Mr. Bailey instructed me that Ming Global should not contact Monarch directly and that Monarch will not respond to our requests.

**29.** On September 2, 2020, Monarch sent a letter, purportedly from Victor Chu, CEO of First Eastern Investments, informing Ming Global that Monarch could not release the funds because "the IRS believes there is a 30% withholding tax associated with the Ming Global trading account. This is of course absurd." In the same letter, Monarch proposed a "20 day trading cycle" as a mechanism to resolve the purported regulatory issues. Attached hereto as **Exhibit 19** is a true and correct copy of the September 2, 2020 letter, allegedly from Victor Chu of First Eastern Investments.

**30.** On September 2, 2020, I sent a letter on behalf of Ming Global to Monarch, again addressing its failure to remit the funds, a portion of which is below:

"Upon your recommendation, advice and instructions, we paid a total of US $13,329,181.76 to Monarch Holdings Inc. for investment purpose. We have been expecting a financial settlement in the amount of US $27326613.30 (the "Outstanding Sum") from our investment since 16th August 2020. This is evidenced by the Letter of Guarantee issued by you in our favour dated 14 August 2020. However, there remains no indication as to when the Outstanding Sum would be paid to us. Your initial explanation was that the Outstanding Sum was in an account with Bank of America in Singapore which was somehow being restricted and thus could not be paid out. In your letter to us dated 2 September 2020, you seem to be suggesting that the Outstanding Sum is subject to 30% withholding tax by the IRS and therefore cannot be paid before this is resolved. In the same letter, you seem to be further suggesting that the "regulators" (we do not know who they are) have concerns over our account. At all times, we have not been provided with any details or particulars concerning these alleged issues, or documents in support of the above purported explanations for the delay in payment of the Outstanding Sum."

10

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

Attached hereto as **Exhibit 20** is a true and correct copy of the September 2, 2020 letter I sent to Monarch.

31. On September 7, 2020, Ming Global followed up on the refund for the de-restriction fee that Ming Global paid on July 29, 2020. Monarch responded on the same date: "the de-restriction refund has been halted until we satisfy the bank regulators which is why we will be executing several trades over the next 2 weeks or so." (September 7, 2020 email exchange between Donna Marie and Angela Fung, p. 2.) Attached hereto as **Exhibit 21** is a true and correct copy of the September 7, 2020 email exchange between Donna Marie of Ming Global to representative of Monarch, Angela Fung.

32. In a September 14, 2020 email, Mr. Bailey stated that Monarch will be "initiating a further 4 trades tonight and a further 3 trades tomorrow, which will be a total of 15 trades throughout the trading cycle. This will be sufficient enough for us to proceed with the repatriation back to your Ming Global Ltd account. As agreed, once the first $15,000,000.00 has successfully cleared, we will discuss the location of remaining balance." (September 14, 2020 email from Scott Bailey, p. 1.) Attached hereto as **Exhibit 22** is a true and correct copy of the September 14, 2020 email from Monarch's representative, Scott Bailey. However, to date, these funds have not been transferred to Ming Global.

33. In sum, Ming Global has transferred $13,329,181.76 to Monarch. Attached hereto as **Exhibit 23** is a true and correct copy of Ming Global's Statement of Account with Monarch, reflecting each of the transfers to Monarch.

34. Monarch has provided Ming Global with documentation of its investments and transactions, including remittance instructions to Monarch's US Bank account, trade confirmations, and transaction receipts, examples of which are attached hereto. Attached hereto as **Exhibit 24** is a true and correct copy of one of the remittance instructions to Monarch's US Bank that Monarch provided to Ming Global; attached hereto as **Exhibit 25** is a true and correct copy of one of the trade confirmations

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

11

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

Monarch provided to Ming Global; attached hereto as **Exhibit 26** is a true and correct copy of one of the transaction receipts Monarch provided to Ming Global. Ming Global also has bank documents reflecting Ming Global transfers to Monarch. Attached hereto as **Exhibit 27** is a true and correct copy of one of Ming Global's online HSBC account statements reflecting one of its transfers to Monarch.

35. At all relevant times, Ming Global believed Monarch and the individuals acting on its behalf were actually acting on behalf of First Eastern Investments, and that all of the funds Ming Global invested were being properly managed by a sophisticated private equity firm, First Eastern Investments. This belief was based on the multiple statements made by Monarch and its representatives and the documents they provided, as reflected herein.

36. After growing suspicious of Monarch due to its failure to return the sums owed to Ming Global and its unsupported explanations for delays, on September 7, 2020, Ming Global contacted Control Risks, a consulting firm that specializes in investigating financial fraud, to research Monarch. In a report provided to Ming Global, Control Risks found the following:

   a. None of the identities of the individuals purportedly representing First Eastern Investments with whom Ming Global interacted could be confirmed. These individuals do not have internet presences and therefore the names they provided are believed to be pseudonyms.

   b. Victor Chu, the founder and CEO of the real First Eastern Investments, confirmed that the parties representing themselves to be First Eastern Investments to Ming Global are operating fraudulently and have no connection to him or the legitimate First Eastern Investments.

   c. Control Risks also found discrepancies between the email address listed for First Eastern Investments on the Hong Kong Securities and Futures Commission ("SFC") registry and the email address Monarch provided to Ming Global.

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

12

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

**37.** I have since discovered that Monarch is a Nevada entity registered to do business in California, and that Monarch's filings with the California Secretary of State list a sole corporate director, "Veronica So". Attached hereto as **Exhibit 28** is a true and correct copy of Monarch Holdings, Inc.'s Statement and Designation by Foreign Corporation filed with the California Secretary of State on June, 18, 2020. Attached hereto as **Exhibit 29** is a true and correct copy of Monarch Holdings, Inc.'s Statement of Information filed with the California Secretary of State on August 5, 2020

**38.** Monarch's corporate filings also list the address of its office and corporate director as 1625 N. El Camino Real, Unit B, San Clemente, California 92672. According to an internet research, a small storage facility is located at this address. Attached hereto as **Exhibit 30** is a true and correct copy of the search result for the address reflected on Monarch Holdings, Inc.'s filings with the California Secretary of State, 1625 N. El Camino Real, Unit B, San Clemente, California 92672. Included is an image provided by Google's "street view" feature that provides an image of what is located at the address mentioned. The image was captured on September 21, 2020.

**39.** Monarch's website lists its California address as 33 Mistral, Aliso Viejo, California 92656, which, according to internet research, appears to be a condominium in a residential area. Attached hereto as **Exhibit 31** is a true and correct copy of Monarch Holdings, Inc.'s contact page on the entity's website, monarchholdingsinc.com, captured on September 21, 2020. Attached hereto as **Exhibit 32** is a true and correct copy of the search result for the address reflected on Monarch Holding, Inc.'s website, 33 Mistral, Aliso Viejo, CA 92656. Included is an image provided by Google's "street view" feature that provides an image of what appears to be a condominium located at the address mentioned. The image was captured on September 21, 2020.

**40.** On September 15, 2020, a report regarding Monarch's transactions with Ming Global was filed by Control Risks with the Hong Kong Police Force on Ming Global's behalf. Attached hereto as **Exhibit 33** is a true and correct copy of the

13

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

September 15, 2020 police report. Attached hereto as **Exhibit 34** is a true and correct copy of Ming Global's Letter of Authority for Control Risks to file the report with the Hong Kong Police Force. As far as I am aware, no action has been taken on that report to date.

41. Based on the information and facts stated herein, we believe that the funds held in Monarch's accounts, which were transferred by and belong to Ming Global, are likely to be transferred or removed upon notification of this action, and that urgent action is needed to freeze these sums. Otherwise, Ming Global may be irreparably damaged by the loss of its substantial investments by Ming Global hiding those documents in unidentified bank accounts outside of California and likely outside of the United States altogether. The circumstances giving rise to this fraudulent scheme, including the sophistication of the parties and the international aspects of their operation, strongly suggest to me that they have the ability and motivation to hide the funds if given the opportunity to do so.

///

///

///

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Brisbane, Australia on September 24, 2020.

_Sharath Kumar Hegde_

14

Baker & McKenzie LLP
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
Tel: 310 201 4728

Case No. _____
DECLARATION OF SHARATH KUMAR HEGDE ISO PLAINTIFF'S EX PARTE APPLICATION FOR RIGHT TO ATTACH ORDER