Nicholas O. Kennedy (State Bar No. 280504)
nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX  75201
Telephone:  214 978 3000
Facsimile:   214 978 3099

Katharine Miner (State Bar No. 288083)
katharine.miner@bakermckenzie.com
Thomas Tysowsky (State Bar No. 330022)
thomas.tysowsky@bakermckenzie.com
**BAKER & McKENZIE LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067
Telephone:  310 201 4728
Facsimile:   310 201 4721

Attorneys for Plaintiff
MING GLOBAL LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MING GLOBAL LIMITED, a Hong Kong company, <br><br> Plaintiff, <br><br> v. <br><br> MONARCH HOLDINGS INC., a Nevada corporation, d/b/a MONARCH INTERNATIONAL INC., VERONICA SO a/k/a MARIA VERONICA SO a/k/a MARIA SO, an individual, IRVINE MANAGEMENT TRANSFERS AND HOLDINGS CORP, a New York corporation, ALYSSA D'URSO a/k/a ALYSSA DURSO, an individual, and Does 1 through 10 inclusive. <br><br> Defendants. | **Case No. 8:20-cv-01852-JVS-KES** <br><br> Date Complaint Filed: Sept 24, 2020 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND *EX PARTE* APPLICATION FOR RIGHT TO ATTACH ORDER AND TEMPORARY PROTECTIVE ORDER** <br><br> **Before Judge James V. Selna and Magistrate Judge Karen E. Scott** |

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

1

## **TABLE OF CONTENTS**

2

I.    INTRODUCTION……………………………………………………1

3

II.   FACTUAL BACKGROUND………………………………………...2

4

    A.   Ming Global's Initial Fraudulently Induced Investments With The
        Monarch Scheme……………………………………………………2

5

6

    B.   The Monarch Scheme Failed And Refused To Return Ming Global's
        Funds As Promised And Fraudulently Induced Ming Global To Further
        Invest Money To Recoup Its Invested Funds…………………………4

7

8

    C.   Ming Global's Concerns Prompts It To Independently Investigate The
        Monarch Scheme And To File This Lawsuit…………………………5

9

    D.   Ming Global Uncovers That Irvine And Alyssa D'Urso Are Also A Part
        Of The Monarch Scheme……...……………………………………6

10

III.  ARGUMENT………………………………………………………8

11

    A.   The Claim Is One On Which An Attachment May Issue………………..9

12

    B.   Ming Global Has Established The Probable Validity Of Its Claim……...9

13

        i.   Ming Global Has A Valid Claim For Breach Of Contract Against
            Defendants…………………………………………………………10

14

        ii.  Ming Global Has A Probable Validity Of Prevailing On Its Implied
            Contract Claim Against The Monarch Scheme……………………..11

15

16

        iii. Ming Global Has A Probable Validity Of Prevailing On A Common
            Count Claim Against The Monarch Scheme…………………………12

17

        iv.  Ming Global Has A Probable Validity Of Prevailing On An Unjust
            Enrichment Claim Against The Monarch Scheme…………………...14

18

19

    C.   An *Ex Parte* Right To Attach Order And Temporary Protective Order Is
        Necessary To Prevent Irreparable Harm From The Concealment Or
        Transfer Of Assets…………………………………………………...15

20

21

        i.   The Statutory Requirements For A Writ Of Attachment And Temporary
            Protective Order Have Been Satisfied…………………………………16

22

23

        ii.  Ming Global Meets The Requirements To Obtain Prejudgment
            Attachment Of Nonresident Defendants Irvine And Ms. D'Urso….....18

24

25

        iii. *Ex Parte* Relief Is Necessary To Prevent Great Or Irreparable
            Injury………………………………………………………………...20

26

IV.  CONCLUSION……………………………………………………..21

27

28

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) ...................................................................... 18

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) .................................................................... 18

*Bank of America v. Salinas Nissan, Inc.*,
207 Cal. App. 3d 260 (1989) ............................................................ 16, 17

*C. Peacock, Inc. v. Hasko*,
196 Cal. App. 2d 353 (1961) .................................................................... 13

*Cavalry SPV I, LLC v. Watkins*,
36 Cal. App. 5th 1070, 1081 (2019) ........................................................ 12

*Doud v. Jackson*,
102 Cal. App. 213 (1929) ......................................................................... 12

*ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*,
No. CV 10-3108 DSF, 2010 U.S. Dist. LEXIS 152093
(C.D. Cal. Oct. 13, 2010) ......................................................................... 13

*Fed. Deposit Ins. Corp. v. Dintino*,
167 Cal. App. 4th 333 (2008) ................................................................... 15

*G. Hirsch & Co. v. AmerisourceBergen Corp.*,
No. C 06-00608 CW, 2006 U.S. Dist. LEXIS 32895
(N.D. Cal. May 17, 2006) ......................................................................... 13

*Hamilton v. Greenwich Investors XXVI, LLC*,
195 Cal. App. 4th 1602 (2011) ................................................................. 10

*Hernandez v. Lopez*,
180 Cal. App. 4th 932 (2009) ................................................................... 14

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
903 F.3d 896 (9th Cir. 2018) .................................................................... 19

*Landry v. Marshall*,
243 Cal. App. 2d 170 (1966) .................................................................... 12

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

*Lectrodryer v. Seoulbank*,
   77 Cal. App. 4th 723 (2000) ...................................................................... 14

*Lewis v. Steifel*,
   98 Cal. App. 2d 648 (1950) ........................................................................ 9

*Lorber Indus. of Cal. v. Turbulence, Inc.*,
   175 Cal. App. 3d 532 (1985) ...................................................................... 8

*Marvin v. Marvin*,
   18 Cal. 3d 660. (1976) ............................................................................. 11

*MH Pillars Ltd. v. Realini*,
   277 F. Supp. 3d 1077 (N.D. Cal. 2017) ................................................... 14

*Nakasone v. Randall*,
   129 Cal. App. 3d 757 (1982) ........................................................ 18, 19, 20

*In re Palmdale Hills Prop., LLC v. Argent Mgmt., LLC*,
   Nos. 08-bk-17206-ES, 1:16-ap-01120-GM, 2017 Bankr. LEXIS 2162
   (Bankr. C.D. Cal. Aug. 2, 2017) ............................................................... 15

*Ponti v. Farrell*,
   194 Cal. App. 2d 676 (1961) ..................................................................... 13

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   No. 3:16-cv-05399-WHO, 2017 U.S. Dist. LEXIS 2999
   (N.D. Cal. Jan. 6, 2017) ........................................................................... 11

*Root v. Superior Court of L.A. Cty.*,
   209 Cal. App. 2d 242 (1962) ..................................................................... 18

*Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*,
   18 Cal. App. 5th 881 (2017) ................................................................. 8, 14

*Snarr v. Cento Fine Foods Inc.*,
   No. 19-cv-02627-HSG, 2019 U.S. Dist. LEXIS 220063
   (N.D. Cal. Dec. 23, 2019) ......................................................................... 14

*VFS Financing, Inc. v. CHF Express, LLC*,
   620 F. Supp. 2d 1092 (C.D. Cal. 2009) ...................................................... 9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

iii

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

*Zhenua Logistics (H.K.) Co. v. Metamining, Inc.*,
No. C-13-2658, 2013 U.S. Dist. LEXIS 87089
(N.D. Cal. June 30, 2013) ........................................................................16

**Statutes**

Cal. Civ. Proc. Code § 481.190 ...................................................................9

Cal. Civ. Proc. Code § 483.010 ..........................................................*passim*

Cal. Civ. Proc. Code § 484.020 ..........................................................*passim*

Cal. Civ. Proc. Code § 484.090 ...............................................................8, 9

Cal. Civ. Proc. Code § 485.010 .................................................................20

Cal. Civ. Proc. Code § 485.210 .................................................................16

Cal. Civ. Proc. Code § 486.010 .................................................................16

Cal. Civ. Proc. Code § 487.010 ...........................................................16, 17

Cal. Civ. Proc. Code § 488.300 .................................................................16

Cal. Civ. Proc. Code § 488.455 .................................................................20

Cal. Civ. Proc. Code § 492.010 ...........................................................19, 20

Cal. Civ. Proc. Code § 492.020 .......................................................18, 19, 20

Cal. Civ. Proc. Code § 492.030 .................................................................20

Cal. Civ. Proc. Code § 492.050 .................................................................18

Cal. Civ. Proc. Code § 492.070 ...........................................................19, 20

**Other Authorities**

Fed. R. Civ. P. 64 ......................................................................................15

Fed. R. Civ. P. 65 ...............................................................................16, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

iv

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

## I.   INTRODUCTION

Plaintiff Ming Global Limited ("Ming Global") was the victim of a fraudulent investment scheme by which it was deprived of $13,329,181.76 (the "Monarch Scheme").   As a result, Ming Global filed this action against Defendant Monarch Holdings, Inc. ("Monarch Holdings"), whom Ming Global previously believed to be the sole perpetrator of the Monarch Scheme, on September 24, 2020, along with a concurrently filed *Ex Parte* Application for a Right to Attach Order and Temporary Protective Order (the "First Application").   This Court granted Ming Global's First Application in its entirety.   Thus, Ming Global currently possesses a right to attach order, a temporary protective order, and a writ of attachment against Monarch Holdings, freezing its corporate property, including its bank accounts.

However, after Ming Global filed its Complaint, First Application, and brief in support, Ming Global uncovered additional information revealing additional players in the fraudulent Monarch Scheme, requiring Ming Global to file its First Amended Complaint ("FAC") (concurrently filed with Ming Global's amended applications for right to attach orders and a temporary protective orders (the "Amended Applications")).   This information included the discovery that Defendants Veronica So a/k/a Maria Veronica So a/k/a Maria So ("Veronica So" or "Ms. So"), Alyssa D'Urso a/k/a Alyssa DUrso ("Alyssa D'Urso" or "Ms. D'Urso"), and Irvine Management Transfers and Holdings Corp ("Irvine") are all members of the Monarch Scheme. Ming Global's FAC reflects the knowledge that the Monarch Scheme uses Irvine, a sham corporate entity, and its bank accounts to defraud Ming Global, and that Veronica So and Alyssa D'Urso are corporate officers of Monarch Holdings and Irvine, furthering the Monarch Scheme.

Although the Monarch Scheme hid the true identities of the individuals involved throughout their communications with Ming Global, the Monarch Scheme breached express and implied contracts with Ming Global, and unjustly retains Ming Global's funds.   Therefore, because Ming Global has discovered that Irvine, Ms. D'Urso, and

1   Ms. So are each a part of the Monarch Scheme, the facts underlying the claims against
2   Irvine, Ms. So and Ms. D'Urso are the same as those that supported the relief granted
3   against Monarch Holdings.  Accordingly, and in order to protect Ming Global's right
4   to recover an eventual judgment in this case, Ming Global respectfully requests that its
5   Applications issue on an *ex parte* basis against the newly added Defendants Ms. So,
6   Ms. D'Urso, and Irvine.

7   ## II.   FACTUAL BACKGROUND

8   The Monarch Scheme, which took $13,329,181.76 from Ming Global and
9   refused to return the funds, is described in detail in Ming Global's brief supporting its
10  First Application and the materials submitted in support thereof.  (*See generally*,
11  Ming Global's Brief Filed in Support of its First Application ("First Application
12  Brief"), ECF No. 6.)

13  ### A.   Ming Global's Initial Fraudulently Induced Investments With The Monarch Scheme.
14

15  In early May 2020, the Monarch Scheme's agents cold-called a Director at Ming
16  Global, Sharath Kumar Hegde ("Mr. Hegde"), to pitch potential investments, and told
17  him that they represented First Eastern Investments, a well-known Hong Kong
18  investment firm.  (Mr. Hegde's First Declaration ("First Hegde Decl."), ECF No. 6-4,
19  ¶ 4.)  In reality, however, the Monarch Scheme was not associated with First Eastern
20  Investments and fraudulently made this representation to Mr. Hegde.

21  Shortly thereafter, Mr. Hegde received a call from an individual who referred to
22  himself as "Alexander Mann."  (*Id*. at ¶ 5.)  But Alexander Mann is not believed to be
23  the true name of the individual with whom Mr. Hegde spoke.  He is not employed with
24  First Eastern Investments, but instead is an agent of the Monarch Scheme who used
25  the false affiliation with First Eastern Investments to gain Mr. Hegde's trust.   The
26  actual identity of Alexander Mann is unknown at this time, as are the identities of many
27  of the Monarch Scheme's other agents.  The only individuals whose actual identities
28  are known are Defendants Veronica So and Alyssa D'Urso.

2

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

After telling Mr. Hegde he was with First Eastern Investments, Mr. Mann told Mr. Hegde to "look them up," and identified a few investment opportunities for Ming Global.  (*Id*. at ¶ 5.)  Mr. Mann asked if Ming Global would invest in two entities – BioNTech, SE (BNTX) and Novavax, Inc. (NVAX).  (*Id*. at ¶ 6.)  Mr. Hegde, who is based in Australia, asked Ming Global's accountant at Asia Business Centre in Hong Kong to vet First Eastern Investments.  (*Id*. at ¶ 7.)  The accountant's and Mr. Hegde's own due diligence confirmed that First Eastern Investments is a legitimate company and a respected private equity firm in Hong Kong.  (*Id*.)

Based on the representations made by Mr. Mann, Ming Global agreed to invest $20,000 with what it believed was First Eastern Investments, and was instructed to make payments to the Monarch Scheme's bank accounts at US Bank and Bank of America, held under the name of Monarch Holdings.  (*Id*. at ¶ 8.)  Mr. Mann told Ming Global that Monarch Holdings was the U.S. securities broker authorized to conduct the trades that were discussed.  (*Id*.)

Believing that its initial investments were doing well, Ming Global agreed to be introduced by Mr. Mann to a "Scott Bailey," another fake name of an individual claiming to work for First Eastern Investments.  (*Id*. at ¶ 12.)  In mid-June 2020, Mr. Bailey induced Ming Global to make additional investments in Anheuseur Busch InBev SA/NV (BUD), United Continental Holdings, Inc. (UAL) and The Boeing Company (BA).  (*Id*. at ¶ 13.)  Ming Global thus transferred $200,000 to the Monarch Scheme's US Bank and Bank of America accounts for this second investment opportunity on June 16, 2020 because it believed its initial investment was successful. (*Id*.)

Mr. Bailey then referred Ming Global to yet another purported representative of First Eastern Investments, his "boss" "Peter Lynd."  (*Id*. at ¶ 14.)  Peter Lynd solicited Ming Global's investment in "pre-IPO" call option shares in the company Royalty Pharma, PLC (RPRX).  (*Id*.)  Ming Global made four separate transfers of funds totaling $1,900,000 to the Monarch Scheme between June 17, 2020 and June 19, 2020.

3

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

(*Id*.)

**B.   The Monarch Scheme Failed And Refused To Return Ming Global's Funds As Promised And Fraudulently Induced Ming Global To Further Invest Money To Recoup Its Invested Funds.**

In early July 2020, Mr. Hegde told Mr. Lynd that Ming Global wanted to liquidate its investments. (*Id*. at ¶ 15.) In response, Mr. Lynd told Mr. Hegde that Ming Global must actually invest an *additional* $10,000,000 before Ming Global could sell its RPRX shares. (*Id*.) Specifically, Mr. Lynd stated that this amount would convert restricted shares (which could not be sold) to unrestricted shares (which could be sold) within three days and Ming Global's investment would be returned within a week. (*Id*.) Ming Global transferred this amount, but the Monarch Scheme never returned it, despite Ming Global's repeated demands to do so. (*Id*.)

On July 29, 2020, the Monarch Scheme required that Ming Global transfer additional funds in the amounts of $475,000 and $323,000 for what it called a "de-restriction fee," as a necessary condition before the money could be returned. (*Id*. at ¶ 19, Exs. 4-7.) Ming Global's already existing concerns only grew, and it continued to demand the return of its funds. (*Id*. at ¶ 22.) In response, the Monarch Scheme provided an array of ambiguous explanations and excuses for the delay, including purported "tax" and "regulatory issues." Seemingly left with no other option to receive its money, Ming Global paid the "de-restriction fee." (*Id*. at ¶¶ 22-23, Exs. 9-13.)

On August 14, 2020, the Monarch Scheme asserted that it could not release the funds owed to Ming Global, now totaling approximately $26 million according to the Monarch Scheme's representations, unless Ming Global completed (and paid for) an Anti-Money Laundering ("AML") Certification. (*Id*. at ¶ 24.) Ming Global, once again, helplessly paid $643,073.31 for the AML Certification and provided it to Monarch, but executed a Guarantee Letter with the Monarch Scheme whereby the Monarch Scheme agreed to transfer back to Ming Global its funds within three days of receiving the AML Certification. (*Id*., Ex. 14.) The Guarantee letter was signed by Ming Global, and three fake individuals, Peter Lynd, Simon Newton and Graham

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

1    Cowell, falsely representing that they worked for First Eastern Investments.  (*Id*.)
2    Unsurprisingly, the Monarch Scheme still refused to return Ming Global's money,
3    despite receiving the AML Certification.  (*Id*. at ¶ 25, Exs. 15, 16.)

4         In total, Ming Global has transferred $13,329,181.76 to the Monarch Scheme,
5    the Monarch Scheme has failed to return the funds, and throughout August and
6    September the Monarch Scheme has made excuse after excuse as to why it cannot do
7    so.  (*Id*. at ¶¶ 26-33, Exs. 17-23.)

8         **C.    Ming Global's Concerns Prompts It To Independently Investigate
9              The Monarch Scheme And To File This Lawsuit.**

10        Understandably, Ming Global independently investigated the Monarch Scheme
11   as a result of its insistent refusal to return Ming Global's funds.  According to open
12   source research conducted by an investigative firm:

13        a.  None of the identities of any of the individuals purportedly representing First
14            Eastern Investments with whom Mr. Hegde interacted could be confirmed.
15            These individuals do not have internet presences and therefore the names
16            they provided are believed to be fake.  (*Id*. at ¶ 36.)

17        b.  The founder and CEO of the real First Eastern Investments confirmed that
18            none of the parties with whom Ming Global has interacted are linked to him.
19            (*Id*.)

20        c.  The investigative firm also found discrepancies between the email address
21            listed for First Eastern Investments on the Hong Kong Securities and Futures
22            Commission ("SFC") registry, and the email address the Monarch Scheme
23            provided to Ming Global.  (*Id*.)

24        In addition, the Monarch Holdings entity used by the Monarch Scheme is a
25   Nevada entity registered to do business in California.  (*Id*. at ¶ 37, Ex. 28.)  This entity's
26   filings with the California Secretary of State list a sole corporate director, Veronica So.
27   (*Id*., Exs. 28, 29.)  Its filings list the address of its office and Veronica So as 1625 N.
28   El Camino Real, Unit B, San Clemente, California 92672, which in actuality is a small

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

storage facility.  (*Id*. at ¶¶ 37, 38, Exs. 28-30.)  Monarch Holdings' website lists its California address as 33 Mistral, Aliso Viejo, California 92656, which in actuality is a condominium in a residential area.  (*Id*. at ¶ 39, Exs. 31, 32.)  Neither Monarch Holdings nor Veronica So are registered as U.S. securities brokers on the Financial Industry Regulatory Authority's list of authorized securities brokers.  (*See* Nicholas O. Kennedy's First Declaration ("First Kennedy Decl."), ECF No. 6-2, ¶ 4, Ex. 1; *see* Nicholas O. Kennedy's Second Declaration ("Second Kennedy Decl."), ¶ 4, Ex. 1.)

This information led Ming Global to file this lawsuit on September 24, 2020. (*See* Ming Global Complaint, ECF No. 1.)  Moreover, Ming Global concurrently filed its First Application with its initial Complaint, and on September 30, 2020 this Court granted Ming Global's First Application, and issued a writ of attachment allowing Ming Global to freeze all the corporate property of the Monarch Scheme.  (*See* First Application and First Application Orders, ECF. Nos. 6, 13, 14-16.)  This included the Monarch Scheme's US Bank and Bank of America accounts.

### D.   Ming Global Uncovers That Irvine And Alyssa D'Urso Are Also A Part Of The Monarch Scheme.

Although it filed this lawsuit, Ming Global continues to keep in contact with the Monarch Scheme so that it does not transfer or conceal Ming Global's funds before its accounts are frozen.  (Mr. Hegde's Second Declaration ("Second Hegde Decl."), ¶ 4.) On September 29, one day before this Court granted Ming Global's First Application, Ming Global discovered that Irvine and its corporate officer, Alyssa D'Urso, are also part of the Monarch Scheme.

On September 29, 2020, the Monarch Scheme attempted to induce Ming Global into depositing *more* money, in addition to the $13,329,181.76 it has already taken. (*Id*. at ¶ 5, Ex. 1.)  The current excuse provided by the Monarch Scheme for the inability to release Ming Global's funds, is that Ming Global's account is under "audit" by Bank of America.  (*Id*.)  Mr. Newton, one of the fake advisors purporting to represent First Eastern Investments, requested that Mr. Hegde open a personal account and fund it

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

6

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

with $100,000 (although he indicated that "a bit more won't be harmful") for the alleged purpose of ending the "audit" by Bank of America and finally permitting the return of Ming Global's funds.  (*Id.*)

Rather than demand that Ming Global transfer the $100,000 (or more) to the US Bank or Bank of America accounts previously used throughout the Monarch Scheme, the remittance instructions provided by Mr. Newton on September 29, 2020 instructed Ming Global to transfer the money to a JP Morgan Chase Bank account of Defendant Irvine, yet *another* purported holding company working on behalf of "First Eastern." (*Id.* at ¶ 6, Ex. 2.)

Irvine's website states that it manages transactions for institutional investors around the globe, including sovereign wealth funds, and corporate and public plans. (*Id.* at ¶ 10, Ex. 6.)  An internet search of Irvine's address uncovered that, in actuality, its location is a small strip mall housing a sports trophy store, a laundromat, and two take-out restaurants.  (*Id.* at ¶ 7, Ex. 3.)

Irvine is an active corporation on the New York Department of State Business Entity Database, and lists Ms. D'Urso as its sole contact for New York Department of State process.  (*Id.* at ¶ 8, Ex. 4.)  An investigative firm hired by Ming Global to investigate Irvine found that Ms. D'Urso is identified as an officer of Irvine.  (*Id.* at ¶ 11.)  But, as with Monarch Holdings, also used by the Monarch Scheme, neither Irvine nor Ms. D'Urso are registered as U.S. securities brokers with the Financial Industry Regulatory Authority.  (Second Kennedy Decl., ¶ 5-6, Exs. 2-3.)

Based on the similar pattern and the fact that the Monarch Scheme directed Ming Global to transfer money to Irvine, it is evident that all of these parties are part of the Monarch Scheme.  (*See* Second Hegde Decl., ¶ 12.)  Ming Global therefore is concurrently filing its FAC, adding Irvine, Ms. D'Urso, and Ms. So as defendants alongside Monarch Holdings.  (*See* FAC.)

As such, similar to Ming Global's First Application, Ming Global requests that this Court again issue an *Ex Parte* Right to Attach Order and Temporary Protective

7

Baker & McKenzie LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

1  Order against the defendants and architects of this scheme, which now includes Irvine,

2  Ms. D'Urso, and Ms. So.

3  **III.    ARGUMENT**

4      Attachment is a prejudgment remedy that allows a creditor to have a lien on a

5  debtor's assets until final adjudication of the claim sued upon. *Lorber Indus. of Cal.*

6  *v. Turbulence, Inc.*, 175 Cal. App. 3d 532 (1985). The Court may issue a right to attach

7  order if it finds: (1) the claim is one on which an attachment may be issued; (2) the

8  plaintiff has established the probable validity of the claim upon which the attachment

9  is based; (3) the attachment is not sought for any other purpose than to secure recovery

10 on the claim; and (4) the amount to be secured by the attachment is greater than zero.

11 Cal. Civ. Proc. Code § 484.090.

12      Moreover, a writ of attachment may issue if the claim sued upon is (1) a "claim

13 for money . . . based upon a contract, express or implied"; (2) of a "fixed or readily

14 ascertainable amount not less than $500"; (3) either unsecured or secured by personal

15 property; and (4) a commercial claim. Cal. Civ. Proc. Code § 483.010.

16      "The purpose of a writ of attachment is to ensure payment will be recovered if

17 judgment is entered. [Ming Global] is only required to establish the 'probable validity'

18 of its claims. Whether [Ming Global's] claims are 'actually valid' is determined in a

19 subsequent proceeding and not affected by the court's order on the applications for

20 prejudgment attachment. ([Cal. Code Civ. P.]§ 484.050, subd. (b)). An attachment

21 remedy would be useless if it required the court to first decide the merits and issue a

22 judgment." *Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*, 18 Cal.

23 App. 5th 881, 889 (2017).

24      Here, this Court has already acknowledged the probable validity of Ming

25 Global's claims against the Monarch Scheme. (First Application Orders, ECF Nos.

26 14-16.) As discussed above, Irvine, Ms. D'Urso, and Ms. So are part of the Monarch

27 Scheme as well. (*See generally*, Second Hegde Decl.; Second Kennedy Decl.)

28 Therefore, Ming Global satisfies this standard as to these new defendants for the same

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

8

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

1   reason it satisfied the standard in its First Application.

2       **A.    The Claim Is One On Which An Attachment May Issue.**

3       California Code of Civil Procedure section 484.090 requires that a claim is one

4   on which an attachment may be issued, and Section 483.010 more specifically, requires

5   that the claim is a "claim for money . . . based upon a contract, express or implied"; of

6   a "fixed or readily ascertainable amount not less than $500"; either unsecured or

7   secured only by personal property; and a commercial claim.  An attachment may stand

8   for either a written or oral[1] contract and even an implied contract.  *See* Cal. Civ. Proc.

9   Code § 483.010, subd. (a).  Additionally, claims against natural person defendants must

10   arise out of the defendants conduct of a trade, business, or profession.  *See* Cal. Civ.

11   Proc. Code § 483.010(c); *VFS Financing, Inc. v. CHF Express, LLC*, 620 F. Supp. 2d

12   1092, 1096 (C.D. Cal. 2009).

13       Here, Ming Global's commercial claims are for both a breach of contract and

14   implied contract and are readily fixed at $13,329,181.76.  The amounts are readily

15   discernable from referencing the transfer of payments from Ming Global to the

16   Monarch Scheme.  Lastly, Ming Global may obtain a writ of attachment against Ms.

17   D'Urso and Ms. So as natural person defendants because the claims arise out of their

18   purported trades, businesses, and professions as corporate officers of alleged

19   investment firms.

20       **B.    Ming Global Has Established The Probable Validity Of Its Claim.**

21       The "probable validity" requirement is satisfied "where it is more likely than not

22   that the Plaintiff will obtain a judgment against the defendant on that claim."  Cal. Civ.

23   Proc. Code § 481.190.  Here, the Court has already recognized, by previously granting

24   Ming Global's First Application, that it is more likely than not that Ming Global will

25   prevail on its claim for $13,329,181.76 based upon the parties' agreement concerning

26   
27   _____
28   [1] *Lewis v. Steifel,* 98 Cal. App. 2d 648 (1950) (Where plaintiff made an oral contract with defendants to serve as motion picture production manager for three motion pictures for approximately one year, at a salary of $500 a week, an attachment would lie upon a cause of action for breach of contract, since the computation of damages was reasonable and definite.)

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

9

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

Ming Global's investments with the fraudulent scheme of which all defendants are a part. (*See* First Application Orders, ECF Nos. 14-16.)

### i. Ming Global Has A Valid Claim For Breach Of Contract Against Defendants.

This Court has already acknowledged the probable validity of Ming Global's breach of contract claim against the Monarch Scheme based on the following discussed herein. (*See* First Application Orders, ECF. Nos. 14-16.).

The essential elements of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff." *Hamilton v. Greenwich Investors XXVI, LLC,* 195 Cal. App. 4th 1602, 1614 (2011). Ming Global entered into an initial agreement (and several subsequent investment agreements) with an entity it believed was First Eastern Investments, however the individuals and entities with whom Ming Global actually entered into an agreement concealed their true identities by means of fraud. (*See*, *e.g.*, First Hegde Decl. at ¶¶ 36-40, Exs. 28-34.) In actuality, Ming Global did not contract with First Eastern Investments, but rather, with the Monarch Scheme, a group of fraudulent individuals and entities who collaboratively concealed their true identities and masqueraded as "First Eastern." (*Id*.) The true identities of the breaching parties to the agreement consist of all the named defendants, inclusive of, Irvine, Ms. D'Urso, and Ms. So. (*See generally*, Second Hegde Decl.) These contractual agreements were confirmed *vis a vis* a series of transactions, emails and letters between the parties.

Ming Global first entered into an agreement with the Monarch Scheme in May of 2020 when it invested $20,000 of its money. (First Hegde Decl., ¶ 9.) Furthermore, additional agreements were entered into with the Monarch Scheme when Ming Global made subsequent investments of $200,000 and $1,900,000, and $10,000,000, and additional payments of $1,441,073.31 in "de-restriction fees" and for an AML Certification, based on the representations that they were necessary for the return of Ming Global's investments. (*Id*. at ¶¶ 9, 14, 15, 19, 24, 25, Exs. 5-7, 14-16.) Lastly,

10

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

Ming Global entered into a Guarantee Letter agreement with Monarch, whereby Monarch represented that Ming Global would obtain remittance of its full balance of $26,683,540. (*Id*. at ¶ 14, Ex. 14.) The Monarch Scheme breached these representations by lying about its affiliation with First Eastern Investments and by failing to return the investment funds when requested. (*See generally*, *id*.)

As noted, Irvine, Ms. D'Urso, and Ms. So are parts of the Monarch Scheme, and therefore, these defendants are liable for Ming Global's breach of contract claim for the same reasons. (*See generally*, Second Hegde Decl.)

### ii. Ming Global Has A Probable Validity Of Prevailing On Its Implied Contract Claim Against The Monarch Scheme.

This Court has already acknowledged the probable validity of Ming Global's implied contract claim against the Monarch Scheme based on the following facts discussed herein. (First Application Orders, ECF Nos. 14-16.)

An attachment may be granted if a party shows the probable validity of a claim based on a contract that is either express or implied. Cal. Civ. Proc. Code § 483.010, subd. (a). "The elements of a cause of action for breach of an express or implied contract are the same …: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages." *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, No. 3:16-cv-05399-WHO, 2017 U.S. Dist. LEXIS 2999, at *12 (N.D. Cal. Jan. 6, 2017). "An implied contract is one, the existence and terms of which are manifested by conduct." *Id*. (citing Cal. Civ. Code § 1621); *see also Marvin v. Marvin*, 18 Cal. 3d 660, 678, fn. 16. (1976) ("an implied contract is "shown by the acts and conduct of the parties, interpreted in the light of the subject-matter and of the surrounding circumstances.").

The Monarch Scheme accepted Ming Global's money in exchange for its alleged investment services to Ming Global. (*See* First Hegde Decl., at ¶¶ 9, 13-15, 19, Exs. 5-7.) Inherent in this implied contract is the obligation of the Monarch Scheme to

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

return the money Ming Global transferred to it when the Monarch Scheme did not invest that money as promised and upon demand by Ming Global.

The contract between Ming Global and the Monarch Scheme is evidenced by Ming Global's transfer of $13,329,181.76 in exchange for the Monarch Scheme's purported investment broker services. *See Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1081 (2019) (". . . a party may accept a contract by conduct, as well as words . . ."). Ming Global's expectation that the funds be invested and, upon request, returned was the implied promise at the core of this contract. Monarch Holdings and Irvine, both a part of the Monarch Scheme, are not registered securities brokers in the U.S., have not purchased any securities, and has not returned any money. (First Kennedy Decl., ¶ 5, Ex. 2; Second Kennedy Decl., ¶ 4, Ex. 1.) The Monarch Scheme therefore breached this contract. *See Landry v. Marshall*, 243 Cal. App. 2d 170, 176 (1966) ("It is well settled that when a sum of money has been paid pursuant to the terms of a sales contract and the consideration for the sale has entirely failed, the law will imply a promise on the part of the vendor to repay the money; and in such case an attachment will lie."); *see also Doud v. Jackson*, 102 Cal. App. 213, 218 (1929) ("The authorities appear to be uniform to the effect that where a sum of money has been paid upon a consideration which has entirely failed, the law implies a promise to refund it."). "[A]ttachment will issue on such an action, to recover money paid under a contract, on failure of consideration even though there was no rescission by [P]laintiff." *Landry*, 243 Cal. App. 2d at 176.

As noted, Irvine, Ms. D'Urso, and Ms. So are parts of the Monarch Scheme, and therefore, these defendants are equally liable for Ming Global's breach of an implied contract claim. (*See generally*, Second Hegde Decl.)

### iii. Ming Global Has A Probable Validity Of Prevailing On A Common Count Claim Against The Monarch Scheme.

This Court has already acknowledged the probable validity of Ming Global's common count claim for money had and received against the Monarch Scheme based

12

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

on the following discussed herein.  (First Application Orders, ECF Nos. 14-16.)

"Under California law, common counts for money had and received . . . are implied-in-law or quasi-contract claims that can support issuance of a writ of attachment."  *ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*, No. CV 10-3108 DSF (AJWx), 2010 U.S. Dist. LEXIS 152093, at *6 (C.D. Cal. Oct. 13, 2010).  "California has three elements for a common count: (1) statement of indebtedness of a specified sum; (2) statement of the consideration; and (3) non-payment."  *G. Hirsch & Co. v. AmerisourceBergen Corp.*, No. C 06-00608 CW, 2006 U.S. Dist. LEXIS 32895, at *6 (N.D. Cal. May 17, 2006) (citing *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445 (1997)).  Moreover, "[a] common count may be used to recover money obtained by false and fraudulent representations . . . The action is one in assumpsit on an implied contract to repay the money received by the defendants."  *Ponti v. Farrell*, 194 Cal. App. 2d 676, 679 (1961) (internal citations omitted); *see also C. Peacock, Inc. v. Hasko*, 196 Cal. App. 2d 353, 361 (1961) ("It is well established in our practice that an action for money had and received will lie to recover money paid by mistake, under duress, oppression or where an undue advantage was taken of plaintiffs' situation whereby money was exacted to which the defendant had no legal right.").

Ming Global's claim for common count of money had and received is simple. The amount owed is $13,329,181.76, the consideration provided to the Monarch Scheme is the funds the Monarch Scheme agreed to invest on Ming Global's behalf, and the Monarch Scheme, without justification, has not returned the funds.  (*See generally*, First Hegde Decl.)  Additionally, as discussed above, Ming Global's payment to the Monarch Scheme was based on false and fraudulent representations, mistake, and was made under duress and oppression.  (*See id*.)  Lastly, the Monarch exercised undue advantage over Ming Global by refusing to return Ming Global's money until Ming Global invested more and more money (which it has not done even though Ming Global has invested all additional sums requested).  (*See*, *e.g.*, *id*. at ¶ 15.)

As noted, Irvine, Ms. D'Urso, and Ms. So are parts of the Monarch Scheme, and

13

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

therefore, these defendants are equally liable for Ming Global's common count claim for money had and received.  (*See generally*, Second Hegde Decl.)

### iv.  Ming Global Has A Probable Validity Of Prevailing On An Unjust Enrichment Claim Against The Monarch Scheme.

This Court has already acknowledged the probable validity of Ming Global's unjust enrichment claim against the Monarch Scheme based on the following discussed herein.  (First Application Orders, ECF Nos. 14-16.)

Unjust enrichment "is an equitable claim that sounds in implied or quasi-contract." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017). Therefore, demonstrating the probable validity of an unjust enrichment claim is sufficient to support a prejudgment writ of attachment even in the absence of a contract. *See Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*, 18 Cal. App. 5th 881, 886 (2017) (". . . the unjust enrichment claim alone is sufficient to support an order for prejudgment attachments . . .").

"The elements of a claim of quasi-contract or unjust enrichment are (1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd.*, 277 F. Supp. 3d at 1094; *see also Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000) (affirming jury verdict on an unjust enrichment claim).  "The doctrine applies where plaintiffs, having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009).  The Monarch Scheme knowingly accepted Ming Global's money, unjustly retains that money owed to Ming Global, and does so at Ming Global's expense.

The Monarch Scheme's unauthorized retention of Ming Global's $13,329,181.76 satisfies the "unjust" element of the unjust enrichment claim.  *See Snarr v. Cento Fine Foods Inc.*, No. 19-cv-02627-HSG, 2019 U.S. Dist. LEXIS 220063, at *21 (N.D. Cal. Dec. 23, 2019) (restitution on the basis of unjust enrichment

14

Baker & McKenzie LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

is available when "the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust."). Ming Global transferred its funds to the Monarch Scheme based on the fraudulent misrepresentations that the sums transferred would be invested and, upon demand, returned to Ming Global. (*See* First Hegde Decl., ¶¶ 9, 13-15, 19, Exs. 5-7.) These circumstances make the Monarch Scheme's retention unjust.

Further, Ming Global made its transfers on the mistaken belief that the Monarch Scheme was a legitimate and authorized investment business. (*See* First Kennedy Decl., ECF No. 6-2, ¶ 4, Ex. 1; First Hegde Decl., ECF No. 6-4 ¶ 8; Second Kennedy Decl., ¶ 4-6, Exs. 1-3.) Even giving the Monarch Scheme the benefit of the doubt that this was an honest mistake (which is most certainly not the case), a party "benefitting from a mistake of fact may . . . not be entitled to retain what amounts to a mere windfall." *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 347 (2008); *see also In re Palmdale Hills Prop., LLC v. Argent Mgmt., LLC*, Nos. 08-bk-17206-ES, 1:16-ap-01120-GM, 2017 Bankr. LEXIS 2162, at *34 (Bankr. C.D. Cal. Aug. 2, 2017) ("The California Supreme Court's statement of the law of restitution indicates that retention of a windfall (i.e., a benefit conferred on a party who had no legal right to that benefit) is unjust."). Simply put, it would be manifestly unjust to allow the Monarch Scheme to keep Ming Global's $13,329,181.76.

As noted, Irvine, Ms. D'Urso, and Ms. So are parts of the Monarch Scheme, and therefore, these defendants are equally liable for Ming Global's unjust enrichment claim. (*See generally*, Second Hegde Decl.)

## C.   An *Ex Parte* Right To Attach Order And Temporary Protective Order Is Necessary To Prevent Irreparable Harm From The Concealment Or Transfer Of Assets.

Federal Rule of Civil Procedure 64 allows this Court to apply California state attachment procedures to preserve assets for a future judgment. *See* Fed. R. Civ. P. 64 ("every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential

15

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

judgment"). In California, where the defendant is a corporation, the corporation's property is not exempt from attachment. *See* Cal. Civ. Proc. Code §§ 484.020(e) ("all corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010" is appropriate for attachment), 487.010(a) ("Where the defendant is a corporation, all corporate property for which a method of levy is provided by Article 2 (commencing with Section 488.300) of Chapter 8), 488.455 (listing deposit accounts at financial institutions as available for attachment). A natural person defendant's property is also subject to attachment. *See* Cal. Civ. Proc. Code § 487.010(c); *Bank of America v. Salinas Nissan, Inc.*, 207 Cal. App. 3d 260, 268 (1989) (stating that there is nothing "prohibit[ing] a plaintiff from targeting for attachment everything an individual defendant owns . . .").

The Court may also issue a temporary protective (or restraining) order to protect the status quo and prevent the transfer or concealment of assets by the Monarch Scheme. *See* Fed. R. Civ. P. 65; Cal. Code Civ. P. § 486.010; *see also*, *e.g.*, *Zhenua Logistics (H.K.) Co. v. Metamining, Inc.*, No. C-13-2658, 2013 U.S. Dist. LEXIS 87089, at *12 (N.D. Cal. June 30, 2013) (granting right to attach order and TRO to prevent transfer of assets that may be used to satisfy an eventual judgment).

### i.    The Statutory Requirements For A Writ Of Attachment And Temporary Protective Order Have Been Satisfied.

California law allows the Court to issue a right to attach order on a claim for a fixed or readily ascertainable amount of money based on a contract. Cal. Civ. Proc. Code § 483.010(a). The application for attachment must state the amount to be secured, that the attachment is not sought for an improper purpose, and that the claim has not been discharged or stayed by bankruptcy. Cal. Civ. Proc. Code § 484.020. The application must also be supported by a declaration demonstrating that the plaintiff "on the facts presented would be entitled to a judgment on the claim," that the property is not exempt, and, for *ex parte* relief, that Ming Global "would suffer great or irreparable

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

injury . . . if issuance of the order were delayed until the matter could be heard on notice." *Id.* § 485.210.

Ming Global has made this showing.  Concurrently herewith, Ming Global has submitted applications for a right to attach orders and temporary protective orders that satisfy these requirements.  Ming Global has also submitted concurrently herewith the Second Hegde Declaration and Second Kennedy Declaration, which supplement the prior declarations and attach the new evidence referenced in this submission.  (*See generally*, Second Hegde Decl.; Second Kennedy Decl.)  As required by Section 484.020(e), the application defines the property over which it seeks attachment: "all corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010," with specific reference to bank accounts, and the bank accounts of natural persons pursuant to Section 487.010(c)(7).  *See also Bank of America v. Salinas Nissan, Inc.*, 207 Cal. App. 3d 260, 268 (1989) (discussing the categories enumerated in Cal. Code Civ. P. § 487.010(c) and stating that there is nothing "prohibit[ing] a plaintiff from targeting for attachment everything an individual defendant owns . . .").

These documents also establish that the claim is for a fixed amount of $13,329,181.76 and that Ming Global's Applications are based on different contract or quasi-contract claims independently sufficient to support a grant of writ of attachment. They further confirm that the claim is not subject to discharge or stayed by bankruptcy and that the attachments are sought only to protect Ming Global's interest in restitution of its investment funds, and not for an improper purpose.

The evidence discussed herein also establishes that Ming Global is entitled to a judgment on it claim—namely repayment of its money under the terms of the parties' implied contract and restitution.  The Second Hegde Declaration describes the facts giving rise to Ming Global's breach of contract, breach of implied contract, common count for money had and received, and unjust enrichment claims against the newly

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

1    added defendants insofar as they are parts of the Monarch Scheme.  (*See generally*,

2    Second Hegde Decl.)

3        Therefore, the statutory requirements for a right to attach order, temporary

4    protective order, and writ of attachment have been satisfied and the requested relief

5    should issue.

6        **ii.   Ming Global Meets The Requirements To Obtain Prejudgment**
         **Attachment Of Nonresident Defendants Irvine And Ms. D'Urso.**

7

8        California Code of Civil Procedure sections 492.020, *et seq.*, set forth separate

9    requirements for ex parte attachment of nonresident defendant property when the

10   nonresident defendant is not subject to personal jurisdiction.  *See* Cal. Code Civ. P. §

11   492.020, *et seq*.  This procedure enables California courts to obtain "quasi in rem

12   jurisdiction" over nonresident debtors who are not subject to California personal

13   jurisdiction by seizing their property within California.  *See* Cal. Code Civ. P. §

14   492.050 (Law Revision Commission Comment) (explaining "the jurisdictional nature

15   of an attachment secured pursuant to this chapter."); *Nakasone v. Randall*, 129 Cal.

16   App. 3d 757, 760 (1982) (if quasi in rem jurisdiction is unnecessary, then one should

17   use "ordinary" attachment procedures); *see also Root v. Superior Court of L.A. Cty.*,

18   209 Cal. App. 2d 242, 246 (1962) (finding a lack of personam jurisdiction but stating

19   that "[r]espondent court did, however, have quasi in rem jurisdiction by virtue of the

20   attachment.").   When "quasi-in rem jurisdiction is no longer necessary . . . the

21   attachment should be made under the ordinary procedures and subject to the ordinary

22   limitations." *Nakasone*, 129 Cal. App. 3d at 761.

23       Ming Global may obtain attachment over nonresident Defendants Irvine and Ms.

24   D'Urso, pursuant to the ordinary procedures and subject to the ordinary limitations

25   discussed above, because it has made a prima facie showing that this Court has personal

26   jurisdiction over both defendants. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d

27   586, 588 (9th Cir. 1996) (where trial court rules on jurisdictional issue based on

28   affidavits and discovery materials without holding evidentiary hearing, plaintiff need

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

only make prima facie showing); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant).   Ming Global has sufficiently alleged personal jurisdiction over nonresident Defendants Irvine and Ms. D'Urso because, as demonstrated by the recent communications and remittance instructions sent to Ming Global, Irvine and Ms. D'Urso are a part of the Monarch Scheme orchestrated out of California.  *See InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 903 (9th Cir. 2018) (Specific personal jurisdiction exists when: "(1) the defendant [purposefully avails] himself of the privileges of conducting activities in the forum; (2) the claim [is] one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [comports] with fair play and substantial justice, i.e. it [is] reasonable."). Both defendants have purposely availed themselves of doing business in California because both defendants are members of the same fraudulent scheme as, and conspire to defraud Ming Global with, Monarch Holdings, a California registered business with a business address within California, and Veronica So, a California resident.  (*See generally*, Second Hegde Decl.; Second Kennedy Decl.)  The claims at issue arise from this contact with California because the claims against all defendants arise from the breached agreements and other wrongdoing resulting from the Monarch Scheme, which nonresident defendants are a part of, and which is headquartered out of California. (*See id*.)  Additionally, it is reasonable to subject Irvine and Ms. D'Urso to personal jurisdiction in California, because holding otherwise would obstruct fair play and substantial justice.   Accordingly, Ming Global need only satisfy the standard statutory requirements against Irvine and Ms. D'Urso, which, as described in the section above, it has done.  *See Nakasone*, 129 Cal. App. 3d at 761 (when quasi in rem jurisdiction is not necessary, "the attachment should be made under the ordinary procedures and subject to the ordinary limitations.")

Nevertheless, in addition to the "ordinary" statutory requirements above, Ming Global has also met the nonresident-specific statutory requirements to obtain a writ of

19

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO

attachment against Irvine and Ms. D'Urso pursuant to California Code of Civil Procedure section 492.010, *et seq*.  Sections 492.010 through 492.040, and Section 492.070, state the requirements for attachment of nonresident natural persons and foreign corporations not qualified to do business in California, which are similar to the ordinary requirements listed in Sections 483.010(a), *et seq*.  Ming Global has met each of these requirements.   Specifically, Defendants Irvine and Ms. D'Urso are nonresidents pursuant to Sections 492.010, and as discussed in the section above, Ming Global has filed the subsequent supporting declarations and applications sufficient to establish the following: that Ming Global's claims are against nonresident defendants (Cal. Code Civ. P. § 492.010), the probable validity of its claims (Cal. Code Civ. P. § 492.020), that the property sought to be attached is subject to attachment (Cal. Code Civ. P. §§ 488.455, 492.040), that the attachment is not sought for an amount of zero or for a purpose other than the recovery on Ming Global's claims (Cal. Code Civ. P. § 492.030), and that Ming Global seeks a definite amount, reasonably described to be secured (Cal. Code Civ. P. § 492.070).

Again, the Court has personal jurisdiction over Defendants Irvine and Ms. D'Urso and Ming Global has satisfied the ordinary attachment requirements as set forth above.  Even if personal jurisdiction was not established, however, Ming Global has met the statutory requirements for nonresident defendant procedure, permitting it to attach Irvine's and Ms. D'Urso's bank accounts through local bank branches here in California.  *See Nakasone*, 129 Cal. App. 3d at 761.

### iii. *Ex Parte* Relief Is Necessary To Prevent Great Or Irreparable Injury.

Ming Global is entitled to an *ex parte* grant of the relief sought in its application to avoid "great or irreparable injury."  Cal. Code Civ. P. § 485.010(a); *see also* Fed. R. Civ. P. 65(b)(1).  Additionally, based on its application and supporting materials "it may be inferred that there is a danger that the property sought to be attached would be concealed … or otherwise made unavailable to levy if issuance of the order were

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

delayed until the matter could be heard on notice." Cal. Civ. Proc. Code § 485.010(b)(1).

This Court has already acknowledged the likelihood of great or irreparable injury to Ming Global by previously granting Ming Global's First Application on an *ex parte* basis. (First Application Orders, ECF Nos. 14-16.) That the Monarch Scheme has now attempted to induce Ming Global to transfer *even more* money, and its use of Irvine and its bank accounts, only bolsters the argument that it is likely Ming Global's funds will be transferred or concealed if this application is not granted on an *ex parte* basis. (*See* Second Hegde Decl., ¶ 13.)

Therefore, *ex parte* relief is necessary to prevent great or irreparable injury to Ming Global because there is a danger that the property sought to be attached would be concealed if this application were made known to the Monarch Scheme, including the newly added defendants, and heard on regular notice.

## IV.    CONCLUSION

For the foregoing reasons, Ming Global respectfully requests that the Court enter an order granting the *ex parte* application for a Right to Attach Order and Temporary Protective Order freezing $13,329,181.76 in any bank account, or any other property subject to levy, held by Irvine, Ms. D'Urso, and Ms. So, and award Ming Global its costs and reasonable attorneys' fees along with all other relief the Court deems just and proper.

Dated: October 6, 2020              Respectfully submitted,

                                    **BAKER & McKENZIE LLP**

                                    By: */s/ Nicholas O. Kennedy*
                                        Nicholas O. Kennedy
                                        Attorney for Plaintiff
                                        MING GLOBAL LIMITED

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

21

Case No. 8:20-cv-01852-JVS-KES
PLAINTIFF'S MEMO IN SUPPORT OF SECOND EX PARTE APPLICATION FOR WRIT OF ATTACHMENT AND TPO