Brian P. Ballo, Esq. #134892
**Law Office of Brian Ballo**
120 Vantis, Suite 300
Aliso Viejo, CA  92656
p: (949) 690-4100
brian@ballo.law

Attorney for Defendant and Cross-
Claimant Veronica So a/k/a Maria
Veronica So a/k/a Maria So

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MING GLOBAL LIMITED,**<br>**a Hong Kong company,**<br><br>                    **Plaintiff,**<br>**v.**<br><br>**MONARCH HOLDINGS, INC., a**<br>**Nevada corporation, d/b/a MONARCH**<br>**INTERNATIONAL, INC.; VERONICA**<br>**SO A/K/A MARIA VERONICA SO**<br>**A/K/A MARIA SO, an individual;**<br>**IRVINE MANAGEMENT TRANSFERS**<br>**AND HOLDINGS CORP., a New York**<br>**corporation, ALYSSA D'URSO a/k/a**<br>**ALYSSA DURSO, an individual, and**<br>**DOES 1 through 10, inclusive,**<br><br>                    **Defendants.**<br><br>**VERONICA SO A/K/A MARIA**<br>**VERONICA SO A/K/A MARIA SO, an**<br>**individual,**<br><br>                    **Cross-Claimant,**<br>**v.**<br><br>**MONARCH HOLDINGS, INC., a**<br>**Nevada corporation, authorized to do**<br>**business in California; IGOR**<br>**GRYGOREV, an individual; YRIY**<br>**IVANOV, an individual; IRVINE**<br>**MANAGEMENT TRANSFERS AND**<br>**HOLDINGS CORP., a New York**<br>**corporation, ALYSSA D'URSO a/k/a**<br>**ALYSSA DURSO, an individual, and**<br>**DOES 1 through 10, inclusive,** | **CASE NO.  8:20-cv-01852-JVS-KES**<br><br>**FIRST AMENDED CROSS-CLAIM BY**<br>**VERONICA SO A/K/A MARIA VERONICA SO**<br>**A/K/A MARIA SO, FOR:**<br><br>**(1) FRAUDULENT SCHEME**<br>**(2) FRAUDULENT MISREPRESENTATIONS**<br>**(3) BREACH OF INDEMNIFICATION**<br>**    AGREEMENT**<br>**(4) FRAUDULENT MISREPRESENTATIONS**<br>**(5) IMPLIED INDEMNITY**<br>**(6) COMPARATIVE INDEMNITY**<br>**(7) EQUITABLE INDEMNITY**<br>**(8) CONTRIBUTION**<br>**(9) CIVIL CONSPIRACY**<br><br>**Before Judge James V. Selna**<br>**and Magistrate Judge Karen E. Scott** |

1        **Cross-Defendants.**   )
2      )

3     COMES NOW, Cross-Claimant Veronica So a/k/a Maria Veronica So a/k/a Maria So

4 ("So"), and alleges this First Amended Cross-Claim ("FAX-C") as follows:

5 

**PRELIMINARY STATEMENT**

7     Veronica So a/k/a Maria Veronica So a/k/a Maria So ("So") is an unsophisticated

8 nurse assistant who provides patient care to elderly people.

9     While she is designated as the sole Officer and Director of Defendant Monarch

10 Holdings, Inc. ("Monarch"), she is <u>not</u> a Shareholder or owner of Monarch.  She has no real

11 understanding of the transactions as alleged in Plaintiff Ming Global Limited's ("Ming

12 Global") First Amended Complaint ("FAC"), and she lacks the ability to have performed the

13 fraudulent acts Monarch is alleged to have committed against Plaintiff Ming Global.

14     <u>In fact, everything that So did,</u> as represented in an **Indemnification Agreement and**

15 **Mutual Release** dated November 25, 2020 (attached as **Exhibit "A"** hereto) between So, on

16 one hand, and Monarch, and Cross-Defendants Igor Grygorev ("Grygorev") and Yriy Ivanov

17 ("Ivanov"), the sole shareholders of Monarch, on the other hand,:

18     "with respect to Monarch's business activities and, with respect to the financial transfers and Investments as alleged in [Ming Glboal'] FAC, <u>So was acting in a limited administrative capacity only, and each of her acts on behalf of Monarch were at the direction of Monarch, Grygorev and Ivanov</u>, in exchange for which So received total compensation of less than $30,000 from Monarch and $0 of Ming Global's alleged Investments."

19     Assuming Ming Global's allegations are true, Ming Global's losses are unfortunate.

20 However, as alleged in So's instant FAX-C, such alleged losses are properly attributable to

21 other named Defendants, Cross-Defendants or parties other than So.

Further, to the extent So is held liable for anything, she will be fully indemnified by the Indemnifying Parties, including for her attorneys' fees incurred in this action. Thus, Ming Global should focus its attention on others, not So.

The Indemnification Agreement and Mutual Release signed by Monarch, Grygorev and Ivanov (the "Indemnifying Parties") further provides that:

"A.   Provided that, and for so long as, the Indemnifying Parties are not in default of any of the terms of this Agreement, and none of the representations of the Indemnifying Parties in this Agreement are untrue, then, So agrees not to file a Counter-Claim in the Lawsuit against Monarch, Grygorev, and Ivanov.

A. However, the limitation in paragraph 4(a), above, shall not prevent So from filing a Counter-Claim against any of the other existing Defendants, including, but not limited to, Irvine Management Transfers and Holdings Corp., a New York corporation, Alyssa D'Urso aka Alyssa Durso, or any future Defendants, or against any other third-parties whom So believes may have committed wrongs against So and caused So any damages."

On November 29, 2020, when So filed her original Cross-Claim, she was assured by Cross-Defendants Grygorev and Ivanov that they would provide a properly authenticated Indemnification Agreement, either (1) signed in front of a Notary that attested to verifying their identity and signatures, and provided a Notary Affidavit, or (2) signed in front of a Government Official that attested to verifying their identity and signatures, and provided an Apostille.

Unfortunately, Grygorev and Ivanov have twice provided inadequately authenticated Indemnification Agreements that fail to contain Notary Affidavit or Government Official Apostille verifications of Grygorev's and Ivanov's identity and signatures. As a result, the representations of Grygorev and Ivanov contained in the Indemnification Agreement are untrue. Accordingly, by this FAX-C, So now names and sues Monarch, Grygorev and Ivanov as Cross-Defendants.

## THE PARTIES

1. Plaintiff VERONICA SO A/K/A MARIA VERONICA SO A/K/A MARIA SO ("So" or "Cross-Claimant") is now, and at all relevant times, a resident of the County of Orange, state of California.  She is a Defendant in this action brought by Plaintiff Ming Global Limited ("Plaintiff" or "Ming Global").

2. At all relevant times, Cross-Defendant MONARCH HOLDINGS, INC. ("Monarch"), was, and is now, a corporation, erroneously existing in the state of Nevada without So's consent, and erroneously authorized to do business and existing in the state of California without So's consent.  So was designated as an Officer and Director of Monarch.  The sole Shareholders of Monarch are Cross-Defendants Igor Grygorev ("Grygorev") and Yriy Ivanov ("Ivanov").

3. At all relevant times, So is informed and believes, and based thereon alleges, that Cross-Defendant IGOR GRYGOREV ("Grygorev"), is an individual, and a resident and citizen of Russia.

4. At all relevant times, So is informed and believes, and based thereon alleges, that Cross-Defendant YRIY IVANOV ("Ivanov"), is an individual, and a resident and citizen of Russia.

5. At all relevant times, So is informed and believes, and based thereon, alleges that Cross-Defendant IRVINE MANAGEMENT TRANSFERS AND HOLDINGS CORP. ("IMTHC") is a New York corporation, with a principal place of business at 170 Forest Avenue, Glen Cove, New York 11542. The entity information on the New York Department of State (Division of Corporations) website, lists Alyssa D'Urso at 9A Frost Pond Rd., Glen Cove, New York 11542, as its contact and address for services of process. According to the

IMTHC website www.irvinemgmt.com, IMTHC manages transactions for institutional investors around the globe including sovereign wealth funds, as well as corporate and private investment plans.  However, IMTHC is not registered as a U.S. securities broker on the Financial Industry Regulatory Authority's list of licensed securities brokers (http://brokercheck.finra.org)

6. At all relevant times, So is informed and believes, and based thereon, alleges that Cross-Defendant ALYSSA D'URSO a/k/a ALYSSA DURSO ("D'Urso"), an individual, who at all times relevant, resided in Nassau County, New York, and is an office of Defendant IMTHC.  D'Urso is not registered as a U.S. securities broker on the Financial Industry Regulatory Authority's list of licensed securities brokers (http://brokercheck.finra.org)

7.  The identity of DOES 1 through 10, inclusive, an unknown to So.  So is informed and believes, and based thereon alleges, that Monarch and IMTHC operated at all relevant times through individual agents to have been based in Turkey, Russia, Hong Kong, California and New York, operating through names including:

(a)  Christopher Kohl ("Kohl"), Grygorev and Ivanov, whom are affiliated with Monarch, and

(b)  Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton and Angela Fung, who are affiliated with (i) IMTHC and (ii) a bogus entity fraudulently appearing to be the prominent Hong Kong private equity firm: First Eastern Investments Limited ("First Eastern").

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over the claims in So's Cross-Claim and the parties named herein pursuant to Fed. Rule of Civ. Proc., Rule 13(g) on grounds that (a) the Claims

alleged herein against Co-Defendants IMTHC and D'Urso arise out of same transactions or occurrences that are the subject matter of Plaintiff Ming Global's original action, and (b) So's Cross-Claim alleges that IMTHC and D'Urso are liable to Cross-Claimant So for all or part of Plaintiff's claims asserted against So in the original action against Defendant So.

## GENERAL ALLEGATIONS

9.   In early March 2019, So "met online" with a man who called himself Christopher Kohl ("Kohl").  So now doubts that Kohl was his real name. Kohl told So that he was an international businessman, and he was involved in selling goods and making investments internationally, including in Turkey, Hong Kong, Singapore.  Kohl told So that he was well-positioned to earn substantial commissions, and that he would pay So if she assisted him as an Administrator in performing limited escrow services and making money transfers.  Most communications with Kohl were through "What's App" and "Telegram" online applications.

10.  In mid-March 2019, Kohl told So that he would set up a Nevada corporation, and name So as an Officer, so that she could have access to corporate bank accounts, and perform escrow services and make money transfers. On or about March 25, 2019, Kohl formed Defendant Monarch Holding, Inc. ("Monarch") as a Nevada corporation, and designated to So, all the Officer positions and the sole Director position.  In 2019, Kohl instructed So to open a bank account for Monarch at Bank of America, which she did.

11.  So is informed and believes, and based thereon alleges, that on or about June 18, 2020, Kohl asked So to sign Statement and Designation by Monarch which Kohl filed with the California Secretary of State qualifying Monarch to do business in California. So is further informed and believes, and based thereon alleges, that Kohl established a business address for Monarch at: 1625 N. El Camino Real, Unit B, San Clemente, CA 92672.

12.   Unbeknownst to So, So is informed and believes, and based thereon alleges, that Kohl and/or unknown other persons, built a website for Monarch www.monarchholdingsinc.com.  Further, without So's knowledge or consent, So's address at 33 Mistral, Aliso Viejo, CA 92656, was listed on this Monarch website.  So has demanded that Monarch, Grygorev and Ivanov shut down this website and remove this address, however, Monarch, Grygorev and Ivanov, have failed to do so.

13.   In 2020, Kohl instructed So to open a bank account for Monarch at U.S. Bank, which she did.  During June 2020 through August 2020, at the direction of Kohl, Grygorev and Ivanov, So made wire transfers of monies from Monarch's bank accounts at Bank of America and U.S. Bank to entities and persons directed by them, including, but not limited to, Wellington & York Partners, Incorporated, in Singapore.  Most communications with Kohl, Grygorev and Ivanov were through "What's App" and "Telegram" online applications, which provide the sender with the ability to erase the message.  They did not tell her what the money transfers were for, and So did not ask.  So did not have direct contact or communications with anyone at Ming Global, the legitimate First Eastern, the bogus First Eastern, IMTHC, nor with D'Urso.  So is unaware of the nature of the transactions and investments as alleged in Ming Global's FAC.

14.   In or about mid-August 2020, So became very uncomfortable with the large size of the money transfers being made into and out of the Monarch's bank accounts.  She told Kohl, Grygorev and Ivanov that she no longer wanted to be involved and, terminated her working relationship with Monarch and them. For the entire time that So was involved with Monarch, she was paid approximately $25,000 from Monarch.  To So's knowledge, none of the money that she was paid, came from Ming Global.

-7-

15.   As alleged in So's Second Affirmative Defense to Ming Global's FAC, So is informed and believes, and based thereon, alleges that if Plaintiff suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of Plaintiff, including, but, not limited to, (1) failing to conduct proper due diligence on the status of other parties with whom Plaintiff conducted business and made investments, and (2) by engaging in other unethical and illegal behavior, including, but not limited to, money laundering, not by So.

16.   The nature of Ming Global's business as an Australian owned progressive promotional products company based in Hong Kong, does not logically indicate that Ming Global would be, or should be, conducting business or making investments of the nature alleged in Ming Global's FAC, in the normal course of its business.

17.   As alleged in So's Second Affirmative Defense to Ming Global's FAC, So is informed and believes, and based thereon, alleges that if Plaintiff suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of others, including, but not limited to, (1) Defendant Monarch, and Cross-Defendants Grygorev and Ivanov, (2) Defendants and Cross-Defendants Irvine Management Transfers and Holdings Corp. ("IMTHC"), and Alyssa D'Urso a/k/a/ Alyssa Durso ("D'Urso"), and (3) other third-parties, including, but not limited to Christopher Kohl, Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton and Angela Fung, and not by So.

18.   As alleged in So's Seventh Affirmative Defense to Ming Global's FAC, So is

informed and believes, and based thereon, alleges that Plaintiff's claims are barred as against So because So's conduct was at all times undertaken in good faith.

19.   As alleged in So's Eighth Affirmative Defense to Ming Global's FAC, So is informed and believes, and based thereon, alleges that any alleged acts or omissions of So that give rise to Plaintiff's claims are the result of her innocent mistakes and/or bona fide errors despite reasonable procedures implemented by So.

20.   As alleged in So's Ninth Affirmative Defense to Ming Global's FAC, So is informed and believes, and based thereon, alleges that Plaintiff's claims against So are barred, in whole or in part, because there is no causal relationship between any injury alleged to have been suffered by Plaintiff and any act of So.

**FIRST CLAIM FOR RELIEF**
**(For Fraudulent Scheme)**
**(Against Cross-Defendants Monarch, Grygorev and Ivanov)**

21.   Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this First Amended Cross-Claim as if set forth here at length.

22.   Cross-Claimant So is informed and believed, <u>based only on allegations in Ming Global's FAC</u>, that the Shareholders of Monarch (Grygorev and Ivanov) and other agents acting on behalf of Monarch, including, but not limited to Christopher Kohl, *however, not including So, and unbeknownst to So,* (a) claimed they were representatives of a prominent Hong Kong private equity firm, First Eastern Investments Limited ("First Eastern Investments"), and (b) such Monarch agents directed Ming Global to transfer funds to Monarch, the purported securities broker affiliate of First Eastern Investments in California, for purchases of securities in that were intended for investment purposes, however, curiously <u>not related to</u> Ming Global's promotional products company based in Hong Kong.

23.  So has no personal, first-hand knowledge as to whether the allegations in Ming Global's FAC are true or not. In particular: (a) So has never communicated directly (in any meeting, by phone, by email, by text, or via any web-based Application) with any Ming Global personnel, and (b) So has never communicated directly (in any meeting, by phone, by email, by text, or via any web-based Application) with any the persons identified in Global's FAC's as purportedly posing as representatives of First Eastern Investments and/or Monarch, including, but not limited to: Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton and Angela Fung.  So only became aware of the nature of Monarch's purported fraudulent scheme as alleged by Ming Global, in October 2020, when she received and reviewed Ming Global's FAC.

24.  So has reviewed the Exhibits to Ming Global's FAC, and, categorically, So alleges that she was, and is now, unaware and lacks knowledge as to the true and complete nature of the transactions and purported investments evidenced by such Exhibits.

25.  Although So was designated by Christopher Kohl ("Kohl", his true identity is unknown to So) as the sole Officer and Director of Monarch, this was a figurehead role.  So had no true understanding or knowledge as to the business activities of Monarch.  At all times, So was acting in a limited administrative capacity only, and each of her acts on behalf of Monarch were at the direction of Kohl, Grygorev and Ivanov, as Monarch agents. When they told her to send wire transfers, she did.  Period.

26.  So had no true understanding or knowledge (a) as to the nature and purpose of the wire transfers, (b) whether the recipient of the wire transfers would be making investments on behalf of Ming Global, or (c) whether Monarch received good and sufficient consideration in exchange for making the wire transfers.

27.   In connection with propping-up So as the Officer and Director figurehead of Monarch, Cross-Defendants Grygorev and Ivanov conspired to defraud, and did defraud So, with their fraudulent scheme that was primarily designed to defraud Ming Global.

28.   Moreover, Cross-Defendants Grygorev and Ivanov, and each of them, agreed with each other, pursuant to a conspiracy among them, to not inform So of their fraudulent scheme vis-à-vis Ming Global, and they took such steps, by not fully and properly informing So as to their fraudulent scheme.

29.   Given such Cross-Defendants' fraud and deception, So was unaware of, and could not have reasonably discovered, Cross-Defendants' fraud and deception.

30.   Had So known the true facts, So would not have acquiesced in performing her limited administrative role as stated. So's reliance upon Cross-Defendants' willful and deceitful misrepresentations and omissions of material fact was justified.

31. As a direct and proximate result of Cross-Defendants fraudulent actions and omissions, So has suffered monetary damages measured by all the alleged damages that Ming Global alleges it has suffered ($13 million in investments, plus another $13 million in lost return on investment), for which Ming Global erroneously attributes liability and responsibility to So, and seeks to collect from So.

32.   In doing the acts herein alleged, Cross-Defendants acted with oppression, fraud and malice, therefore, So is entitled to recover punitive damages in an amount designed to punish such Cross-Defendants for their wrongful actions, to be shown according to proof at time of Trial.

## SECOND CLAIM FOR RELIEF
### (For Fraudulent Misrepresentations)
### (Against Cross-Defendants Monarch, Grygorev and Ivanov)

33. Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this First Amended Cross-Claim as if set forth here at length.

34. So is informed and believes, and based thereon alleges, that Kohl, pursuant to a conspiracy with Cross-Defendants Grygorev and Ivanov, as Monarch agents, made material false misrepresentations of material fact and omitted to state material facts to So in connection with asking her to assist with Monarch business operations, in particular, that:

(a)  Kohl represented to So that Christopher Kohl was his real name, he was a real person, and an international businessman, and he was involved in legitimately selling goods and making investments internationally, including in Turkey, Hong Kong, Singapore.

(b)  Kohl represented to So that he was well-positioned to earn substantial commissions, and that he would pay So if she assisted him as an Administrator in performing limited escrow services and making money transfers.

(c)  Kohl represented to So that designating So as the Officer positions and the sole Director position with Monarch as a Nevada corporation, was "simple and clean", which made So's opening access to Monarch's corporate bank accounts at Bank of America and U.S. Bank, for purposes of performing escrow services and making money transfers, "easier".

(d)  When Cross-Defendants Grygorev and Ivanov instructed So to make wire transfers from Monarch's corporate bank accounts at Bank of America and U.S. Bank to third-parties, Grygorev and Ivanov told So that "everything is fine", and "you are doing a good job," which caused So to believe that Monarch was conducting legitimate business.

35.  So is informed and believes, and based thereon, alleges that Kohl and Cross-Defendants Grygorev and Ivanov intended that So rely on their respective promises, so as to

induce So to acquiesce in holding the figurehead Officers and Director position with Monarch, and perform certain limited administrative functions with respect to Monarch's corporate bank accounts, as instructed by them.

36.   So did, in fact, reasonably rely upon Kohl's and Cross-Defendants Grygorev and Ivanov respective promises by holding the figurehead Officers and Director position with Monarch, and perform certain limited administrative functions with respect to Monarch's corporate bank accounts, as instructed by them. So had no reasonable grounds for believing that Kohl's and Cross-Defendants Grygorev's and Ivanov's respective promises were false. So's reasonable reliance was a substantial factor in causing her harm and damages as alleged herein.

37.   In truth, Kohl's and Cross-Defendants Grygorev and Ivanov's representations, as all imputed to Monarch, were in fact materially false, and their omissions of fact were material, in that:

(a)   Christopher Kohl is not the real name of the person with whom So initially dealt with respect to Monarch, and, So has no information as to the true identity or whereabouts of purported person who called himself Kohl;

(b)   Kohl and Cross-Defendants Grygorev and Ivanov conspired to, and took concerted action to designate So as the Officer positions and the sole Director position with Monarch as a Nevada corporation, and instructed So to be the authorized signatory on Monarch's corporate bank accounts at Bank of America and U.S. Bank, for purposes of insulating themselves, and other third-parties, from liability with respect to the fraudulent scheme perpetrated by them against Ming Global, all done without So's knowledge;

(c)   So is informed and believes, and based thereon alleges that when Cross-

Defendants Grygorev and Ivanov instructed So to make wire transfers from Monarch's corporate bank accounts at Bank of America and U.S. Bank to third-parties, Grygorev and Ivanov, as well as others purporting to be Monarch's agents affiliated with First Eastern Investments, this was all pursuant to a conspiracy between them to engage in the fraudulent scheme perpetrated by them against Ming Global, all done without So's knowledge.

38. As a direct and proximate result of Cross-Defendants fraudulent representations, promises, actions and omissions, So has suffered monetary damages measured by all the alleged damages that Ming Global alleges it has suffered ($13 million in investments, plus another $13 million in lost return on investment), for which Ming Global erroneously attributes liability and responsibility to So, and seeks to collect from So.

39.  In doing the acts herein alleged, Cross-Defendants acted with oppression, fraud and malice, therefore, So is entitled to recover punitive damages in an amount designed to punish such Cross-Defendants for their wrongful actions, to be shown according to proof at time of Trial.

### THIRD CLAIM FOR RELIEF
### (Breach of Indemnification Agreement)
### (Against Cross-Defendants Monarch, Grygorev and Ivanov)

40. Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this First Amended Cross-Claim as if set forth here at length.

41. On or about November 25, 2020, So, on one hand, and Monarch, and Cross-Defendants Igor Grygorev ("Grygorev") and Yriy Ivanov ("Ivanov"), the sole shareholders of Monarch, on the other hand, entered into a written **Indemnification Agreement and Mutual Release**, and true and correct copy of which is attached as **Exhibit "A"** hereto, and incorporated herein by this reference.

42. Initially, Grygorev and Ivanov sent their purported signed Indemnification Agreement, together with an attachment containing statement by the Notary (Bakulin Ylia) that the Translator (Kleprev Viktov) presented sufficient proof of the Translator's identify. However, there was no Notary attestation that Grygorev and Ivanov each signed the Indemnification Agreement. In addition, the 2 signatures for Igor (one on behalf of Monarch Holdings, Inc., and one, individually) do not appear to be the same signature. Counsel for So informed Grygorev and Ivanov that the document needed to be properly authenticated.

43. Next, Grygorev and Ivanov sent their purported signed Indemnification Agreement, bearing an official-looking stamp next to their signatures. Once again, the document was not properly authenticated by a Notary or Official statement that (1) Grygorev and Ivanov personally appeared before such Notary or Official and presented sufficient evidence of their identity and (2) signed the document in that person's presence.

44. Notwithstanding the lack of proper authentication of Grygorev's and Ivanov's signatures, So alleges that there was a meeting of the minds as to the formation of a binding Indemnification Agreement, supported by sufficient consideration, and enforceable by So as against Monarch, Grygorev and Ivanov.

45. Despite demand by So's counsel upon Grygorev and Ivanov to provide proper Notary and/or Apostille authentication of their signatures on behalf of Monarch and themselves, as well as provide their proper contact information (address, phone numbers and email addresses), Grygorev and Ivanov have failed to do so. As a result, Monarch, Grygorev and Ivanov, are in breach of the Indemnification Agreement.

46. As a direct and proximate result of Cross-Defendants breach of the Indemnification Agreement, So has suffered monetary damages measured by all the alleged

damages that Ming Global alleges it has suffered ($13 million in investments, plus another $13 million in lost return on investment), for which Ming Global erroneously attributes liability and responsibility to So, and seeks to collect from So.

47.  An actual and present controversy exists with respect to the interpretation and enforcement of the Indemnification Agreement.  So requests that this Court interpret and enforce the Indemnification Agreement, including, paragraph 2, thereof, providing that:

**2.  Indemnification**.

    (a) Monarch, Grygorev and Ivanov, hereby (the "Indemnifying Parties") agree to indemnify and hold harmless So, and each of her immediate family members (the "Indemnified Parties") from and against (1) any and all losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses and disbursements, in the Lawsuit and any and all other actions, suits, proceedings and investigations in respect thereof, and any and all legal and other costs, expenses and disbursements in giving testimony or furnishing documents in response to a subpoena or otherwise (including, without limitation, So's attorneys' fees, costs, expenses and disbursements, as and when incurred, of investigating, preparing, pursuing or defending any such action, suit, proceeding or investigation)(collectively, "Losses"), directly or indirectly, caused by, relating to, based upon, arising out of, or in connection with, the allegations and causes of action set forth in the Lawsuit,  any and all other actions, suits, proceedings and investigations, any Order or Judgment issued by the Court or Jury in the Lawsuit, or the Investments, (2) any breach by the Indemnifying Parties of any representation, warranty, covenant or agreement contained in this Agreement (or in any instrument, document or agreement relating thereto, including any agency agreement), (3) the enforcement by the Indemnified Parties of their rights under this Agreement or these indemnification provisions, (4) except to the extent that any such Losses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder.

    (b) As of the date of this Indemnification Agreement, So has incurred $5,000 in attorneys' fees to the Law Office of Brian Ballo, the law firm she has chosen to represent her in the Lawsuit.  Upon execution of this Agreement, the Indemnifying Parties agree to reimburse So the sum of $5,000, to cover her attorneys' fees incurred to date, by wiring the sum of $5,000 ….[to the Law Office of Brian Ballo, IOLTA Account]."

**FOURTH CLAIM FOR RELIEF**
**(For Fraudulent Misrepresentations)**
**(Against IMTHC and D'Urso)**

48.   Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this First Amended Cross-Claim as if set forth here at length.

49.   So is informed and believes, <u>based only on allegations in Ming Global's FAC</u>, that during June 2020- August 2020, IMTHC and its agents, including D'Urso, Christopher Kohl, Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton and Angela Fung, represented to Ming Global that (a) Monarch was the purported broker for U.S. based trades affiliated with the prominent Hong Kong private equity firm: First Eastern Investments Limited ("First Eastern"), and (b) that  money which Ming Global would send, and did send to Ming Global, would be returned by Monarch to Ming Global upon Ming Global's demand.  At no time did So make any such representations to Ming Global, and was unaware that IMTHC, D'Urso and others were making such representations.

50.   So is informed and believes, <u>based only on allegations in Ming Global's FAC</u>, that as alleged in Ming Global's FAC, IMTHC and its agents, including D'Urso, Christopher Kohl, Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton and Angela Fung, made numerous false representations to Ming Global, including that Monarch was the U.S. brokerage firm that would hold Ming Global's funds and purchase shares in other companies. At no time did So make any such representations to Ming Global, and was unaware that IMTHC, D'Urso and others were making such representations. Such representations were false, since Monarch is <u>not</u> registered as a U.S. securities broker on the Financial Industry Regulatory Authority's list of licensed securities brokers (http://brokercheck.finra.org).

-17-

51. So is informed and believes, <u>based only on allegations in Ming Global's FAC</u>, that as alleged in Ming Global's FAC, IMTHC and its agents, made representations to and had discussions with Ming Global regarding Ming Global making investments by purchasing shares in BioNTech, SE (BNTX), Novavax, Inc. (NVAC), Anheuser Bush InBev SA/NV (BUD), United Continental Holdings, Inc. (UAL), The Boeing Company (BA) and Royalty Pharma, PLC (RPRX).  At no time did So make any such representations to Ming Global, and was unaware that IMTHC, D'Urso and others were making such representations.  So had no personal knowledge or involvement in the purported representations or actions of IMTHC and its agents with respect to Ming Global regarding these investments which IMTHC and its agents represented to Ming Global would involve Monarch in some purported manner.

52.  So is informed and believes, and based thereon alleges, that during June 2020 through August 2020, Ming Global sent monies to bank accounts maintained by Monarch at Bank of America and U.S. Bank.  So is not aware whether or not Ming Global's monies were earmarked for investments by Ming Global in the shares of the companies identified.  So is not aware whether or not Ming Global's monies were actually used to purchase any shares in any of the companies identified.  At no time did So make any such representations to Ming Global, and was unaware that IMTHC, D'Urso and others were making such representations.

53. During June 2020 through August 2020, at the express direction and after receiving clear instructions from Monarch, Kohl, Grygorev and Ivanov, So made wire transfers of monies from Monarch's bank accounts at Bank of America and U.S. Bank to third-parties, including, but not limited to, Wellington & York Partners, Incorporated, in Singapore.

54.  So is informed and believes, <u>based only on allegations in Ming Global's FAC</u>, that

-18-

as alleged in Ming Global's FAC, in July 2020 and August 2020, Ming Global made demand upon IMTHC and Monarch to return Ming Global's monies.   So had no personal knowledge or involvement in the representations or actions of IMTHC, Monarch and their agents in responding to Ming Global regarding Ming Global's demands.

55.  At no time did So make any direct representations to Ming Global, nor knowingly take any actions towards Ming Global, intending to induce Ming Global to rely thereon and transfer funds to Monarch for alleged stock investments in third-party companies.  As such, Ming Global could not have reasonably relied upon anything that So said, failed to say, did, or failed to do, when Ming Global transferred monies to Monarch.

56.  The representations of IMTHC's and D'Urso to Ming Global regarding Monarch were made with malice, fraud and oppression.

57.   As a result of IMTHC's and D'Urso's misrepresentations, Ming Global has sued Monarch, and So, personally.  By its FAC, Ming Global is apparently attempting to attribute IMTHC's, D'Urso's and Monarch's liability, upon So, personally, either as the agent of Monarch, as the alter ego of Monarch, and/or as a participant in a civil conspiracy involving the other Defendants named in Ming Global's FAC.

58.  As a direct and proximate result of IMTHC's and D'Urso's misrepresentations, So has been damaged in the amounts that Ming Global's FAC seeks to collect from So, to wit: $26,683,540 total that Ming Global alleges it has lost, including its original investment of $13,329,181.76.

**FIFTH CLAIM FOR RELIEF**
**(For Implied Indemnity)**
**(Against All Cross-Defendants)**

59. Cross-Claimant So incorporates by reference all of the allegations in the above

-19-

paragraphs of this First Amended Cross-Claim as if set forth here at length.

60. On October 26, 2020, Ming Global's FAC was filed in this action alleging Claims for Relief for (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, (3) Fraud, (4) Civil Conspiracy, (5) Promissory Estoppel, (6) Unjust Enrichment, (7) for Money Had and Received, (8) for Federal Securities Fraud, and (9) for Violation of California Securities Law. Said FAC, for purposes of its allegations only, is incorporated by reference herein as though fully set forth at length.

61. Cross-Claimant So is incurring and has incurred attorney's fees, court costs, investigative costs and other costs in connection with defending said FAC, the exact amount of which is unknown at this time. When the same has been ascertained, Cross-Claimant So will seek leave of court to amend this FAX-C to set forth the true nature and amount of said costs and expenses.

62. If Cross-Claimant So is held liable and responsible to Plaintiff Ming Global for damages as alleged in the FAC, this liability will be solely due to the conduct of Cross-Defendants, and each of them, as herein alleged. Therefore, Cross-Claimant So is entitled to be indemnified by said Cross-Defendants, and each of them, should such liability arise.

63. If Cross-Claimant So is held liable or responsible to Plaintiff Ming Global for damages, said liability will be vicarious only, and said liability will be the direct and proximate result of the active and affirmative conduct on the part of Cross-Defendants, and each of them.

64. Cross-Claimant So is entitled to complete indemnification by said Cross-Defendants, and each of them for any sum or sums for which she may be adjudicated liable

-20-

First Amended Cross-Claim by Maria Veronica So
Ming Global Limited v. Monarch Holdings, Inc., et. al.

to Plaintiff, with costs of defense, costs of suit, and reasonable attorney's fees incurred therefrom.

**SIXTH CLAIM FOR RELIEF**
**Comparative Indemnity**
**Against all Cross-Defendants)**

65. Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this First Amended Cross-Claim as if set forth here at length.

66. Cross-Claimant So contends that she is in no way legally responsible for the events giving rise to Plaintiff Ming Global's Claims for Relief, or legally responsible in any other manner for the damages allegedly sustained by Plaintiff. However, if as a result of the matters alleged in Plaintiff's FAC, So is held liable for all or any part of the claim or damages asserted against her by Plaintiff, then, Cross-Defendants, and each of them, to the extent that their fault was a proximate cause of Plaintiff's damages and/or losses, are responsible for said damages and/or losses in proportion to each Cross-Defendants' comparative negligence and this Cross-Claimant is entitled to a determination of several liability.

67. By reason of the foregoing, Cross-Claimant So is entitled to indemnity from Cross-Defendants, and each of them, for all costs, fees, expenses, settlements and judgments paid by and incurred by Cross-Claimant in connection with this litigation.

**SEVENTH CLAIM FOR RELIEF**
Equitable Indemnity
(Against All Cross-Defendants)

68. Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this First Amended Cross-Claim as if set forth here at length.

69. Cross-Claimant alleges that she is in no way legally responsible for the events giving rise to Plaintiff's FAC, and is not legally responsible in any manner for the damages

allegedly sustained by Plaintiff. If, contrary to the foregoing allegations, Cross-Claimant So herein is held to be liable for all or any part of the claim for damages asserted against Cross-Claimant by Plaintiff, then Cross-Claimant is informed and believes, and based upon such information and belief, alleges that Cross-Defendants, and each of them, falsely misrepresented material facts, and omitted to disclose material facts, and such false misrepresentations and omissions were the proximate cause of Plaintiff's damages.

70. By reason of the foregoing, Cross-Defendants, and each of them, are responsible and liable for any such damages in direct proportion to the extent of their wrongful actions in bringing about said damages. If Cross-Claimant is found to be responsible for any of the damages of Plaintiff, then Cross-Claimant is entitled to judgment over and against Cross-Defendants, and each of them in an amount proportionate to the amount of Cross-Claimant's financial responsibility for such damages that exceed her portion of responsibility, if any.

**EIGHTH CLAIM FOR RELIEF**
**Contribution**
**(Against All Cross-Defendants)**
.

71. Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this First Amended Cross-Claim as if set forth here at length.

72. Cross-Claimant contends that she is in no way legally responsible for the damages alleged in Plaintiff's FAC. However, if as a result of the matters alleged in Plaintiff's FAC, Cross-Claimant is held liable for all or any part of Plaintiff's alleged damages, Cross-Defendants herein, and each of them, to the extent that their fault is determined by the court, are obligated to reimburse and are liable to Cross-Claimant for all or any liability so assessed by way of contribution, and Cross-Claimant accordingly asserts herein such right to contribution.

### NINTH CLAIM FOR RELIEF
**(For Civil Conspiracy)**
**(Against All Cross-Defendants)**

73. Cross-Claimant So incorporates by reference all of the allegations in the above paragraphs of this Cross-Claim as if set forth here at length.

74. So is informed and believes, and based thereon alleges, that (a) Kohl, Monarch, Grygorev and Ivanov by making false misrepresentations and committing wrongful acts as alleged herein, (b) IMTHC and D'Urso, by making false misrepresentations and committing wrongful acts, as alleged in Ming Global's FAC, and (c) Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton and Angela Fung, by making false misrepresentations and committing wrongful acts, as alleged in Ming Global's FAC, pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with one another pursuant to a conspiracy in furtherance of their common plan or design.

75. So is informed and believes, and based thereon alleges, that at all relevant times, Cross-Defendants, and each of them, was aware of the fraudulent scheme detailed above and incorporated herein.

76. So is informed and believes, and based thereon alleges, that at all relevant times, pursuant to the conspiracy, Cross-Defendants directed and authorized Kohl, Grygorev, Ivanov, and So to wire monies from Monarch's bank accounts to third-parties, including, but not limited to, Wellington & York Partners, Incorporated, in Singapore.

77. Ming Global's FAC seeks to collect from So, to wit: $26,683,540 that Ming Global alleges it has lost, including its original investment of $13,329,181.76. Accordingly, as a direct and proximate result of the conspiracy involving Cross-Defendants, So has been damaged in these amounts.

**PRAYER**

WHEREFORE, in addition to the Relief sought at the end of Cross-Claimants Nine Claims for Relief set forth above, So prays for Relief on her First Amended Counter-Claim as follows:

A. For a temporary, preliminary and/or permanent injunction against Cross-Defendants, and each of them, from taking any further fraudulent actions against So;

B. For an award of damages in favor of So and as against Cross-Defendants to compensate So for the harm caused by Cross-Defendants, and each of them;

C. For an award of punitive or exemplary damages in favor of So in an amount sufficient to punish Cross-Defendants, and each of them, for their fraudulent, malicious, or oppressive conduct and to deter such conduct in the future;

D. For an award of all costs incurred by So herein;

E. For an award of all attorneys' fees incurred by So herein;

F. For an award of pre-judgment and post-judgment interest on all amounts awarded; and,

G. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**LAW OFFICE OF BRIAN BALLO**

Dated:  December 15, 2020                    By:_____
                                                                Brian P. Ballo, Esq.
                                                                Attorney for Defendant and Cross-Claimant
                                                                Veronica So a/k/a Maria Veronica So a/k/a
                                                                Maria So

-24-

Exhibit "A"

## INDEMNIFICATION AGREEMENT AND RELEASE OF CLAIMS

This **Indemnification Agreement and Release of Claims** ("Agreement") is entered into by and between:

**Monarch Holdings, Inc.** a Nevada corporation, dba **Monarch Internation, Inc.** aka **Monarch International, Inc.** ("Monarch" herein), **Igor Grygorev**, an individual ("Grygorev" herein), and Yriy Ivanov, an individual, on one hand, and

**Maria Veronica Aque So**, an individual, aka **Maria Veronica So** aka **Veronica So** aka **Maria So** ("So" herein), on the other hand (each a "Party", and collectively, the "Parties").

### RECITALS

WHEREAS, on March 25, 2019, Monarch Holdings, Inc. was formed as a Nevada corporation, NV Business ID: NV20191230530, NV Entity Number: E0136382019-2, with 1,500 authorized shares of common stock. So is listed in filings with the Nevada Secretary of State as the President, Secretary, Treasurer and sole Director.

WHEREAS, So is not a Shareholder of Monarch. Rather, Grygorev, and Ivanov hereby represent that they are the only and all the Shareholders of Monarch.

WHEREAS, on June 18, 2020, Monarch filed a Statement and Designation by Foreign Corporation with the California Secretary of State that Monarch Holdings, Inc. will do business in California as dba Monarch Internation, Inc. aka Monarch International, Inc.

WHEREAS, on August 5, 2020, Monarch filed a Statement of Information with the California Secretary of State indicating that So was the Chief Executive Officer, Secretary, Chief Financial Officer and the sole Director of Monarch.

WHEREAS, on September 24, 2020, a Complaint was filed, styled Ming Global Limited, a Hong Kong company ("Ming Global" herein) v. Monarch Holdings, Inc., et. al. in the United States District Court, Central District of California, Case No. 8:20-cv-01852-JVS-KES (the "Lawsuit" herein).

WHEREAS, on October 6, 2020, a First Amended Complaint ("FAC") was filed in the Lawsuit against Monarch, So, Irvine Management Transfers and Holdings Corp., a New York corporation, Alyssa D'Urso aka Alyssa Durso alleging causes of action for: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, (3) Fraud, (4) Civil Conspiracy, (5) Promissory Estoppel, (6) Unjust Enrichment, (7) Money Had and Received, (8) Federal Securities Fraud – Violation of Section 10b-5 of the Exchange Act of 1934, 15 U.S.C. §78j, (9) California State Securities Fraud – Violation of California Securities Law, Corp. Code §25401 et. seq., arising out of FAC allegations that "Ming Global was the victim of an elaborate fraud based on non-existent investments. Through a series of misrepresentations, broken promises and breached agreements Monarch bilked Ming Global out of more than $13 million and, assuming Monarch actually invested the money as it did, out of another $13 million in purported returns. All of this money was transferred by Ming Global to Monarch's bank account right here in California." (the "Investments").

WHEREAS, Monarch, Grygorev and Ivanov, hereby represent that with respect to Monarch's business activities and, with respect to the financial transfers and Investments as alleged in the FAC, So was acting in a limited administrative capacity only, and each of her acts on behalf of Monarch were at

1

the direction of Monarch, Grygorev and Ivanov, in exchange for which So received total compensation of less than $30,000 from Monarch and $0 of Ming Global's alleged Investments.

WHEREAS, Monarch, Grygorev and Ivanov, desire to induce So not to file a Cross-Claim against them in the Lawsuit, by providing the indemnification and releases as set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing and of the terms and conditions set forth herein, the Parties do hereby agree as follows:

## TERMS AND CONDITIONS

1. ~~Recitals~~. The Recitals set forth above are hereby incorporated herein and made a substantive part of this Agreement.

2. **Indemnification**.

(a)     Monarch, Grygorev and Ivanov, hereby (the "Indemnifying Parties") agree to indemnify and hold harmless So, and each of her immediate family members (the "Indemnified Parties") from and against (1) any and all losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses and disbursements, in the Lawsuit and any and all other actions, suits, proceedings and investigations in respect thereof, and any and all legal and other costs, expenses and disbursements in giving testimony or furnishing documents in response to a subpoena or otherwise (including, without limitation, So's attorneys' fees, costs, expenses and disbursements, as and when incurred, of investigating, preparing, pursuing or defending any such action, suit, proceeding or investigation)(collectively, "Losses"), directly or indirectly, caused by, relating to, based upon, arising out of, or in connection with, the allegations and causes of action set forth in the Lawsuit,  any and all other actions, suits, proceedings and investigations, any Order or Judgment issued by the Court or Jury in the Lawsuit, or the Investments, (2) any breach by the Indemnifying Parties of any representation, warranty, covenant or agreement contained in this Agreement (or in any instrument, document or agreement relating thereto, including any agency agreement), (3) the enforcement by the Indemnified Parties of their rights under this Agreement or these indemnification provisions, (4) except to the extent that any such Losses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder.

(b)     As of the date of this Indemnification Agreement, So has incurred $5,000 in attorneys' fees to the Law Office of Brian Ballo, the law firm she has chosen to represent her in the Lawsuit.  Upon execution of this Agreement, the Indemnifying Parties agree to reimburse So the sum of $5,000, to cover her attorneys' fees incurred to date, by wiring the sum of $5,000 to:

> Account Name: Law Office of Brian Ballo, IOLTA Account
> Bank Name: Wells Fargo Bank, NA
> Wire Transfer Routing Number: 121000248
> Account Number: [Redacted]
> Bank Address: Wells Fargo Bank, 420 Montgomery Street, San Francisco, CA 94104

On or about the 1st day of each month, the Law Office of Brian Ballo will provide the Indemnifying Parties with the Monthly Invoice for attorneys' fees incurred at $330/hour for Brian Ballo, Esq., as well as other costs and expenses incurred by So in connection with the legal defense of the Lawsuit.  The Indemnifying Parties hereby agree to directly pay So's Monthly Invoice to the Law Office of Brian Ballo.  So estimates that the attorneys' fees to be incurred by the Law Office of Brian Ballo, as well as

other costs and expenses incurred by So in connection with the legal defense of the Lawsuit, are reasonably estimated at $5,000 per month during the pendency of the Lawsuit, and $2,500 per day for final Trial preparation and during Trial.

(c)     If any new or additional action, suit, proceeding or investigation is commenced against the Indemnified Parties, including, but not limited to any federal, state or international civil or criminal action arising out of, or in connection with, similar allegations and causes of action as those set forth in the Lawsuit, as to which an Indemnified Party proposes to demand indemnification, it shall notify the Indemnifying Parties with reasonable promptness; provided, however, that any failure by an Indemnified Party to notify the Indemnifying Parties shall not relieve the Indemnifying Parties from their obligations hereunder, unless such failure to notify has a material adverse impact on the ability of the Indemnifying Parties to prepare a defense. In such new or additional action, suit, proceeding or investigation, an Indemnified Party shall have the right to retain counsel of its own choice to represent it, and the attorneys' fees, expenses and disbursements of such counsel shall be reimbursed by the Indemnifying Parties. Any such counsel shall, to the extent consistent with its professional responsibilities, cooperate with the Indemnifying Parties and any counsel designated by the Indemnifying Parties.

(d)     The Indemnifying Parties shall not, without the prior written consent of So, settle or compromise the Lawsuit, any claim by Ming Global, or permit a default or consent to the entry of any Judgment in respect thereof against any of the Indemnified Parties, unless such settlement, compromise or consent (1) includes, as an unconditional term thereof, the giving by Ming Global to all of the Indemnified Parties named in the Lawsuit and all claims by Ming Global against So, of an unconditional release from all liability in respect of such claims, and (2) does not contain any factual or legal admission by or with respect to an Indemnified Party or an adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party. The Indemnifying Parties shall be fully liable and financially responsible for any settlement of any claim against any Indemnified Party made with the Indemnifying Parties' written consent.

(e)     Neither termination nor completion of this Agreement shall affect these Indemnification Provisions which shall remain operative and in full force and effect. The Indemnification Provisions shall be binding upon the Indemnifying Parties and their agents, successors and assigns and shall inure to the benefit of the Indemnified Parties and their respective agents, successors, assigns, heirs and personal representatives.

### 3. Release of Claims.

(a)     Monarch, Grygorev, and Ivanov on behalf of itself, themselves and their respective agents, employees, representatives, attorneys, successors, and assigns, hereby release So and her respective agents, employees, representatives, attorneys, successors, and assigns from any and all claims, demands, obligations, or liability of whatever kind, that Monarch has or had against So arising out of the out of, or in connection with, the allegations and causes of action set forth in the Lawsuit, any and all other actions, suits, proceedings and investigations, any Order or Judgment issued by the Court or Jury in the Lawsuit, or the Investments, whether asserted or otherwise, and whether known or unknown.

(b)     "Unknown Claims" means any claim which he/she does not know or suspect to exist in his favor at the time of the releases granted herein which, if known by he/she might have affected its settlement with and release of he/she. He/she and his/her employees, agents, and representatives shall

3



be deemed to have, and by execution of this Agreement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable or equivalent to Section 1542 of the California Civil Code, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

He/she and his/her employees, agents, and representatives may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the claims released herein, but the foregoing persons and entities shall be deemed to have, and by execution of this Agreement shall have, fully, finally, and forever settled and released any and all claims relating to the matters alleged in the Lawsuit, known or unknown, suspected or unsuspected, contingent or fixed, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

4. **So Agreement Not to File Counter-Claim**.

    (a)    Provided that, and for so long as, the Indemnifying Parties are not in default of any of the terms of this Agreement, and none of the representations of the Indemnifying Parties in this Agreement are untrue, then, So agrees not to file a Counter-Claim in the Lawsuit against Monarch, Grygorev, and Ivanov.

    (b)    However, the limitation in paragraph 4(a), above, shall not prevent So from filing a Counter-Claim against any of the other existing Defendants, including, but not limited to, Irvine Management Transfers and Holdings Corp., a New York corporation, Alyssa D'Urso aka Alyssa Durso, or any future Defendants, or against any other third-parties whom So believes may have committed wrongs against So and caused So any damages.

5. **No Admission of Liability**. The Parties understand and acknowledge that this Agreement, and any and all consideration given, constitutes a compromise and settlement of potentially disputed claims and that entering into and executing this Agreement shall not be deemed or construed to be an admission of the truth or falsity of any claims made or an acknowledgment or admission of liability by either Party.

6. **Representation of Counsel; Opportunity to Review**. The Parties each represent that they have had sufficient opportunity to consult their/its own legal counsel with regard to the negotiation and preparation, as well as the scope and effect, of this Agreement.

7. **Authority**. Each Party further affirms that they are fully capable of executing this Agreement and understand its contents and further that they have legal counsel of their own choice or that they have had an opportunity to obtain such legal counsel to explain the legal effect of signing this Agreement. The individuals whose signatures are affixed to this Agreement in a personal or representative capacity represent that they are authorized and competent to enter into this Agreement and are doing so freely and without coercion by any other Party or non-party hereto.

4

**8.  Entire Agreement**. This Agreement represents the entire agreement and understanding between the Parties hereto concerning the matters set forth herein.  No Party has relied upon any representations or statements made by the other which are not specifically set forth in this Agreement.

**9.  Governing Law / Attorneys' Fees**.  This Agreement shall be governed by the laws of the State of California, without regard for any choice of laws provision therein.  The prevailing Party in any action to enforce this Agreement shall be awarded costs and attorneys' fees.

**10.  Consent to Jurisdiction / Venue**.  The Parties hereby agree that any and all of their disputes including any alleged breach or fraud in connection with this Agreement, shall be decided in the pending Lawsuit.  Each of the Parties hereby irrevocably consents to the United States District Court, Central District of California, having jurisdiction over each of the Parties hereto, and that venue shall be in such Court.

**11.  Counterparts**. This Agreement may be executed in counterparts and, upon execution by both Parties, each copy so executed shall be deemed an original for all purposes. All such executed counterparts shall be deemed one agreement. An executed signature page of this Agreement transmitted by email or facsimile shall be considered binding.

**SO AGREED:**

The Indemnifying Parties:
**Monarch Holdings, Inc.**
a Nevada corporation,
dba **Monarch International, Inc.**
dba **Monarch International, Inc.**

By: _____
Igor Grygorev

Its: _____
Dated: November _25_, 2020

_____
**Maria Veronica Aque So,**
an individual,
aka **Maria Veronica So**
aka **Veronica So**
aka **Maria So**
Dated: November _25_, 2020

_Igor Grygorev_
**Igor Grygorev**, an individual
Dated: November _25_, 2020

_____
Yriy Ivanov, an individual
Dated: November _25_, 2020

5

*Перевод данного текста сделан мной, переводчиком Клепневым Виктором Игоревичем, верность перевода подтверждаю*

**Российская Федерация**

**Город Москва**
**Двадцать шестого ноября две тысячи двадцатого года.**

Я, Бакулина Юлия Николаевна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Клепнева Виктора Игоревича.

Подпись сделана в моем присутствии.

Личность подписавшего документ установлена.

Зарегистрировано в реестре: № 77/1794-н/77-2020- 4-508

Взыскано государственной пошлины (по тарифу): 100 руб.

Уплачено за оказание услуг правового и технического характера:  300 руб.

_____   Ю.Н. Бакулина

<u>**PROOF OF SERVICE**</u>

**MING GLOBAL LIMITED v. MONARCH HOLDINGS, INC., et. al.**

**U.S.D.C., Central District CA, Case No. 8:20-cv-01852-JVS-KES**

I, Brian Ballo, declare as follows:

I reside in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action. My address is 120 Vantis, Suite 300, Aliso Viejo, California, 92656.

On December 15, 2020, I served Defendant and Cross-Claimant Veronica So a/k/a Maria Veronica So a/k/a Maria So's First Amended Cross-Claim on:

Nicholas Kennedy, Esq.                    Attorneys for Plaintiff
**Baker & McKenzie, LLP**              **Ming Global Limited**
1900 North Pearl St., Suite 1500
Dallas, TX  75201

Katherine Miner, Esq.
**Baker & McKenzie, LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067

_____  **By Mail**: I caused such envelope(s) to be deposited in the mail at my business address, addressed to the addressee(s) designated.  I am readily familiar with the company's collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully prepaid, at Aliso Viejo, California, in the ordinary course of business. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

_XX_  **By E-mail**: I caused the documents to be sent to the persons at the following e-mail addresses:
Nicholas.Kennedy@bakermckenzie.com katherine.miner@bakermckenzie.com
I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

_XX_  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Dated this December 15, 2020

_____
**Brian P. Ballo. Esq.**

-25-
First Amended Cross-Claim by Maria Veronica So
Ming Global Limited v. Monarch Holdings, Inc., et. al.