# INDEMNIFICATION AGREEMENT AND RELEASE OF CLAIMS

This **Indemnification Agreement and Release of Claims** ("Agreement") is entered into by and between:

**Monarch Holdings, Inc.** a Nevada corporation, dba **Monarch Internation, Inc.** aka **Monarch International, Inc.** ("Monarch" herein), **Igor Grygorev**, an individual ("Grygorev" herein), and **Yriy Ivanov**, an individual, on one hand, and

**Maria Veronica Aque So**, an individual, aka **Maria Veronica So** aka **Veronica So** aka **Maria So** ("So" herein), on the other hand (each a "Party", and collectively, the "Parties").

## RECITALS

WHEREAS, on March 25, 2019, Monarch Holdings, Inc. was formed as a Nevada corporation, NV Business ID: NV20191230530, NV Entity Number: E0136382019-2, with 1,500 authorized shares of common stock. So is listed in filings with the Nevada Secretary of State as the President, Secretary, Treasurer and sole Director.

WHEREAS, So is not a Shareholder of Monarch. Rather, Grygorev, and Ivanov hereby represent that they are the only and all the Shareholders of Monarch.

WHEREAS, on June 18, 2020, Monarch filed a Statement and Designation by Foreign Corporation with the California Secretary of State that Monarch Holdings, Inc. will do business in California as dba Monarch Internation, Inc. aka Monarch International, Inc.

WHEREAS, on August 5, 2020, Monarch filed a Statement of Information with the California Secretary of State indicating that So was the Chief Executive Officer, Secretary, Chief Financial Officer and the sole Director of Monarch.

WHEREAS, on September 24, 2020, a Complaint was filed, styled _Ming Global Limited, a Hong Kong company_ ("Ming Global" herein) _v. Monarch Holdings, Inc., et. al._ in the United States District Court, Central District of California, Case No. 8:20-cv-01852-JVS-KES (the "Lawsuit" herein).

WHEREAS, on October 6, 2020, a First Amended Complaint ("FAC") was filed in the Lawsuit against Monarch, So, Irvine Management Transfers and Holdings Corp., a New York corporation, Alyssa D'Urso aka Alyssa Durso alleging causes of action for: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, (3) Fraud, (4) Civil Conspiracy, (5) Promissory Estoppel, (6) Unjust Enrichment, (7) Money Had and Received, (8) Federal Securities Fraud – Violation of Section 10b-5 of the Exchange Act of 1934, 15 U.S.C. §78j, (9) California State Securities Fraud – Violation of California Securities Law, Corp. Code §25401 et. seq., arising out of FAC allegations that "Ming Global was the victim of an elaborate fraud based on non-existent investments. Through a series of misrepresentations, broken promises and breached agreements Monarch bilked Ming Global out of more than $13 million and, assuming Monarch actually invested the money as it did, out of another $13 million in purported returns. All of this money was transferred by Ming Global to Monarch's bank account right here in California." (the "Investments").

WHEREAS, Monarch, Grygorev and Ivanov, hereby represent that with respect to Monarch's business activities and, with respect to the financial transfers and Investments as alleged in the FAC, So was acting in a limited administrative capacity only, and each of her acts on behalf of Monarch were at

1

the direction of Monarch, Grygorev and Ivanov, in exchange for which So received total compensation of less than $30,000 from Monarch and $0 of Ming Global's alleged Investments.

WHEREAS, Monarch, Grygorev and Ivanov, desire to induce So not to file a Cross-Claim against them in the Lawsuit, by providing the indemnification and releases as set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing and of the terms and conditions set forth herein, the Parties do hereby agree as follows:

## TERMS AND CONDITIONS

1. **Recitals**. The Recitals set forth above are hereby incorporated herein and made a substantive part of this Agreement.

2. **Indemnification**.

    (a)   Monarch, Grygorev and Ivanov, hereby (the "Indemnifying Parties") agree to indemnify and hold harmless So, and each of her immediate family members (the "Indemnified Parties") from and against (1) any and all losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses and disbursements, in the Lawsuit and any and all other actions, suits, proceedings and investigations in respect thereof, and any and all legal and other costs, expenses and disbursements in giving testimony or furnishing documents in response to a subpoena or otherwise (including, without limitation, So's attorneys' fees, costs, expenses and disbursements, as and when incurred, of investigating, preparing, pursuing or defending any such action, suit, proceeding or investigation)(collectively, "Losses"), directly or indirectly, caused by, relating to, based upon, arising out of, or in connection with, the allegations and causes of action set forth in the Lawsuit, any and all other actions, suits, proceedings and investigations, any Order or Judgment issued by the Court or Jury in the Lawsuit, or the Investments, (2) any breach by the Indemnifying Parties of any representation, warranty, covenant or agreement contained in this Agreement (or in any instrument, document or agreement relating thereto, including any agency agreement), (3) the enforcement by the Indemnified Parties of their rights under this Agreement or these indemnification provisions, (4) except to the extent that any such Losses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder.

    (b)   As of the date of this Indemnification Agreement, So has incurred $5,000 in attorneys' fees to the Law Office of Brian Ballo, the law firm she has chosen to represent her in the Lawsuit. Upon execution of this Agreement, the Indemnifying Parties agree to reimburse So the sum of $5,000, to cover her attorneys' fees incurred to date, by wiring the sum of $5,000 to:

    <u>Account Name:</u> Law Office of Brian Ballo, IOLTA Account
    <u>Bank Name:</u> Wells Fargo Bank, NA
    <u>Wire Transfer Routing Number:</u> 121000248
    <u>Account Number:</u> [Redacted]
    <u>Bank Address:</u> Wells Fargo Bank, 420 Montgomery Street, San Francisco, CA 94104

On or about the 1st day of each month, the Law Office of Brian Ballo will provide the Indemnifying Parties with the Monthly Invoice for attorneys' fees incurred at $330/hour for Brian Ballo, Esq., as well as other costs and expenses incurred by So in connection with the legal defense of the Lawsuit. The Indemnifying Parties hereby agree to directly pay So's Monthly Invoice to the Law Office of Brian Ballo. So estimates that the attorneys' fees to be incurred by the Law Office of Brian Ballo, as well as

other costs and expenses incurred by So in connection with the legal defense of the Lawsuit, are reasonably estimated at $5,000 per month during the pendency of the Lawsuit, and $2,500 per day for final Trial preparation and during Trial.

(c) If any new or additional action, suit, proceeding or investigation is commenced against the Indemnified Parties, including, but not limited to any federal, state or international civil or criminal action arising out of, or in connection with, similar allegations and causes of action as those set forth in the Lawsuit, as to which an Indemnified Party proposes to demand indemnification, it shall notify the Indemnifying Parties with reasonable promptness; provided, however, that any failure by an Indemnified Party to notify the Indemnifying Parties shall not relieve the Indemnifying Parties from their obligations hereunder, unless such failure to notify has a material adverse impact on the ability of the Indemnifying Parties to prepare a defense. In such new or additional action, suit, proceeding or investigation, an Indemnified Party shall have the right to retain counsel of its own choice to represent it, and the attorneys' fees, expenses and disbursements of such counsel shall be reimbursed by the Indemnifying Parties. Any such counsel shall, to the extent consistent with its professional responsibilities, cooperate with the Indemnifying Parties and any counsel designated by the Indemnifying Parties.

(d) The Indemnifying Parties shall not, without the prior written consent of So, settle or compromise the Lawsuit, any claim by Ming Global, or permit a default or consent to the entry of any Judgment in respect thereof against any of the Indemnified Parties, unless such settlement, compromise or consent (1) includes, as an unconditional term thereof, the giving by Ming Global to all of the Indemnified Parties named in the Lawsuit and all claims by Ming Global against So, of an unconditional release from all liability in respect of such claims, and (2) does not contain any factual or legal admission by or with respect to an Indemnified Party or an adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party. The Indemnifying Parties shall be fully liable and financially responsible for any settlement of any claim against any Indemnified Party made with the Indemnifying Parties' written consent.

(e) Neither termination nor completion of this Agreement shall affect these Indemnification Provisions which shall remain operative and in full force and effect. The Indemnification Provisions shall be binding upon the Indemnifying Parties and their agents, successors and assigns and shall inure to the benefit of the Indemnified Parties and their respective agents, successors, assigns, heirs and personal representatives.

3. **Release of Claims**.

(a) Monarch, Grygorev, and Ivanov on behalf of itself, themselves and their respective agents, employees, representatives, attorneys, successors, and assigns, hereby release So and her respective agents, employees, representatives, attorneys, successors, and assigns from any and all claims, demands, obligations, or liability of whatever kind, that Monarch has or had against So arising out of the out of, or in connection with, the allegations and causes of action set forth in the Lawsuit, any and all other actions, suits, proceedings and investigations, any Order or Judgment issued by the Court or Jury in the Lawsuit, or the Investments, whether asserted or otherwise, and whether known or unknown.

(b) "Unknown Claims" means any claim which he/she does not know or suspect to exist in his favor at the time of the releases granted herein which, if known by he/she might have affected its settlement with and release of he/she. He/she and his/her employees, agents, and representatives shall

3



be deemed to have, and by execution of this Agreement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable or equivalent to Section 1542 of the California Civil Code, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

He/she and his/her employees, agents, and representatives may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the claims released herein, but the foregoing persons and entities shall be deemed to have, and by execution of this Agreement shall have, fully, finally, and forever settled and released any and all claims relating to the matters alleged in the Lawsuit, known or unknown, suspected or unsuspected, contingent or fixed, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

4. **So Agreement Not to File Counter-Claim**.

    (a)     Provided that, and for so long as, the Indemnifying Parties are not in default of any of the terms of this Agreement, and none of the representations of the Indemnifying Parties in this Agreement are untrue, then, So agrees not to file a Counter-Claim in the Lawsuit against Monarch, Grygorev, and <u>Ivanov</u>.

    (b)     However, the limitation in paragraph 4(a), above, shall not prevent So from filing a Counter-Claim against any of the other existing Defendants, including, but not limited to, Irvine Management Transfers and Holdings Corp., a New York corporation, Alyssa D'Urso aka Alyssa Durso, or any future Defendants, or against any other third-parties whom So believes may have committed wrongs against So and caused So any damages.

5. **No Admission of Liability**. The Parties understand and acknowledge that this Agreement, and any and all consideration given, constitutes a compromise and settlement of potentially disputed claims and that entering into and executing this Agreement shall not be deemed or construed to be an admission of the truth or falsity of any claims made or an acknowledgment or admission of liability by either Party.

6. **Representation of Counsel; Opportunity to Review**. The Parties each represent that they have had sufficient opportunity to consult their/its own legal counsel with regard to the negotiation and preparation, as well as the scope and effect, of this Agreement.

7. **Authority**. Each Party further affirms that they are fully capable of executing this Agreement and understand its contents and further that they have legal counsel of their own choice or that they have had an opportunity to obtain such legal counsel to explain the legal effect of signing this Agreement. The individuals whose signatures are affixed to this Agreement in a personal or representative capacity represent that they are authorized and competent to enter into this Agreement and are doing so freely and without coercion by any other Party or non-party hereto.

8. **Entire Agreement**. This Agreement represents the entire agreement and understanding between the Parties hereto concerning the matters set forth herein. No Party has relied upon any representations or statements made by the other which are not specifically set forth in this Agreement.

9. **Governing Law / Attorneys' Fees**. This Agreement shall be governed by the laws of the State of California, without regard for any choice of laws provision therein. The prevailing Party in any action to enforce this Agreement shall be awarded costs and attorneys' fees.

10. **Consent to Jurisdiction / Venue**. The Parties hereby agree that any and all of their disputes including any alleged breach or fraud in connection with this Agreement, shall be decided in the pending Lawsuit. Each of the Parties hereby irrevocably consents to the United States District Court, Central District of California, having jurisdiction over each of the Parties hereto, and that venue shall be in such Court.

11. **Counterparts**. This Agreement may be executed in counterparts and, upon execution by both Parties, each copy so executed shall be deemed an original for all purposes. All such executed counterparts shall be deemed one agreement. An executed signature page of this Agreement transmitted by email or facsimile shall be considered binding.

**SO AGREED:**

The Indemnifying Parties:
**Monarch Holdings, Inc.**
a Nevada corporation,
dba **Monarch Internation, Inc.**
dba **Monarch International, Inc.**

_____
**Maria Veronica Aque So,**
an individual,
aka **Maria Veronica So**
aka **Veronica So**
aka **Maria So**
Dated: November __25__, 2020

By: _____
Igor Grygorev
Its: _____
Dated: November __25__, 2020

_____
**Igor Grygorev**, an individual
Dated: November __25__, 2020

_____
**Yriy Ivanov**, an individual
Dated: November __25__, 2020

Перевод данного текста сделан мной, переводчиком Клепневым Виктором Игоревичем, верность перевода подтверждаю

Российская Федерация
Город Москва
Двадцать шестого ноября две тысячи двадцатого года.
Я, Бакулина Юлия Николаевна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Клепнева Виктора Игоревича.
Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

Зарегистрировано в реестре: № 77/1794-н/77-2020- 4-508
Взыскано государственной пошлины (по тарифу): 100 руб.
Уплачено за оказание услуг правового и технического характера: 300 руб.

Ю.Н. Бакулина