1  Brian P. Ballo, Esq. #134892
   **Law Office of Brian Ballo**
2  120 Vantis, Suite 300
   Aliso Viejo, CA  92656
3  p: (949) 690-4100
   brian@ballo.law
4  Attorney for Defendant and Cross-
   Claimant Veronica So a/k/a Maria
5  Veronica So a/k/a Maria So

6              **UNITED STATES DISTRICT COURT**

7              **CENTRAL DISTRICT OF CALIFORNIA**

8

9  MING GLOBAL LIMITED,            )   CASE NO.  8:20-cv-01852-JVS-KES
   a Hong Kong company,            )
10                                 )   **DEFENDANT AND CROSS-COMPLAINANT**
                  Plaintiff,       )   **VERONICA SO's NOTICE OF MOTION AND**
11                                 )   **MOTION TO STAY THIS ACTION WITH**
   v.                              )   **RESPECT TO VERONICA SO, INCLUDING,**
12                                 )   **THE TAKING OF HER DEPOSITION, ON**
   MONARCH HOLDINGS, INC., a       )   **GROUNDS SHE IS "*BETWEEN THE SUBJECT***
13 Nevada corporation, d/b/a MONARCH)  ***AND TARGET" OF A CRIMINAL***
   INTERNATIONAL, INC.; VERONICA   )   ***INVESTIGATION* AND WOULD ASSERT**
14 SO A/K/A MARIA VERONICA SO      )   **HER FIFTH AMENDMENT RIGHTS IN**
   A/K/A MARIA SO, an individual;  )   **RESPONSE TO ANY DISCOVERY**
15 DEREK NGUYEN, an individual;    )   **REQUESTS FROM HER**
   JAVEED MATIN, an individual, and)
16 DOES 1 through 10, inclusive,   )   **(1) MEMORANDUM OF POINTS AND**
                                   )   **     AUTHORITIES**
17                Defendants.      )
                                   )   **(2) SUPPORTED BY DECLARATIONS OF:**
18 ─────────────────────────       )
                                   )   **     (A)  THOMAS BROWN, ESQ., SO'S**
19 VERONICA SO A/K/A MARIA         )   **     CRIMINAL COUNSEL (ONE**
   VERONICA SO A/K/A MARIA SO, an  )   **     DECLARATION IS ATTACHED;**
20 individual,                     )   **     ANOTHER CONFIDENTIAL**
                                   )   **     DECLARATION IS REQUESTED TO FILE**
21                Cross-Claimant,  )   **     *IN-CAMERA AND UNDERSEAL*)**
                                   )
22 v.                              )   **     (B)  BRIAN BALLO, ESQ. RE: "MEET &**
                                   )   **     CONFER" EFFORTS WITH PLAINTIFF'S**
23 IRVINE MANAGEMENT TRANSFERS     )   **     COUNSEL PER LOCAL RULE 7-3**
   AND HOLDINGS CORP., a New York  )
24 corporation, ALYSSA D'URSO a/k/a)   **DATE:  January 3, 2022**
   ALYSSA DURSO, an individual, and)   **TIME:  1:30 p.m.**
25 DOES 1 through 10, inclusive,   )   **COURTROOM:  10C**
                                   )
26                Cross-Defendants.)   **District Judge: James V. Selna**
                                   )   **Magistrate Judge: Karen E. Scott**
27 ─────────────────────────       )
                                   )   **Trial Date:  May 31, 2022**
28

**NOTICE OF MOTION AND MOTION TO STAY ACTION WITH RESPECT TO VERONICA SO, INCLUDING, THE TAKING OF HER DEPOSITION**

TO PLAINTIFF MING GLOBAL LIMITED, AND ITS COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN THAT ON January 3, 2022, at 1:30 p.m. in Courtroom 10C of the above-entitled court, located at 411 W. 4th St., Santa Ana, CA 92701, Defendant and Cross-Claimant Veronica So ("So"), will and hereby does move the court for an Order Staying this Action with respect to Veronica So, including, the taking of her Deposition, *for so long as* she remains the subject, or becomes the target, of an active Grand Jury Criminal Investigation in New York, or during the period that So may become prosecuted as a criminal defendant.

This Motion is made pursuant to the criteria for a stay set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) on grounds that So is the "Subject" of a federal Grand Jury Criminal Investigation in New York and, she would assert her Fifth Amendment rights in response to any Discovery Requests from Plaintiff Ming Global.

This Motion is based on this Notice of Motion; the supporting Memorandum of Points and Authorities; the supporting two Declarations of Thomas Brown, Esq., So's criminal counsel (one of which is attached, another is submitted for the Court's *In-Camera Review, Only)*; and, the supporting Declaration of Brian Ballo, Esq., confirming this Motion is made following a LR 7-3 Conference, which took place on Nov. 22, 2021, and Nov. 29, 2021.

**Law Office of Brian Ballo**

*Brian Ballo*

Dated:  December 1, 2021          _____

Brian P. Ballo, Esq.
Attorney for Defendant and Cross-
Claimant Veronica So a/k/a Maria

1

Veronica So a/k/a Maria So

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Veronica So Motion to Stay Case
Ming Global Limited v. Monarch Holdings, Inc., et. al.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PRELIMINARY STATEMENT

Defendant and Cross-Claimant Veronica So a/k/a Maria Veronica So a/k/a Maria So ("So"), hereby requests that the Court issue an Order Staying this Action as to her, pursuant to the criteria for a stay set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) on grounds that So is the "Subject" of a federal Grand Jury Criminal Investigation in New York and, she would assert her Fifth Amendment rights in response to any Discovery Requests from Plaintiff Ming Global Limited ("Ming Global") to her.

Ming Global's Second Amended Complaint ("SAC") alleges that So received transfers from Hong Kong of over $13,000,000 into bank accounts maintained by her in California, which Ming Global alleges were intended to be invested by Monarch Holdings, Inc. ("Monarch"; So is a Director) into US stocks traded on NASDAQ and NYSE, however, these monies were not invested and, instead, transferred out.

The attached public Declaration of Thomas Brown, Esq., So's criminal counsel states:

(1) So "between a subject and a target" of a criminal investigation currently being conducted by a prosecutor in New York connected with a Grand Jury, into why over $13,000,000 was deposited into Monarch's bank accounts then transferred out and, what she knows about the various firms in Asia and people involved;

(2) a Federal Bureau of Investigation ("FBI") Agent visited her townhouse in Aliso Viejo, CA, who is also investigating her; and

(3)  based on these investigations and Mr. Brown's review of Ming Global's SAC, he has a good faith belief that So can assert and, therefore, will assert her Fifth Amendment rights against self-incrimination in response to any deposition or discovery questions.

Separately, So has filed an Ex Parte Application for Leave to file a <u>Second Confidential</u> <u>Declaration of Thomas Brown, Esq.</u> for *In Camera* review.

Importantly, So seeks to <u>stay this action only with respect to her</u>. In addition, the stay will only remain in effort *for as long as* So remains the subject of, or becomes the target of, a criminal proceeding, or during any period that So may become prosecuted as a criminal defendant. In other words, the Court's granting of a Stay with respect to So, will not prevent Plaintiff Ming Global from proceeding against other defendants.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>The Primary, but Unknown, First Eastern Representatives</u>

Ming Global is a Hong Kong based merchandising company.[1] Its SAC alleges beginning in early May 2020, that persons "based in Hong Kong, California, and New York operating through [fake] names, including Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton, and Angela Fung … [falsely] … <u>represented themselves as</u> <u>employees or authorized representatives of the [legitimate] private equity firm, First Eastern</u> <u>Investments Limited</u> [2] [SAC ¶12] …. to Sharath Kumar Hegde a/k/a Zach Hegde ("Hegde"),

---

[1]   Plaintiff **Ming Global Limited** ("Ming Global") is purportedly a Hong Kong merchandising company, which, according to its corporate website is a: "…trusted company producing high quality creative merchandise needs for brands from different industries [and, providing them with] supply chain solutions since 2010…. [W]e use Asia Quality Focus (AQF) to make sure that the suppliers and us are more than capable to undertake the various stages in production. We go through quality inspections, factory audits and supplier assessments, and laboratory testing and certification. These processes ensure that the final product is as good as how we have conceptualized it."   https://www.ming-global.com/about-us   In sum, Ming Global manages supply chains, health and safety, environmental, labor and human rights issues in the production of promotional products for various brands. Ming Global performs quality control during pre-production, production and pre-shipment inspections in China and Asia according to international quality standards.

[2]   "**First Eastern Investment <u>Limited</u>**, according to their post, is "a renowned investment management company based in Hong Kong, continues to help clients in Hong Kong and beyond

who works for Ming Global in Australia, and Donna Maria a/k/a/ Donna Malicay, who works for Ming Global in the Philippines. [SAC ¶18-21, 23-30, 34, 38, 45, 47].

Ming Global's alleges that Hegde and its "accountant at Asia Business Centre in Hong Kong" performed due diligence to confirm that First Eastern was a "legitimate company and leading private equity firm in Hong Kong." [SAC ¶22].[3]

The basic structure of the alleged fraudulent investments, as allegedly agreed upon between Zach Hegde and the purported First Eastern representatives, were that:

"(1) First Eastern Investments would invest Ming Global's money in exchange for a 4% commission fee per transaction;

(2) invested money would be returnable upon request by Ming Global [a curious assurance given the nature of the investments into equity stocks]

(3) [monies were] to be invested in purchasing … [NASDAQ and NYSE] stocks … and

(4) [Defendant Monarch Holdings, Inc. ("Monarch")[4] was acting at the direction of and in concert with First Eastern Investments." [SAC ¶24].

---

make the most of their financial aspirations using their customizable and tailored portfolios." https://www.yahoo.com/now/first-eastern-investments-limited-helps-031500226.html

First Eastern Investment <u>Limited</u> is affiliated with **First Eastern Investment <u>Group</u>** is a Hong Kong-based venture capital and equity firm that finances expansion stage companies … **First Eastern Investments Group** has raised a total of $500M in a single venture fund, UK China Fund …. announced on Nov 12, 2010" and has 1 employee and board member, Chairman & CEO Victor Chu [a/k/a Chu Lap Lik "Victor"]. https://www.crunchbase.com/organization/first-eastern-investment-group/investor_financials

For purposes of this Motion, the term "fake First Eastern" will be used to refer to the illegitimate First Eastern Investments.

[3]  Indeed, First Eastern Investment Limited is a licensed and registered with the Hong Kong Securities Futures Commission, License No. AAJ620, to advise on securities.  However, the Hong Kong Securities Futures Commission does <u>not</u> indicate that First Eastern Investment Limited conducts business in the United States, <u>nor</u> that it is affiliated with Monarch Holdings, Inc. in the United States.  Moreover, First Eastern Investment Limited is <u>not</u> registered with FINRA or the SEC.

[4]  Plaintiff Ming Global does <u>not</u> allege that it performed any due diligence on Defendant Monarch Holdings, Inc. ("Monarch"). Only in September 2020, after Ming Global purportedly transferred $13,329,181.76 to Monarch, did Ming Global inquire and discover that <u>neither</u> Monarch <u>nor</u> So are registered securities brokers with FINRA or the SEC. [SAC ¶s 57 and 58].

### B. **Ming Global incorrectly attributes all Fraud to Monarch and So**

Despite Ming Global's allegations that (1) all persons calling themselves Alexander Mann, Scott Bailey, Peter Lynd, Graham Cowell, Simon Newton, and Angela Fung, said all they <u>worked for fake First Eastern</u>, and (2) <u>all documentation attached to Ming Global's SAC, including, Ming Global Account Statements, are either on fake First Eastern letterhead or from fake First Eastern email accounts (not Monarch letterhead or Monarch email accounts</u>), Ming Global makes *unsubstantiated* allegations that such persons were actually agents of Monarch. By so alleging, all such their purported misrepresentations and wrongful acts performed by fake First Eastern are attributed to Monarch. [SAC ¶18, 24 – 48].

Understandably, Ming Global seeks to assert and establish that Monarch was the "mastermind" orchestrating the fake representatives of the fake First Eastern, since Ming Global sent all of its investment money to Monarch, which Mr. Mann (1) "described as the brokerage firm who would hold the funds and purchase the shares for Ming Global's investments" and (2) he "provided [Ming Global with] wire instructions to two separate bank accounts in Monarch's name, one at Bank of America and one at U.S. Bank" [SAC ¶23].

On September 2, 2020, Zach Hegde of Ming Global sent a letter <u>addressed to Mr. Victor Chu at First Eastern</u> (attached as Exhibit 20 to Ming Global's SAC) inquiring when Ming Global would receive $27,326,613.30 <u>from First Eastern</u>, based on sending $13,329,181.76 to Monarch for investment purposes. However, Ming Global's allegation in the SAC ¶46 *completely mischaracterizes Hegde's letter*, by claiming <u>Ming Global sent a letter to Monarch</u> addressing <u>Monarch's</u> failure to remit the funds. That is <u>not</u> what the letter states!

Ming Global designated Monarch the lead Defendant in this case, because "Monarch is a Nevada entity registered to do business in California, and … Monarch's filings with the

-7-

California Secretary of State list a sole corporate director 'Veronica So'". [SAC ¶54]. Monarch was locatable, albeit with (1) a corporate address at a storage facility in San Clemente, California, [SAC ¶55] and (2) a website address at Veronica So's condominium in Aliso Viejo, California [SAC ¶56].

Significantly, Ming Global's SAC is devoid of allegations that So made any direct misrepresentations to anyone at Ming Global.  Also, none of the correspondence between the fake First Eastern (erroneously mischaracterized as Monarch) and persons at Ming Global attached as Exhibits to Ming Global's SAC, bear So's name or signature.

Nevertheless, Monarch's receipt of wire transfers from Ming Global; So's and defendant Javeed Matin's ("Matin") roles as signatories on Monarch's accounts with Bank of America and US Bank; and, Matin's and So's actions in wiring money out of the Monarch accounts, purportedly without making any investments into US publicly traded stocks as represented by the persons with the fake First Eastern, are the focus of Ming Global's action.

Ming Global's emphasis on pursuing So is particularly acute in this case, since: (1) Monarch default has been taken, (2) So is the only defendant that has made an appearance, (3) defendants Matin and Derek Nguyen have not been served, and (4) none of the persons with fake names purportedly acting as First Eastern representatives have been identified[5] or, in an event are not being pursued by Ming Global.

**C. So Acted in an Administrative Capacity Only, Simply Following Directions**

So's <u>general</u> explanation for her limited role is contained in her **Preliminary**

_____

[5]  Ming Global hired Control Risks a global investigation firm to research fraud [SAC ¶s 5 and 53]. However, in Responses to So's Requests for Production of Documents, Ming Global objected to producing the Reports prepared by these firms, which So contends in a Meet & Confer letter, is not privileged attorney work product, therefore, the Reports need to be produced by Ming Global.

**Statement** included in both her Answer and Affirmative Defenses to Ming Global's SAC, as well as in her First Amended Cross-Claim that:

> "Veronica So … is an unsophisticated nurse assistant who provides patient care to elderly people.
>
> While she is designated as the sole Officer and Director of Defendant Monarch Holdings, Inc. ("Monarch"), she is <u>not</u> a Shareholder or owner of Monarch.  She has no real understanding of the transactions as alleged in as alleged in Plaintiff Ming Global Limited's ("Ming Global") First Amended Complaint ("FAC"), and she lacks the ability to have performed the fraudulent acts Monarch is alleged to have committed against Plaintiff Ming Global.
>
> <u>In fact, everything that So did,</u> as represented in an **Indemnification Agreement and Mutual Release** dated November 25, 2020 (attached as Exhibit "A" hereto) between So, on one hand, and Monarch, and Cross-Defendants Igor Grygorev ("Grygorev") and Yriy Ivanov ("Ivanov"), the sole shareholders of Monarch, on the other hand,:
>
> "with respect to Monarch's business activities and, with respect to the financial transfers and Investments as alleged in [Ming Glboal'] FAC, <u>So was acting in a limited administrative capacity only, and each of her acts on behalf of Monarch were at the direction of Monarch, Grygorev and Ivanov,</u> in exchange for which So received total compensation of less than $30,000 from Monarch and $0 of Ming Global's alleged Investments."
>
> Assuming Ming Global's allegations are true, Ming Global's losses are unfortunate. However, as alleged in So's instant FAX-C, such alleged losses are properly attributable to other named Defendants, Cross-Defendants or parties other than So.
>
> Further, to the extent So is held liable for anything, she will be fully indemnified by the Indemnifying Parties, including for her attorneys' fees incurred in this action. Thus, Ming Global should focus its attention on others, not So."

   To probe So's <u>specific</u> role, Ming Global has noticed So's Deposition for December 1, 2021, to be held in-person, in Irvine, California, however,, Ming Global has not (yet) propounded any written discovery questions or sent document requests to her.

### D. **So is "between a Subject and a Target" of a Grand Jury Criminal Investigation**.

As explained further in the supporting Declarations of Thomas Brown, Esq., So's criminal counsel, So has recently learned that she is "between a subject and a target" of a Grand Jury Criminal Investigation being conducted in New York.

In particular, Mr. Brown states in ¶7 of his attached Declaration: "I have sufficient facts to make an in camera showing of a good faith basis for her to assert her **Fifth Amendment rights** … I've instructed Brian [Ballo] not to respond and simply to assert the privilege **as to any and all questions posed or documents requested**."

### III. **THIS CASE SHOULD BE STAYED TO PROTECT VERONICA SO'S FIFTH AMENDMENT RIGHTS AGAINST SELF-INCRIMINATION**

In a criminal case, a defendant has a right against self-incrimination. This right is enshrined in the Fifth Amendment, which provides in relevant part "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V.

Absent a stay in a civil case, a party in a civil case who faces criminal charges must either invoke her Fifth Amendment privilege during discovery, which could result in an adverse inference, [*Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)] or waive her Fifth Amendment privilege, which could impair her defense of the criminal case. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995); *Square 1 Bank v. Lo*, No. 12-CV-05595-JSC, 2014 WL 7206874, at *1 (N.D. Cal. Dec. 17, 2014) ("Indeed, calling the predicament a 'Hobson's choice,' courts have stayed discovery where a civil defendant has already pleaded guilty to a criminal indictment and awaits sentencing ...")

A civil stay avoids this Hobson's choice by allowing a litigant to focus on the criminal charges. *Keating*, 45 F.3d at 324 (9th Cir. 1995).

Whether a District Court will stay a civil case pending the outcome of criminal proceedings is a discretionary, highly fact-specific inquiry. Of paramount concern is "the extent to which the defendant's Fifth Amendment rights are implicated." *Keating, supra,* 45 F.3d at 324.

Here, based on the advice of her criminal counsel, So will clearly invoke her Fifth Amendment rights if asked any deposition or discovery questions.  Moreover, So's criminal counsel has instructed So's civil counsel to assert So's Fifth Amendment rights on her behalf.

In addition, Courts consider the following <u>five factors</u> to determine whether a civil case should be stayed: (1) the plaintiff's interest in moving forward with the civil litigation, and the potential prejudice to the plaintiff caused by delay; (2) the burden on the defendant caused by the proceedings; (3) judicial efficiency; (4) the interests of nonparties; and (5) the public interest in the pending civil and criminal litigation. *Keating, supra* at 324–25.

Applying the *Keating* factors supports the Court's issuance of a stay.

First, nothing about the Court's issuance of a stay with respect to So will interfere with Plaintiff's interest in moving forward with the civil litigation as against other defendants. Ming Global will not be prejudiced by the delay in proceeding against So.  In fact, granting a stay may actually reduce the burden on Ming Global as a civil plaintiff, since Ming Global is likely also the victim in the potential criminal case, whom the federal prosecutor will seek to indirectly help.

Second, because So is an individual and, <u>the only active defendant in this case</u>, she lacks the resources to investigate firms, people and their actions, internationally.  The federal prosecutor has much better resources to pursue any more primary bad actors. So is overwhelmed with attempting to litigate against Ming Global and its three law firms.

Third, staying this civil case and allowing the criminal case "to proceed first may narrow the issues and streamline discovery in the civil proceeding, and collateral estoppel based on findings in the criminal case may expedite resolution of the civil case." *SEC v. Alexander*, No. 10-cv-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22. 2010) (internal citations omitted).  These developments will actually benefit a plaintiff in its civil case by reducing the plaintiff's burden of proof and litigation costs.

Significantly, even where criminal charges have not been filed but the government is investigating potential criminal conduct, a court may grant a stay. The fact that criminal charges are not yet pending is not dispositive. "[T]he right to assert one's privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution." *Slagowski v. Central Wash. Asphalt*, 291 F.R.D. 563 (D. Nev. July 2, 2013) (quoting *Hoffman v. United States*, 341 U.S. 479, 4860487 (1951)).

Fourth, the interests of nonparties, namely, the legitimate First Eastern Investments Limited and the banks handling funds, are not significant factors.

Fifth, however, in considering the interest of the public, courts balance the interest of the public in expeditious resolution of civil litigation against the public's interest in ensuring the criminal process is not subverted by the ongoing civil case. "[W]here there are parallel criminal and civil proceedings, 'the criminal case is of primary importance to the public,' whereas the civil case, which will result only in monetary damages, 'is not of an equally pressing nature.'" *Square 1 Bank*, 2014 WL 7206874, at 5 (emphasis in original) (quoting *Alexander*, 2010 WL 5388000, at *6).

Whether the public interest will favor either party will depend on the unique facts of a particular case, but, typically, the "protection of defendant's constitutional rights against self-

-12-

incrimination is the more important consideration." *United Techns. Corp. v. Dean*, 906 F. Supp. 27, 29 (D. Mass. 1995) (internal quotation omitted).

## IV.  CONCLUSION

For all the forgoing reasons, the Court should grant Veronica So's Motion for a Stay as to her, including, the taking of her Deposition, for so long as she remains the subject, or becomes the target, of the Grand Jury Criminal Investigation in New York, or during the period that So may become prosecuted as a criminal defendant.

The Order granting Stay may provide that So's criminal and/or civil counsel must periodically report to Plaintiff's counsel on So's status vis-à-vis criminal proceedings.

Alternatively, the Court may require a Status Conference at regular intervals to reassess whether the stay should remain in place. "A stay with a limited duration . . . is more likely to be granted than an indefinite one." *Doe*, 869 F. Supp. 2d at 118.

Respectfully submitted,
**LAW OFFICE OF BRIAN BALLO**

Dated: December 1, 2021          By:_____
                                    Brian P. Ballo, Esq.
                                    Attorney for Defendant and Cross-Claimant
                                    Veronica So a/k/a Maria Veronica So a/k/a

# PROOF OF SERVICE

## MING GLOBAL LIMITED v. MONARCH HOLDINGS, INC., et. al.

## U.S.D.C., Central District CA, Case No. 8:20-cv-01852-JVS-KES

I, Brian Ballo, declare as follows:

I reside in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action. My address is 120 Vantis, Suite 300, Aliso Viejo, California, 92656.

On December 1, 2021, I served Defendant Veronica So a/k/a Maria Veronica So a/k/a Maria So's Motion to Stay Action on:

Michael Jason Lee, Esq.                          Attorneys for Plaintiff
**Law Office of Michael Jason Lee, APLC**        **Ming Global Limited**
4660 Law Jolla Village Drive, Suite 100
San Diego, CA  92122

Sunjina Ahuja, Esq.                              ''
**Dillon, Miller, Ahuja & Boss, LLP**
5872 Owens Ave., Suite 200
Carlsbad, CA  92008

Nicholas Kennedy, Esq.                           "
**Baker & McKenzie, LLP**
1900 North Pearl St., Suite 1500
Dallas, TX  75201

Thomas Tysowsky, Esq.                            ''
**Baker & McKenzie, LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067

 XX    **By E-mail**: Based on an order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the following e-mail addresses:  nicholas.kennedy@bakermckenzie.com thomas.tysowsky@bakermckenzie.com michael@mjllaw.com sahuja@dmablaw.com I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

 XX    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Dated this December 1, 2021.

_Brian Ballo_

_____
**Brian P. Ballo. Esq.**